EXHIBIT A

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

Mark Meadows

*To* _____

You are hereby commanded to be and appear before the

Select Committee to Investigate the January 6th Attack on the United States Capitol
_____

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 1540A Longworth House Office Building, Washington DC  20515
>
> Date: October 7, 2021                       Time: 10:00 a.m.

☑ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: 1540A Longworth House Office Building, Washington DC  20515
>
> Date: October 15, 2021                       Time: 2:00 p.m.

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____                       Time: _____

*To* any authorized staff member or the United States Marshals Service _____

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 23*rd* day of September , 20 21.

_____
*Chairman or Authorized Member*

Attest _____
*Clerk*

## PROOF OF SERVICE

Subpoena for Mark Meadows

*c/o Scott Gast, attorney for Mr. Meadows*

Address 606 Wind Flower Drive

Sunset, SC 29685

before the  Select Committee to Investigate the January 6th Attack on the United States Capitol

*U.S. House of Representatives*
*117th Congress*

---

Served by (print name)  *KRISTIN AMERLING*

Title  *CHIEF COUNSEL + DEPUTY STAFF DIRECTOR*

Manner of service  *Email to Attorney for Mr. Meadows,*
*Scott Gast of Compass Legal Services (sgast@compass*
*legal.org )*

Date  *9/23/2021*

Signature of Server  *Kris*

Address  *Longworth HOB, Washington, DC 20515 (Room 1540A)*
*Select Committee to Investigate the January 6 Attack*

BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS



U.S House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

### One Hundred Seventeenth Congress

### Select Committee to Investigate the January 6th Attack on the United States Capitol

September 23, 2021

The Honorable Mark R. Meadows
c/o Mr. Scott Gast
Compass Legal Services
300 Independence Avenue SE
Washington, DC 20003

Dear Mr. Meadows:

Pursuant to the authorities set forth in House Resolution 503 and the rules of the House of Representatives, the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") hereby transmits a subpoena that compels you to produce the documents set forth in the accompanying schedule by October 7, 2021, and to appear for a deposition on October 15, 2021.

The Select Committee is investigating the facts, circumstances, and causes of the January 6th attack and issues relating to the peaceful transfer of power, in order to identify and evaluate lessons learned and to recommend to the House and its relevant committees corrective laws, policies, procedures, rules, or regulations. The inquiry includes examination of how various individuals and entities coordinated their activities leading up to the events of January 6, 2021.

The investigation has revealed credible evidence of your involvement in events within the scope of the Select Committee's inquiry. You were the President's Chief of Staff and have critical information regarding many elements of our inquiry. It appears that you were with or in the vicinity of President Trump on January 6, had communications with the President and others on January 6 regarding events at the Capitol, and are a witness regarding activities of that day. Moreover, it has been reported that you were engaged in multiple elements of the planning and preparation of efforts to contest the presidential election and delay the counting of electoral votes. In addition, according to documents provided by the Department of Justice, while you were the President's Chief of Staff, you directly communicated with the highest officials at the Department of Justice requesting investigations into election fraud matters in several states.[1] We understand that in the weeks after the November 2020 election, you contacted several state officials to encourage investigation of allegations of election fraud, even after such allegations had been dismissed by state and federal courts, and after the Electoral College had met and voted on December 14, 2020.[2] Moreover, at least one press report indicates you were in communication with organizers of the January 6 rally, including Amy Kremer of Women for America First.[3]

---

[1] Documents on file with the Committee.

[2] Linda So, *Trump's Chief of Staff Could Face Scrutiny in Georgia Criminal Probe* (Reuters, March 19, 2021); Documents on file with the Committee.

[3] Joshua Kaplan & Joaquin Sapien, *New Details Suggest Senior Trump Aides Knew Jan. 6 Rally Could Get Chaotic*, PROPUBLICA (June 25, 2021), https://www.propublica.org/article/new-details-suggest-senior-trump-aides-knew-jan-6-rally-could-get-chaotic.

The Honorable Mark R. Meadows
Page 2

Accordingly, the Select Committee seeks both documents and your deposition testimony regarding these and other matters that are within the scope of the Select Committee's inquiry.

A copy of the rules governing Select Committee depositions, and document production definitions and instructions are attached. Please contact staff for the Select Committee at 202-225-7800 to arrange for the production of documents.

Sincerely,

Bennie G. Thompson
Chairman

The Honorable Mark R. Meadows
Page 3

## SCHEDULE

In accordance with the attached Definitions and Instructions, you, Mr. Mark Meadows, are hereby required to produce, all documents and communications in your possession, custody, or control—including any such documents or communications stored or located on personal devices (e.g., personal computers, cellular phones, tablets, etc.), in personal or campaign accounts, and/or on personal or campaign applications (e.g., email accounts, contact lists, calendar entries, etc.)— referring or relating to the following items.  If no date range is specified below, the applicable dates are for the time period April 1, 2020-present.

1. Communications referring or relating in any way to plans, efforts, or discussions regarding challenging, decertifying, overturning, or contesting the results of the 2020 Presidential election.

2. All documents and communications concerning the role of the Vice President as the Presiding Officer in the certification of the votes of the electoral college.

3. From November 3, 2020, through January 20, 2021, all documents and communications referring or relating to the 2020 election results sent or transmitted between White House officials and officials of state or local governments.

4. From November 3, 2020, through January 6, 2021, all documents and communications referring or relating to actual or potential court decisions, deliberations, or processes involving challenges to the 2020 Presidential election.

5. All recordings, transcripts, notes (including electronic and hand-written notes), summaries, memoranda of conversation, readouts, or other documents memorializing communications between you and President Trump and/or Members of Congress on January 6, 2021, relating or referring in any way to the attack on the Capitol.

6. All documents that refer or relate to efforts, plans, or attempts by President Trump to activate the National Guard on January 6, 2021.

7. From November 3, 2020, through January 19, 2021, all documents and communications concerning the resignation of any White House personnel or any politically appointed personnel of any Federal department or agency (including the resignation of any member of the President's Cabinet) and mentioning or referring (explicitly or implicitly) to the 2020 Presidential election or the events of January 6, 2021.

8. All documents and communications relating to planned protests, marches, public assemblies, rallies, or speeches in Washington, DC, on November 14, 2020, December 12, 2020, or January 5, 2021, or January 6, 2021.

9. All documents and communications related to security of the Capitol or other Federal facilities on January 5, 2021, and January 6, 2021.

10. From December 1, 2020, through January 20, 2021, any documents and communications involving White House personnel and any Member of Congress, referring or relating to (a) civil unrest, violence, and/or attacks at the Capitol; (b) challenging, overturning, or questioning the validity of the 2020 election results; (c) the counting of the electoral college vote on January 6, 2021; or (d) appealing or challenging the decisions of courts related to the 2020 Presidential election.

The Honorable Mark R. Meadows
Page 4

11. All documents and communications related to social media information monitored, gathered, reviewed, shared, or analyzed by White House personnel on January 6, 2021.

12. All documents and communications related to any plan for the President to march or walk to the Capitol on January 6, 2021. This request includes any such documents or communications related to a decision not to march or walk to the Capitol on January 6, 2021.

13. From November 3, 2020, to January 20, 2021, all documents and communications reporting, summarizing, or detailing the voting returns and election results of the 2020 Presidential election.

14. All documents and communications related to Donald Trump's response or reaction to the election results of the 2020 Presidential election, including but not limited to any planned public remarks.

15. All documents and communications regarding a November 9, 2020, memorandum from Attorney General William Barr concerning investigation of voter fraud allegations.

16. From November 3, 2020, through January 20, 2021, all documents provided to you or Donald Trump reviewing, assessing, or reporting on the security of election systems in the United States.

17. From November 3, 2020, through January 20, 2021, all documents and communications provided to Donald Trump regarding purported election irregularities, election-related fraud, or other election-related malfeasance.

18. From April 1, 2020, through January 20, 2021, all documents and communications provided to you or Donald Trump referring to a stolen election, stealing the election, or a "rigged" election.

19. From November 3, 2020, through January 20, 2021, all documents and communications related to the Twenty-Fifth Amendment to the U.S. Constitution.

20. Any documents and communications relating to instructions to stop or delay preparation for the transition of administrations.

21. All communications between White House personnel and General Services Administration (GSA) Administrator Emily Murphy or other GSA officials relating to "ascertainment" under the Presidential Transition Act. This includes but is not limited to communications discussing the recognition of Joseph Biden as the winner of the 2020 Presidential election.

22. All documents and communications concerning the potential invocation of the Insurrection Act.

23. From November 3, 2020, through January 20, 2021, all documents and communications related to martial law.

24. All documents and communications concerning the use of Federal law enforcement or military personnel during voting or vote counting in the 2020 Presidential election.

25. Any documents and communications relating to foreign influence in the United States 2020 Presidential election through social media narratives and disinformation.

26. All documents and communications related to the January 3, 2021, letter from ten former Defense Secretaries warning of use of the military in election disputes.

The Honorable Mark R. Meadows
Page 5

27. All documents and communications to or from the United States Secret Service concerning individuals in attendance at the January 6 rally in body armor, ballistic helmets, radio equipment, and "military grade" backpacks.

**DOCUMENT PRODUCTION DEFINITIONS AND INSTRUCTIONS**

1.  In complying with this request, produce all responsive documents, regardless of classification level, that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2.  Requested documents, and all documents reasonably related to the requested documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Committee').

3.  In the event that any entity, organization, or individual denoted in this request is or has been known by any name other than that herein denoted, the request shall be read also to include that alternative identification.

4.  The Committee's preference is to receive documents in a protected electronic form (i.e., password protected CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions. With specific reference to classified material, you will coordinate with the Committee's Security Officer to arrange for the appropriate transfer of such information to the Committee. This includes, but is not necessarily limited to: a) identifying the classification level of the responsive document(s); and b) coordinating for the appropriate transfer of any classified responsive document(s).

5.  Electronic document productions should be prepared according to the following standards:

    a.  If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    b.  All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

    BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6.    Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

7.    Documents produced in response to this request shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the request was served.

8.    When you produce documents, you should identify the paragraph(s) or request(s) in the Committee's letter to which the documents respond.

9.    The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

10.   The pendency of or potential for litigation shall not be a basis to withhold any information.

11.   In accordance with 5 U.S.C. § 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

12.   Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

13.   If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production, as well as a date certain as to when full production will be satisfied.

14.   In the event that a document is withheld on any basis, provide a log containing the following information concerning any such document: (a) the reason it is being withheld, including, if applicable, the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the withholding.

15.   If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control. Additionally, identify where the responsive document can now be found including name, location, and contact information of the entity or entities now in possession of the responsive document(s).

16.   If a date or other descriptive detail set forth in this request referring to a document

is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, produce all documents that would be responsive as if the date or other descriptive detail were correct.

17.    This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

18.    All documents shall be Bates-stamped sequentially and produced sequentially.

19.    Upon completion of the production, submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and
(2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1.    The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of classification level, how recorded, or how stored/displayed (e.g. on a social media platform) and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, computer or mobile device screenshots/screen captures, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2.  The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases, electronic message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, through a social media or online platform, or otherwise.

3.  The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

4.  The term "including" shall be construed broadly to mean "including, but not limited to."

5.  The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments, branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6.  The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7.  The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8.  The term "employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, assignee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9.  The term "individual" means all natural persons and all persons or entities acting on their behalf.

health, safety, and well-being of others present in the Chamber and surrounding areas. Members and staff will not be permitted to enter the Hall of the House without wearing a mask. Masks will be available at the entry points for any Member who forgets to bring one. The Chair views the failure to wear a mask as a serious breach of decorum. The Sergeant-at-Arms is directed to enforce this policy. Based upon the health and safety guidance from the attending physician and the Sergeant-at-Arms, the Chair would further advise that all Members should leave the Chamber promptly after casting their votes. Furthermore, Members should avoid congregating in the rooms leading to the Chamber, including the Speaker's lobby. The Chair will continue the practice of providing small groups of Members with a minimum of 5 minutes within which to cast their votes. Members are encouraged to vote with their previously assigned group. After voting, Members must clear the Chamber to allow the next group a safe and sufficient opportunity to vote. It is essential for the health and safety of Members, staff, and the U.S. Capitol Police to consistently practice social distancing and to ensure that a safe capacity be maintained in the Chamber at all times. To that end, the Chair appreciates the cooperation of Members and staff in preserving order and decorum in the Chamber and in displaying respect and safety for one another by wearing a mask and practicing social distancing. All announced policies, including those addressing decorum in debate and the conduct of votes by electronic device, shall be carried out in harmony with this policy during the pendency of a covered period.

---

117TH CONGRESS REGULATIONS FOR USE OF DEPOSITION AUTHORITY

COMMITTEE ON RULES,
HOUSE OF REPRESENTATIVES,
*Washington, DC, January 4, 2021.*
Hon. NANCY PELOSI,
*Speaker, House of Representatives,*
*Washington, DC.*

MADAM SPEAKER: Pursuant to section 3(b) of House Resolution 8, 117th Congress, I hereby submit the following regulations regarding the conduct of depositions by committee and select committee counsel for printing in the Congressional Record.

Sincerely,

JAMES P. McGOVERN,
*Chairman, Committee on Rules.*

REGULATIONS FOR THE USE OF DEPOSITION AUTHORITY

1. Notices for the taking of depositions shall specify the date, time, and place of examination. Depositions shall be taken under oath administered by a member or a person otherwise authorized to administer oaths. Depositions may continue from day to day.

2. Consultation with the ranking minority member shall include three days' notice before any deposition is taken. All members of the committee shall also receive three days written notice that a deposition will be taken, except in exigent circumstances. For purposes of these procedures, a day shall not include Saturdays, Sundays, or legal holidays except when the House is in session on such a day.

3. Witnesses may be accompanied at a deposition by personal, nongovernmental counsel to advise them of their rights. Only members, committee staff designated by the chair or ranking minority member, an official reporter, the witness, and the witness's counsel are permitted to attend. Observers or counsel for other persons, including counsel for government agencies, may not attend.

4. The chair of the committee noticing the deposition may designate that deposition as part of a joint investigation between committees, and in that case, provide notice to the members of the committees. If such a designation is made, the chair and ranking minority member of the additional committee(s) may designate committee staff to attend pursuant to regulation 3. Members and designated staff of the committees may attend and ask questions as set forth below.

5. A deposition shall be conducted by any member or committee counsel designated by the chair or ranking minority member of the Committee that noticed the deposition. When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round. One of the committee counsel shall be designated by the chair and the other by the ranking minority member per round.

6. Deposition questions shall be propounded in rounds. The length of each round shall not exceed 60 minutes per side, and shall provide equal time to the majority and the minority. In each round, the member(s) or committee counsel designated by the chair shall ask questions first, and the member(s) or committee counsel designated by the ranking minority member shall ask questions second.

7. Objections must be stated concisely and in a non-argumentative and non-suggestive manner. A witness's counsel may not instruct a witness to refuse to answer a question, except to preserve a privilege. In the event of professional, ethical, or other misconduct by the witness's counsel during the deposition, the Committee may take any appropriate disciplinary action. The witness may refuse to answer a question only to preserve a privilege. When the witness has refused to answer a question to preserve a privilege, members or staff may (i) proceed with the deposition, or (ii) either at that time or at a subsequent time, seek a ruling from the Chair either by telephone or otherwise. If the Chair overrules any such objection and thereby orders a witness to answer any question to which an objection was lodged, the witness shall be ordered to answer. If a member of the committee chooses to appeal the ruling of the chair, such appeal must be made within three days, in writing, and shall be preserved for committee consideration. The Committee's ruling on appeal shall be filed with the clerk of the Committee and shall be provided to the members and witness no less than three days before the reconvened deposition. A deponent who refuses to answer a question after being directed to answer by the chair may be subject to sanction, except that no sanctions may be imposed if the ruling of the chair is reversed by the committee on appeal.

8. The Committee chair shall ensure that the testimony is either transcribed or electronically recorded or both. If a witness's testimony is transcribed, the witness or the witness's counsel shall be afforded an opportunity to review a copy. No later than five days after the witness has been notified of the opportunity to review the transcript, the witness may submit suggested changes to the chair. Committee staff may make any typographical and technical changes. Substantive changes, modifications, clarifications, or amendments to the deposition transcript submitted by the witness must be accompanied by a letter signed by the witness requesting the changes and a statement of the witness's reasons for each proposed change. Any substantive changes, modifications, clarifications, or amendments shall be included as an appendix to the transcript conditioned upon the witness signing the transcript.

9. The individual administering the oath, if other than a member, shall certify on the transcript that the witness was duly sworn. The transcriber shall certify that the transcript is a true record of the testimony, and the transcript shall be filed, together with any electronic recording, with the clerk of the committee in Washington, DC. Depositions shall be considered to have been taken in Washington, DC, as well as the location actually taken once filed there with the clerk of the committee for the committee's use. The chair and the ranking minority member shall be provided with a copy of the transcripts of the deposition at the same time.

10. The chair and ranking minority member shall consult regarding the release of deposition testimony, transcripts, or recordings, and portions thereof. If either objects in writing to a proposed release of a deposition testimony, transcript, or recording, or a portion thereof, the matter shall be promptly referred to the committee for resolution.

11. A witness shall not be required to testify unless the witness has been provided with a copy of section 3(b) of H. Res. 8, 117th Congress, and these regulations.

---

REMOTE COMMITTEE PROCEEDINGS REGULATIONS PURSUANT TO HOUSE RESOLUTION 8, 117TH CONGRESS

COMMITTEE ON RULES,
HOUSE OF REPRESENTATIVES,
*Washington, DC, January 4, 2021.*
Hon. NANCY PELOSI,
*Speaker, House of Representatives,*
*Washington, DC.*

MADAM SPEAKER: Pursuant to section 3(s) of House Resolution 8, 117th Congress, I hereby submit the following regulations regarding remote committee proceedings for printing in the CONGRESSIONAL RECORD.

Sincerely,

JAMES P. McGOVERN,
*Chairman,*
*Committee on Rules.*

REMOTE COMMITTEE PROCEEDINGS REGULATIONS PURSUANT TO HOUSE RESOLUTION 8

A. PRESENCE AND VOTING

1. Members participating remotely in a committee proceeding must be visible on the software platform's video function to be considered in attendance and to participate unless connectivity issues or other technical problems render the member unable to fully participate on camera (except as provided in regulations A.2 and A.3).

2. The exception in regulation A.1 for connectivity issues or other technical problems does not apply if a point of order has been made that a quorum is not present. Members participating remotely must be visible on the software platform's video function in order to be counted for the purpose of establishing a quorum.

3. The exception in regulation A.1 for connectivity issues or other technical problems does not apply during a vote. Members participating remotely must be visible on the software platform's video function in order to vote.

4. Members participating remotely off-camera due to connectivity issues or other technical problems pursuant to regulation A.1 must inform committee majority and minority staff either directly or through staff.

5. The chair shall make a good faith effort to provide every member experiencing connectivity issues an opportunity to participate fully in the proceedings, subject to regulations A.2 and A.3.