EXHIBIT E

**McGuireWoods LLP**
888 16th Street N.W.
Suite 500
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**George J. Terwilliger III**
Direct: 202.857.2473

MCGUIREWOODS

gterwilliger@mcguirewoods.com
Fax: 202.828.2965

November 3, 2021

VIA EMAIL

Honorable Bennie G. Thompson, Chairman
Honorable Liz Cheney, Vice Chair
Select Committee to Investigate the January 6th Attack on the United States Capital
U.S. House of Representatives
1540A Longworth House Office Building
Washington, DC  20515

Re:     Subpoenas Served on Honorable Mark R. Meadows

Dear Chair Thompson and Vice Chair Cheney:

Thank you for your letter of October 25, 2021, and thanks to you and to the Select Committee for your willingness to engage with us on the important issues raised by the Select Committee's subpoena to former White House Chief of Staff Mark Meadows. As your letter recognizes, these issues have been the frequent subject of litigation and of conflicting views between Congress and the Executive.

One of the important themes coming out of that litigation, and out of over 200 years of conflict between the branches, is that efforts to reach mutual accommodations to resolve differences have been the norm.  *See, e.g.*, *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2029–31 (2020). Considering that history of engagement to find accommodation—which the courts obviously favor—the Select Committee's position, as expressed in your letter, is rather surprising, and indeed disappointing.  The Select Committee apparently rejects each and every consideration raised in our correspondence with the Select Committee and with the White House Counsel that bears on whether and to what extent Mr. Meadows would be in a position to supply information to the Select Committee pursuant to its subpoena.

The purpose of this letter is to explore whether the Select Committee is willing to pursue some accommodation with Mr. Meadows that respects the position in which he finds himself and allows

Select Committee to Investigate the January 6th Attack on the United States Capital
November 3, 2021
Page 2

the Committee to obtain information without abridging what Mr. Meadows believes in good faith to be his legal obligations arising from his tenure as White House Chief of Staff.

For context, former President Trump has directed Mr. Meadows, both in writing and orally, to maintain such privileges and immunities as apply to the demands of the Select Committee's subpoena. As you note in your letter, the former President has also filed a lawsuit challenging on various grounds the Select Committee's subpoena to the Archivist of the United States. While that lawsuit does not directly implicate the Select Committee's subpoena for Mr. Meadows's testimony, there is no reasonable doubt that the issues of privilege and valid legislative purpose raised in that lawsuit also bear on Mr. Meadows. Moreover, to date, and notwithstanding a specific inquiry through counsel to the Biden White House, Mr. Meadows has received no direction from the current President that contradicts or otherwise conflicts with the direction he has received from former President Trump.

Under these circumstances, it would be untenable for Mr. Meadows to decide unilaterally that he will waive privileges that not only protected his own work as a senior White House official but also protect current and future White House officials, who rely on executive privilege in giving their best, most candid advice to the President.

Thus, if we were forced to litigate whether Mr. Meadows must comply with the Select Committee's subpoena, we would of necessity assert executive privilege, among other challenges to the subpoena. That is especially necessary since, as mentioned above, your letter gives no indication of any willingness on the part of Select Committee to accommodate executive privilege or any of the other relevant considerations that inform Mr. Meadows's legal position.

In addition, the Select Committee's apparent unwillingness to pursue accommodation would compel Mr. Meadows to maintain his position, consistent with multiple opinions from a bipartisan group of Attorneys General, that senior White House aides cannot be compelled to testify before Congress in relation to their duties. I recognize, as your letter points out, that to date, the lower courts have not shared that view. But to our best knowledge, the Executive Branch has never retreated from that position, and of course, the Supreme Court has never had the opportunity to address it. What remains inescapable, in any event, is that compelling senior White House officials to testify before Congress has a chilling effect on the ability of senior aides, current and future, to communicate with and on behalf of the President they serve. For that reason, Mr. Meadows would resist being so compelled unless and until a court orders him to do otherwise, including after full appellate review.

Mr. Meadows is not resisting the Select Committee's subpoena to pick a fight or to hide unflattering information. To the contrary, it would be in his personal interest for members of the Select Committee and the public at large to understand the basic facts as to what occurred. For example, we anticipate that, if we were to be able to reach some accommodation with the Committee without vitiating privilege considerations, the Select Committee would learn that neither Mr. Meadows, nor to this knowledge anyone on the White House staff, had advanced knowledge of violent acts or a plan to infiltrate the Capitol Building, and that there was no delay

Select Committee to Investigate the January 6th Attack on the United States Capital
November 3, 2021
Page 3

when the Administration was called to help restore order. Mr. Meadows is acting in good faith to protect the privileges and institutional prerogatives of the Executive Branch which attach to his tenure at the White House, as one would expect from any responsible former Chief of Staff.

It is not unusual for Congress and executive officials to have competing views about Congress's authority and executive officials' privileges and immunities. As noted above, such disputes have been a common feature of this sort of episode for more than two centuries. But equally common has been a willingness of both sides to discuss and negotiate in good faith to determine whether an accommodation can be reached. In that spirit, Mr. Meadows is willing to explore with the Select Committee whether, outside the confines of the subpoena, an accommodation could be reached by which he might be able to answer, under agreed upon and appropriate circumstances, a limited set of questions that would further a valid legislative purpose within the scope of the Select Committee's inquiry.

Sincerely yours,

George J. Terwilliger III


cc:     Honorable Timothy J. Heaphy, Chief Investigative Counsel
        Honorable John F. Wood, Senior Investigative Counsel