EXHIBIT K

**BENNIE G. THOMPSON, MISSISSIPPI**
**CHAIRMAN**

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
*LIZ CHENEY, WYOMING*
*ADAM KINZINGER, ILLINOIS*

U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800



### One Hundred Seventeenth Congress

### Select Committee to Investigate the January 6th Attack on the United States Capitol

November 11, 2021

Mr. George Terwilliger III
McGuire Woods LLP
888 16th Street N.W., Suite 500
Washington, D.C. 20006

Dear Mr. Terwilliger:

The Select Committee to Investigate the January 6th Attack ("Select Committee") is in receipt of your letter dated November 10, 2021, in which you state that Mr. Meadows feels "duty bound" to disregard the Select Committee's subpoena requiring him to produce documents and appear for testimony. Mr. Meadows's conclusion about his duty, however, relies on a misunderstanding of his legal obligations under the subpoena. The law requires that Mr. Meadows comply with the subpoena absent an applicable immunity or valid assertion of a Constitutionally based privilege. The attached letter from the White House Counsel's Office, dated today, eviscerates any plausible claim of testimonial immunity or executive privilege, and compels compliance with the Select Committee's subpoena.

In your letters and telephone conversations with the Select Committee since October 7, 2021, you have indicated that Mr. Meadows "is immune from compelled congressional testimony on matters related to his official responsibilities." That position is based on Department of Justice Office of Legal Counsel ("OLC") opinions in which OLC has advised past presidents to claim that senior advisors cannot be required to provide testimony to Congress about official actions. These opinions, however, do not justify Mr. Meadows's refusal to provide the Select Committee information about one of the most significant events in our Nation's history. As we previously conveyed, every federal court that has considered the issue of absolute immunity has rejected it, *even after* OLC last opined on the matter. *See, e.g.*, *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 106 (D.D.C. 2008) (rejecting former White House counsel's assertion of absolute immunity from compelled congressional process); *Comm. on Judiciary v. McGahn*, 415 F. Supp. 3d 148 (D.D.C. 2019) ("To make the point as plain as possible, it is clear to this Court … that, with respect to senior-level presidential aides, absolute immunity from compelled congressional process simply does not exist.").

Your letters also broadly suggest that Mr. Meadows's testimony is covered by claims of executive privilege. At the same time, you have failed to respond with specificity about any of the areas of inquiry the Select Committee has identified that do not implicate any privilege at all. For example, my most recent letter to you listed eight questions on which the Select Committee seeks Mr. Meadows's testimony related to his use of personal cellular devices and email accounts. Your

Mr. George Terwilliger III
Page 2

letter in response did not address those issues and, instead, made general and unspecified blanket assertions of immunity and executive privilege. But, as you know and, as explained in my letter dated October 25, categorical claims of executive privilege run afoul of caselaw requiring that any claim of executive privilege be asserted narrowly and specifically. *See, e.g., In re Sealed Case (Espy)*, 121 F.3d 729, 752 (D.C. Cir. 1997) ("the presidential communications privilege should be construed as narrowly…"); *Comm. on Oversight & Gov't Reform v. Holder*, 2014 WL 12662665, at *2 (rejecting a "blanket" executive-privilege claim over subpoenaed documents). We find it hard to consider your offer to answer questions in writing as genuine when you failed to respond to the questions we explicitly asked. Please respond to those questions no later than tomorrow.

In addition, Mr. Meadows has not produced even a single document in response to the Select Committee's subpoena. Although you previously indicated that your firm was searching records that Mr. Meadows provided to you, more than enough time has passed for you to complete your review. Please immediately inform the Select Committee whether Mr. Meadows has any records responsive to the subpoena. Your search for responsive records should include (but not be limited to) any text messages, emails, or application-based messages associated with the cellular phone numbers and private email address the Select Committee has identified. If Mr. Meadows has records that you believe are protected by some form of privilege, you must provide the Select Committee a log describing each such record and the basis for the privilege asserted.

Further, the Select Committee understands that today, November 11, 2021, you received the attached letter from the White House Counsel's Office addressing your previously stated concern that "Mr. Meadows has not received any contrary instruction from the current Administration." The White House Counsel's letter clearly explains the current President's position: "[t]he President believes that the constitutional protections of executive privilege should not be used to shield information reflecting an effort to subvert the Constitution itself, and indeed believes that such an assertion in this circumstance would be at odds with the principles that underlie the privilege." For that reason, and others, your client has now been advised that (i) "an assertion of privilege is not justified with respect to testimony and documents" relevant to the Select Committee's investigation, and (ii) the President will not be asserting any claims of executive privilege or testimonial immunity regarding subjects about which the Select Committee seeks documents and testimony from Mr. Meadows.[1]

Simply put, there is no valid legal basis for Mr. Meadows's continued resistance to the Select Committee's subpoena. As such, the Select Committee expects Mr. Meadows to produce

---

[1] Your letter states that Mr. Meadows cannot "in good conscience" give testimony out of an "appreciation for our constitutional system and the separation of powers" because doing so would "undermine the office and all who hold it." You also acknowledge, however, that Congress has successfully obtained information from "senior Executive officials over the past two centuries," as you must, because there is a long history of senior aides providing testimony to Congress without upending our constitutional system. *See, e.g., Trump v. Thompson*, No. 21-cv-2769 at 19-20 (D.D.C. Nov. 9, 2021) (describing congressional testimony of White House staff during the Nixon and Reagan administrations, as well as President George W. Bush's interview with the 9/11 Commission); *see also Presidential Advisers' Testimony Before Congressional Committees: An Overview*, CRS REPORT FOR CONGRESS (April 10, 2007) (providing numerous examples of presidential aides testifying before Congress including, Lloyd Cutler (Counsel to the President), Samuel Berger (Assistant to the President), Harold Ickes (Assistant to the President and Deputy Chief of Staff)).

Mr. George Terwilliger III
Page 3

all responsive documents and appear for deposition testimony tomorrow, November 12, 2021, at 10:00 a.m. If there are specific questions during that deposition that you believe raise legitimate privilege issues, Mr. Meadows should state them at that time on the record for the Select Committee's consideration and possible judicial review.

The Select Committee will view Mr. Meadows's failure to appear at the deposition, and to produce responsive documents or a privilege log indicating the specific basis for withholding any documents you believe are protected by privilege, as willful non-compliance. Such willful non-compliance with the subpoena would force the Select Committee to consider invoking the contempt of Congress procedures in 2 U.S.C. §§ 192, 194—which could result in a referral from the House of Representatives to the Department of Justice for criminal charges—as well as the possibility of having a civil action to enforce the subpoena brought against Mr. Meadows in his personal capacity.

Sincerely,

Bennie G. Thompson
Chairman