EXHIBIT T

**BENNIE G. THOMPSON, MISSISSIPPI**
**CHAIRMAN**

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS



U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

One Hundred Seventeenth Congress
Select Committee to Investigate the January 6th Attack on the United States Capitol

December 7, 2021

Mr. George Terwilliger III
McGuire Woods LLP
888 16th Street N.W., Suite 500
Washington, D.C. 20006

Dear Mr. Terwilliger:

    The Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") is in receipt of your letter dated December 7, 2021, regarding your client, Mr. Mark Meadows. Your letter confirms that, despite our prior efforts to facilitate a deposition for Mr. Meadows, he does not intend to cooperate with the Select Committee.

    As you no doubt recall, on November 22, 2021, I sent you a letter which explained to you that Mr. Meadows had wholly failed to comply with the subpoena that the Select Committee issued to him on September 23, 2021, and offered him, in good faith, a course of action that would cure his previous non-compliance. That course required Mr. Meadows to produce documents and appear for a deposition.

    Mr. Meadows has produced documents. On November 26, 2021, Mr. Meadows provided to the Select Committee certain documents that you obtained from Mr. Meadows's personal email account and determined were responsive to the Select Committee's subpoena. In doing so, you also provided a privilege log indicating that you withheld several hundred additional documents from Mr. Meadows's personal email account based on claims of executive, attorney-client, or other privilege. Despite your very broad claims of privilege, Mr. Meadows has also produced documents that you apparently agree are relevant and *not* protected by any privilege at all. Those documents include: a November 7, 2020, email discussing the appointment of alternate slates of electors as part of a "direct and collateral attack" after the election; a January 5, 2021, email regarding a 38-page PowerPoint briefing titled "Election Fraud, Foreign Interference & Options for 6 JAN" that was to be provided "on the hill"; and, among others, a January 5, 2021, email about having the National Guard on standby.

    Then, on December 3, 2021, you provided to the Select Committee certain relevant messages that you obtained from saved and backed up phone data from Mr. Meadows's personal cell phone. According to representations made to us, Mr. Meadows reportedly turned in this personal device to his cell phone provider in the weeks following January 6, 2021. You also produced a privilege log indicating that you withheld over 1,000 text messages from Mr. Meadows's personal cell phone based on similarly broad claims of executive, attorney-client, and other privileges. The text messages you did produce include a November 6, 2020, text exchange

with a Member of Congress apparently about appointing alternate electors in certain states as part of a plan that the Member acknowledged would be "highly controversial" and to which Mr. Meadows apparently said, "I love it"; an early January 2021 text message exchange between Mr. Meadows and an organizer of the January 6th rally on the Ellipse; and text messages about the need for the former President to issue a public statement that could have stopped the January 6th attack on the Capitol.

All of those documents raise issues about which the Select Committee would like to question Mr. Meadows and about which you appear to agree are not subject to a claim of privilege. Yet, despite your recent agreement to have Mr. Meadows to come in and answer questions in a deposition, Mr. Meadows now, once again, refuses to do so. In your December 7, 2021, letter, you specifically indicated that Mr. Meadows's refusal to appear is motivated by, among other things, the documents that Select Committee staff provided to you in advance, pursuant to your request for an accommodation. You go on to suggest that those documents somehow indicate that the "Select Committee has no intention of respecting boundaries concerning Executive Privilege." That assertion runs counter to the stated purpose of the December 8, 2021, deposition, which was to give Mr. Meadows a chance to answer the Select Committee's questions or assert and articulate a specific privilege he believes protects that information from disclosure.

Indeed, the Select Committee has tried repeatedly to identify with specificity the areas of inquiry that Mr. Meadows believes are protected by a claim of executive privilege, but neither you nor Mr. Meadows has meaningfully provided that information. As a result, and as I have said numerous times, the Select Committee planned to ask Mr. Meadows questions during a deposition that are relevant to the investigation, while giving Mr. Meadows the opportunity to answer those questions or assert a claim of privilege on a question-by-question basis. That is not a lack of respect for the boundaries of executive privilege but rather an appreciation for the proper process for asserting any protective privilege.

It is also worth noting that your identification of executive privilege issues with documents that came from Mr. Meadows' personal email account and personal cell phone raises the question of whether these materials have been transferred to the National Archives in compliance with the Presidential Records Act.

In your December 7, 2021, letter, you also cite "wide ranging subpoenas for information from a third party communications provider" that the Select Committee has issued "without regard to either the breadth of the information sought . . . nor to the potentially privileged status of the information demanded." I assume that this representation refers to the Select Committee's compulsion of call data records regarding particular cellular telephone numbers. Contrary to your assertion, that information does not implicate privilege, but rather concerns the date, time, and dialing information about calls and messages sent or received by the specific phone numbers indicated on the subpoena. Moreover, production of that information does not impact Mr. Meadows's production of documents and text messages, which are the areas we seek to develop during his deposition tomorrow.

Finally, you reference news accounts regarding another witness's "assertion of 5th Amendment rights before the Select Committee" and claim that my comments suggest that a

Mr. George Terwilliger III
Page 3

witness's assertion of 5th Amendment rights is "tantamount to an admission of guilt." That is not an accurate characterization of my position on the 5th Amendment, nor is that interpretation of my comments consistent with our discussions about the purpose of tomorrow's deposition – *i.e.*, a proceeding in which your client can assert privilege claims with sufficient particularity for further consideration. The Select Committee is trying to ascertain facts that place the January 6th attack on the Capitol in context, not conduct a law enforcement inquiry. If you appear, the Select Committee would consider and evaluate your assertion of any privilege. Your failure to do so prevents that evaluation, which brings us once again to a consideration of enforcement options. This occurs at the same time Mr. Meadows has published a book in which he discusses the January 6th attack. That he would sell his telling of the facts of that day while denying a congressional committee the opportunity to ask him about the attack on our Capitol marks an historic and aggressive defiance of Congress.

      In summary, on November 12, 2021, Mr. Meadows failed to appear for the deposition required by the Select Committee's subpoena. On November 22, 2021, the Select Committee gave Mr. Meadows an opportunity to cure his non-compliance by appearing for a deposition, which was ultimately scheduled for December 8, 2021. Now, the day before the deposition, Mr. Meadows has rejected the opportunity to cure his non-compliance and made it clear that he does not intend to participate in a deposition. There is no legitimate legal basis for Mr. Meadows to refuse to cooperate with the Select Committee and answer questions about the documents he produced, the personal devices and accounts he used, the events he wrote about in his newly released book,[1] and, among other things, his other public statements. The Select Committee is left with no choice but to advance contempt proceedings and recommend that the body in which Mr. Meadows once served refer him for criminal prosecution.

                                      Sincerely,

                                        Bennie G. Thompson
                                        Chairman

---

[1] *See* Mark Meadows, THE CHIEF'S CHIEF (2021) (released December 7, 2021).