# EXHIBIT C

McGuireWoods LLP
888 16th Street N.W.
Suite 500
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

George J. Terwilliger, III
Direct: 202.857.2473

**McGUIREWOODS**

October 11, 2021

Honorable Dana A. Remus
Counsel to the President
The White House
1600 Pennsylvania Avenue NW
Washington, DC  20500

Re:    Congressional Subpoena to Former White House Chief of Staff Mark R. Meadows

Dear Ms. Remus:

I write on behalf of my client, Mark R. Meadows, regarding a subpoena he recently received from the Select Committee to the Investigate the January 6th Attack on the United States Capitol of the U.S. House of Representatives.  While now a private citizen, Mr. Meadows served as White House Chief of Staff under President Donald J. Trump during the period that is the focus of the Select Committee's investigation.  I write now because, as detailed below, Presidents and Presidential Administrations of both parties have long maintained the position that Congress cannot compel senior advisors to the President to testify or to produce records of their communications with and on behalf of the President.  The Select Committee's subpoena to Mr. Meadows threatens these important principles which safeguard the separation of powers enshrined in the U.S. Constitution.

The Select Committee's subpoena, which Mr. Meadows received on September 23, 2021, seeks both records and testimony regarding Mr. Meadows's tenure as White House Chief of Staff, including his communications with the President of the United States and other senior Executive Branch officials.  A copy of the subpoena is attached.  Mr. Meadows also received a letter, through counsel, on October 6, 2021, from an attorney for President Trump regarding the subpoena.  A copy of the letter is attached as well.

Mr. Meadows has profound respect both for the Congress and for the Presidency as integral parts of the Federal Government established under the U.S. Constitution.  He served four terms in the U.S. House of Representatives, representing North Carolina's 11th District, before serving as White House Chief of Staff.  He is committed both to fulfilling his legal obligations and to protecting the balance of power that underpins our American system of government.

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

Honorable Dana A. Remus
October 11, 2021
Page 2

I am therefore writing to you in hopes of clarifying information we have seen in public reports regarding President Biden's position on the Select Committee's subpoenas (which include subpoenas to other individuals from both inside and outside the Executive Branch) and to request the opportunity to discuss these important matters with you.

***Executive Branch Precedent***

As you know, Presidential Administrations of both parties have consistently maintained that privileged communications within the Executive Branch are immune from congressional subpoena.  *See, e.g.*, *Assertion of Executive Privilege Over Deliberative Materials Regarding Inclusion of Citizenship Question on 2020 Census Questionnaire*, O.L.C. slip. op. (June 11, 2019) (Atty. Gen. William P. Barr); *Assertion of Executive Privilege Over Documents Generated in Response to Congressional Investigation into Operation Fast and Furious*, 36 Op. O.L.C. 1 (2012) (Atty. Gen. Eric H. Holder, Jr.); *Assertion of Executive Privilege Concerning Special Counsel's Interviews of the Vice President and Senior White House Staff*, 32 Op. O.L.C. 7 (2008) (Atty. Gen. Michael B. Mukasey); *Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 2 (1996) (Atty. Gen. Janet Reno).  Among other things, this position guards against "the chilling effect that compliance with [a congressional] subpoena would have on future White House deliberations."  32 Op. O.L.C. at 13.

Considering this longstanding, bi-partisan tradition and its importance to the effective functioning of the Executive Branch, we were surprised to hear reports that you had directed the production of privileged White House documents without consulting the officials from whom they originated. Of course, mistaken media reports would not be unprecedented.  We also understand that not all recipients of the Select Committee's subpoenas may be similarly situated to Mr. Meadows.  We therefore respectfully ask for you to clarify whether you have directed the Archivist to produce privileged materials arising from Mr. Meadows' tenure as Chief of Staff to Congress, and if so, to clarify the scope of that directive.  We also ask that, at an appropriate time and subject to appropriate conditions, you make any such production available to Mr. Meadows and to us as his counsel for the limited purpose of responding to the Select Committee's subpoena.

***Document Production***

In response to the subpoena, we informed the Select Committee on October 7, 2021, of our belief that all the potentially responsive records from Mr. Meadows' tenure as Chief of Staff would be in the custody and control of the Archivist of the United States, consistent with the Presidential Records Act of 1978, 44 U.S.C. §§ 2201–07.  We also expressed our intention to take appropriate steps to confirm that belief.  On October 8, 2021, multiple media outlets reported that you had already instructed the Archivist of the United States to produce responsive materials to the Select

Honorable Dana A. Remus
October 11, 2021
Page 3

Committee without any withholding or redaction based on executive privilege.[1]  Mr. Meadows recognizes that, as a public servant, he created records belonging to the United States and not to him personally.  He asserts no personal stake in the disposition of these records.  But as former White House Chief of Staff, he also wants to ensure that the institution of the Presidency is protected and that the long-standing traditions which protect its operations are not traded away for political expediency.

*Testimony*

Aside from its request for documents, the Select Committee has also sought to compel testimony from Mr. Meadows.  We believe that, consistent with Executive Branch practice, Mr. Meadows is immune from being compelled to testify before Congress regarding his service as White House Chief of Staff.

Long-standing Executive Branch tradition recognizes that senior White House officials enjoy an absolute immunity from compelled testimony before Congress.  *See* Memorandum for All Heads of Offices, Divisions, Bureaus and Boards of the Department of Justice, from John M. Harmon, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Executive Privilege* at 5 (May 23, 1977); Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* (Feb. 5, 1971).  This immunity continues to apply even after senior officials leave the White House.  *See, e.g.*, *Testimonial Immunity Before Congress of the Former Counsel to the President*, O.L.C. slip op., at *2 (May 20, 2019) ("*Testimonial Immunity Before Congress*"); *Immunity of the Former Counsel to the President from Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 192 (2007).  Testimonial immunity is also "distinct from, and broader than, executive privilege" in that it "extends beyond answers to particular questions, precluding Congress from compelling even the appearance of a senior presidential adviser—as a function of the independence and autonomy of the President himself."  *Testimonial Immunity Before Congress*, O.L.C. slip op. at *4.

Notwithstanding the public reports about the Select Committee's document requests, we have no reason to believe that President Biden has purported to waive testimonial immunity for Mr. Meadows in connection with the Select Committee's subpoena.  In the attached letter, former President Trump expressed his view that "Mr. Meadows is immune from compelled testimony on matters related to his official responsibilities."  Ex. B (citing *Testimonial Immunity Before Congress*, O.L.C. slip op.).  There are good reasons to preserve that immunity for the White House Chief of Staff, even if a decision has already been made to produce some otherwise privileged documents.

---

[1] *See, e.g.*, Nicholas Wu et al., *Biden White House waives executive privilege for initial set of Trump-era documents sought by Jan. 6 panel*, POLITICO (Oct. 8l, 2021), *available at* https://www.politico.com/news/2021/10/08/bannon-jan-6-subpoena-515681.

Honorable Dana A. Remus
October 11, 2021
Page 4

The testimonial privilege vindicates the constitutional separation of powers. The President, as the head of a co-equal branch of government, stands on equal constitutional footing with the Congress. For Congress to compel an immediate Presidential advisor—who serves as "an extension of the President"—"to appear and testify would 'promote a perception that the President is subordinate to Congress, contrary to the Constitution's separation of governmental powers into equal and coordinate branches.'" *Testimonial Immunity Before Congress*, O.L.C. slip op. at *4 (quoting *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. 5, 8 (2014) ("*Immunity of the Assistant to the President*").

The testimonial privilege also protects the prerogative of current and future White House officials to provide the President with the frank and candid advice required to discharge faithfully the duties of the office. The Office of Legal Counsel emphasized this point in 2014 to explain why David Simas, Assistant to President Obama, was not required to testify in response to a subpoena from the House Committee on Oversight and Government Reform:

> [A] congressional power to subpoena the President's closest advisers to testify about matters that occur during the course of discharging their official duties would threaten Executive Branch confidentiality, which is necessary (among other things) to ensure that the President can obtain the type of sound and candid advice that is essential to the effective discharge of his constitutional duties.

*Immunity of the Assistant to the President*, 38 Op. O.L.C. at 8. That office noted the Supreme Court's recognition in *United States v. Nixon*, 418 U.S. 683 (1974), of "'the necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in presidential decisionmaking.'" *Immunity of the Assistant to the President*, 38 Op. O.L.C. at 8 (quoting *Nixon*, 418 U.S. at 708).

Past Presidents have thus asserted privilege and testimonial immunity to protect senior officials from prior Administrations from opposite parties. *See, e.g.*, Ellen Nakashima, *Bush Invokes Executive Privilege on Hill*, THE WASHINGTON POST (Dec. 14, 2001) (discussing assertion of privilege by President George W. Bush over materials from the Administration of President William J. Clinton), *available at* https://www.washingtonpost.com/archive/politics/2001/12/14/bush-invokes-executive-privilege-on-hill/b05753f1-baf9-494b-ab52-33eb8ef7bd98/.

We recognize that Congress has placed immense political pressure on the White House to waive executive privilege in connection with the Select Committee's investigation, and that the Administration has already chosen to do so in some circumstances. It is precisely when the political pressure is at its strongest that the longstanding safeguards of the separation of powers become most important.

We respectfully request an opportunity to discuss these matters with you before any decision is made that would purport to require Mr. Meadows to act contrary to Executive Branch precedent.

Honorable Dana A. Remus
October 11, 2021
Page 5

*   *   *

We appreciate your consideration of these important matters.  We hope that you can clarify the record on the Select Committee's request for documents and afford us the opportunity to speak with you about the testimonial immunity that shields Mr. Meadows from the Select Committee's subpoena.  We are happy to make ourselves available to meet with you at your convenience.  In the meantime, please do not hesitate to reach out with any questions.


Sincerely yours,

*[signature]*

George J. Terwilliger III

Counsel to Mr. Meadows


Enclosures


cc:     Honorable Timothy J. Heaphy
        Chief Investigative Counsel
        Select Committee to Investigate the January 6th Attack on the United States Capitol