EXHIBIT D

**BENNIE G. THOMPSON, MISSISSIPPI**
**CHAIRMAN**

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS

U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225–7800



# One Hundred Seventeenth Congress
## Select Committee to Investigate the January 6th Attack on the United States Capitol

October 25, 2021

Mr. George Terwilliger III
McGuire Woods LLP
888 16th Street N.W., Suite 500
Washington, D.C. 20006

Dear Mr. Terwilliger,

    The Select Committee to Investigate the January 6th Attack ("Select Committee") is in receipt of your October 7, 2021, letter and your October 13, 2021, email and attached documents (the "correspondence") regarding the September 23, 2021, subpoena for documents and testimony served on your client Mark R. Meadows (the "subpoena"). The Select Committee is also in receipt of your October 11, 2021, letter addressed to Counsel to the President Dana A. Remus (the "letter to the White House"). You have also had calls with Select Committee staff about the subpoena, the most recent of which occurred on October 20, 2021. Based on the correspondence, the letter to the White House, and calls, I understand that Mr. Meadows believes that, as a former advisor to President Donald Trump, he may be immune from testifying before the Select Committee. In addition, I understand that Mr. Meadows believes that, even if he is not immune from testifying, his testimony may nonetheless be covered by a claim of executive privilege.

    Mr. Scott Gast accepted service of the subpoena on Mr. Meadows's behalf on September 23, 2021. The subpoena demanded that Mr. Meadows produce documents by October 7 and appear for testimony by October 15. The requested documents and testimony relate directly to the inquiry being conducted by the Select Committee, serve a legitimate legislative purpose, and are within the scope of the authority expressly delegated to the Select Committee pursuant to House Resolution 503. In the letter accompanying the subpoena, the Select Committee set forth the basis for its determination that the documents and records sought by the subpoena and Mr. Meadows's deposition testimony are of critical importance to the issues being investigated by the Select Committee.

    Your correspondence to the Select Committee, calls, and letter to the White House have suggested Mr. Meadows's belief in the potential existence of testimonial and subject-matter privileges. No such blanket testimonial immunity exists, and the Select Committee does not believe that executive privileges bar the Select Committee from legally obtaining any aspects of Mr. Meadows's deposition testimony.

Mr. George Terwilliger III
Page 2

*First*, the Select Committee has not received any assertion, formal or otherwise, of any privilege from ex-President Trump with respect to Mr. Meadows's production of documents or appearance to provide testimony.[1] Even assuming that, as a former President, Mr. Trump is permitted to formally invoke executive privilege, he has not done so. The Select Committee is not aware of any legal authority, and your letter cites none, holding that a vague statement by somebody who is not a government official that an ex-President has an intention to assert a privilege absolves a subpoena recipient of his duty to comply.

*Second*, your correspondence, communications with Select Committee staff, and letter to the White House indicate that Mr. Trump "believes that Mr. Meadows is immune from compelled congressional testimony on matters related to his official responsibilities." Even setting aside the fact that the Select Committee is interested in questioning Mr. Meadows, in part, about actions that cannot be considered part of his "official responsibilities," Mr. Meadows is not permitted by law to assert the type of blanket testimonial immunity that Mr. Trump and your letter to the White House suggest. To the contrary, every court that has considered the absolute immunity Mr. Trump alludes to has rejected it. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 106 (D.D.C. 2008) (rejecting former White House counsel's assertion of absolute immunity from compelled congressional process). Those cases make clear that even the most senior presidential advisors may not resist a congressional subpoena "based solely on their proximity to the President." *Miers* at 101 (citing *Harlow*, 457 U.S. at 810).[2] And, although your letter to the White House cites several Department of Justice Office of Legal Counsel ("OLC") opinions in which OLC insists that such immunity exists even after *Miers*, yet another judge has forcefully rejected that position *after* OLC's last memorandum opinion addressing absolute immunity. *See Comm. on Judiciary v. McGahn*, 415 F. Supp. 3d 148 (D.D.C. 2019) ("To make the point as plain as possible, it is clear to this Court … that, with respect to senior-level presidential aides, absolute immunity from compelled congressional process simply does not exist.").

*Third*, your correspondence, communications with Select Committee staff, and letter to the White House indicate that Mr. Meadows also believes that his potential testimony would be protected as privileged communications within the executive branch. That is not the case. Executive privilege is a qualified privilege—not an absolute one—that may be invoked to prevent disclosure of communications with the President related to his official responsibilities, as well as deliberations about official responsibilities within the executive branch. With respect to Mr. Meadows, I understand that Select Committee staff has already discussed with you a non-exhaustive list of deposition topics that fall outside of any executive-privilege claim, including:

---

[1] By civil complaint filed on October 19, 2021, in the United States District Court for the District of Columbia, Mr. Trump has formally alleged that executive privileges should prevent the National Archives from producing Mr. Trump's White House documents to the Select Committee. That lawsuit does not formally assert any privilege with respect to Mr. Meadows and does not seek any relief related to the subpoena served on Mr. Meadows.

[2] It is also worth noting that the court in *Miers* rejected the former White House Counsel's claim of absolute immunity from congressional testimony even though the sitting President had formally invoked executive privilege. *Id.* at 62.

Mr. George Terwilliger III
Page 3

communications and meetings involving people who did not work for the United States government; communications and meetings with members of Congress; Mr. Meadows's campaign-related activities; communications and meetings about topics for which the Department of Justice and the White House have expressly declined to assert executive privilege; and, topics about which Mr. Meadows has already spoken publicly. Mr. Meadows must comply with the subpoena to answer questions about those and other issues, and his apparent reliance on a categorial claim of executive privilege runs afoul of long-standing caselaw requiring that any claim of executive privilege be asserted narrowly and specifically. *See, e.g.*, *In re Sealed Case (Espy)*, 121 F.3d 729 (D.C. Cir. 1997); *Comm. on Oversight & Gov't Reform v. Holder*, No. 12-cv-1332, 2014 WL 12662665, at *2 (D.D.C. 2014) (rejecting a "blanket" executive-privilege claim over subpoenaed documents).

      The Select Committee appreciates your ongoing willingness to discuss Mr. Meadows's appearance, and the Select Committee agreed to postpone the subpoena deadlines to give you and Mr. Meadows an opportunity to consult with the White House counsel's office to facilitate our discussion of this and other scoping issues. It now appears that Mr. Meadows may still believe that his appearance cannot be compelled and that his testimony is privileged. Given the impasse, the Select Committee must proceed and insist, pursuant to the subpoena, that Mr. Meadows produce all responsive documents by November 5, 2021, and appear for testimony on November 12, 2021. The Select Committee expects Mr. Meadows's production of documents and appearance for testimony on these dates. If there are specific questions at that deposition that you believe raise privilege issues, Mr. Meadows should state them at that time for the deposition record for the Select Committee's consideration and possible judicial review.

      Please be advised that the Select Committee will view Mr. Meadows's failure to respond to the subpoena as willful non-compliance. Such willful non-compliance with the subpoena would force the Select Committee to consider invoking the contempt of Congress procedures in 2 U.S.C. §§ 192, 194—which could result in a referral from the House to the Department of Justice for criminal charges—as well as the possibility of having a civil action to enforce the subpoena brought against Mr. Meadows in his personal capacity.

      Sincerely,

Bennie G. Thompson
Chairman