EXHIBIT H

McGuireWoods LLP
888 16th Street N.W.
Suite 500
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**George J. Terwilliger III**
Direct: 202.857.2473

**McGUIREWOODS**

gterwilliger@mcguirewoods.com
Fax: 202.828.2965

November 8, 2021

VIA EMAIL

Honorable Bennie G. Thompson, Chairman
Honorable Liz Cheney, Vice Chair
Select Committee to Investigate the January 6th Attack on the United States Capitol
U.S. House of Representatives
1540A Longworth House Office Building
Washington, DC  20515

Re: <u>Subpoenas Served on Honorable Mark R. Meadows</u>

Dear Chair Thompson and Vice Chair Cheney:

I write in response to Chairman Thompson's letter of Friday, November 5, 2021.  Thank you for your willingness to discuss the important issues raised by the Select Committee's subpoena.  You asked that I respond by today, Monday, November 8, 2021, and so I am writing to so respond and to further seek some reasonable accommodation of the Select Committee's demands.

Please allow me to reiterate a fundamental point:  Mr. Meadows position regarding testimony to the Select Committee is driven by his intent to maintain privileges that obviously attach to most subject matters arising from his tenure as White House Chief of Staff.  Put simply, whether or not we agree that he lacks standing to assert privilege, it is obvious that he has no authority to unilaterally waive privilege.  Moreover, as a responsible former Chief of Staff, he is abiding by the uniform, bi-partisan position of the Department of Justice that senior-most White House Staff cannot be compelled to provide congressional testimony.  Unless the Department changes its position, and a court of competent authority directs him, after full appellate review, to do otherwise, that is the position we must maintain.

Despite that position, we have, now on several occasions, sought to find, outside the context of compulsion, accommodation with the Select Committee that would allow it to obtain some information from Mr. Meadows legitimately within the purview of a proper legislative purpose.

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

Select Committee to Investigate the January 6th Attack on the United States Capitol
November 8, 2021
Page 2

We have gone so far as to proffer some information about a core aspect of apparent interest to the Select Committee. Unfortunately, our efforts have been met, including in your letter of November 5, with ever-broadening topical demands from the Select Committee (as detailed below), rather than an attempt to narrow our differences by focusing on a more particularized band of inquiry.

Nonetheless, we would propose yet again a means to accommodation outside the scope of subpoena that does not require Congress or Mr. Meadows to waive any legal rights. To that end, we would propose that the Select Committee propound written interrogatories to Mr. Meadows on any topics about which the Select Committee might wish to inquire. If the Select Committee is willing to do so, we are willing to respond to them as quickly as is feasible. That would allow Mr. Meadows to provide what information he can and/or to articulate clear assertions of privilege where applicable to specific questions. We believe doing so, at least initially, would present an orderly approach of far greater promise than would attempting to do so in a live setting.

With respect to the Select Committee's request for documents, please allow me to clarify as I believe your letter may misapprehend what we have related to your staff. While serving as White House Chief of Staff, Mr. Meadows conducted business on a computer and cell phone provided by the Federal Government. We believe that those devices contain the documents that are responsive to the Select Committee's subpoena. But those devices, and the documents on them, are no longer in Mr. Meadows's custody and control. He returned those devices to the Federal Government on January 20, 2021, and we believe them to be in the custody and control of the Archivist. We understand that the Select Committee is already in the process of seeking those and other documents from the National Archives, but Mr. Meadows does not have any formal role in that process.

Separately, to ensure that nothing has been missed, Mr. Meadows has provided us with access to electronic images from his personal accounts and devices. We do not expect those personal accounts and devices to contain much, if any, responsive material, but it is that review which is ongoing. My letter of November 3, 2021 was to indicate that we would agree to produce any responsive materials if we should identify any, without waiving attorney-client or any other applicable privilege. If we identify responsive materials that we conclude must be withheld based on an assertion of privilege, we will most certainly provide a privilege log as you request.

While we appreciate the Select Committee's expressed openness to an accommodation, we are concerned, as referenced above, that your latest letter expands, rather than narrows the scope of topics that any proposed accommodation might address. On October 12, I received from counsel for the Select Committee a list of topics that I was told reflected the Select Committee's view of what lay outside the scope of executive privilege. We had a different view about the applicability of executive privilege to those categories, but we appreciated the effort to reach common ground.

In your latest letter of November 5, however, there is listed an expanded set of categories that plainly implicate executive privilege even under a narrow interpretation of it. For instance, you ask Mr. Meadows to testify about "White House officials' understanding of purported election-related fraud, irregularities, or malfeasance in the November 2020 election." As you

Select Committee to Investigate the January 6th Attack on the United States Capitol
November 8, 2021
Page 3

know, the Executive Branch is responsible for enforcing federal election laws, and it is natural for federal officials to discuss and deliberate on those issues. We do not see how Mr. Meadows could testify about that topic without implicating executive privilege. You also ask Mr. Meadows to testify about President Trump's "and others' efforts to use the Department of Justice to investigate alleged election-related conduct, file lawsuits, propose that state legislatures take election-related actions, or replace senior leadership." As you know, the President is Chief Executive and oversees the Department of Justice, as well as other federal agencies. We do not see how Mr. Meadows could testify about that topic without implicating executive privilege. If we are misunderstanding the Select Committee's position, and there is some narrower subset of these categories that the Select Committee genuinely believes to be outside executive privilege, we would welcome the clarification.

In addition to your expanded list of topics, you also maintain that "this list is non-exclusive and may be supplemented." You also state that the Select Committee "continue[s] to interview additional witnesses who have personal knowledge of these issues and Mr. Meadows's involvement." In addition to raising concerns about the Select Committee moving away from a reasonable accommodation, these statements also raise questions about why the Select Committee feels the need to subpoena the former White House Chief of Staff at all and, in particular, why the Select Committee is insisting on a November 12 date for such testimony. The courts have made clear that an important factor in assessing whether Congress can compel production of information about the President and his senior advisors is whether Congress has alternative means of getting the same information. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 482 (1977); *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2025 (2020). If the Select Committee is already gathering documents and testimony about Mr. Meadows and his conduct during the relevant period, as your letter suggests, it is not clear why the Select Committee needs to gather that information again from him—in a posture that would threaten long-term effects for executive privilege.

The Executive Branch has prudently and consistently maintained in Administrations under both parties that Congress does not have the authority to compel testimony from the President's most senior advisors without the need to parse underlying questions of executive privilege. As the Supreme Court has noted, it can be very difficult to parse out the official and non-official duties of the President, who must serve as a one-man branch of government. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2024 (2020). It is all the more difficult to conduct that parsing during live testimony. Therefore, we believe that the alternate approach we respectfully suggest would provide the best path forward. We hope the Committee will give careful consideration to our suggestion for the use of voluntary interrogatory questions and answers.

*   *   *   *   *

Again, I want to thank you and the Select Committee for your willingness to engage on these important topics. We recognize that the Select Committee and Mr. Meadows have very different views about the scope of Congress' authority and the protections afforded to Mr. Meadows.

Select Committee to Investigate the January 6th Attack on the United States Capitol
November 8, 2021
Page 4

You also note in your letter that, if we do not reach an accommodation, you intend to pursue a contempt citation against Mr. Meadows. We do not believe that would be warranted under the circumstances, but we understand that the Select Committee will do what it sees most fit. We respectfully request, however, that, if the Select Committee does decide to pursue a contempt citation against Mr. Meadows, in fairness to him that our mutual correspondence would be entered into the official record at that time.

Sincerely yours,

George J. Terwilliger III


cc:   Honorable Timothy J. Heaphy, Chief Investigative Counsel
      Honorable John F. Wood, Senior Investigative Counsel