**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK MEADOWS, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-3271-CJN |
| | ) |
| NANCY PELOSI, et al. | ) |
| | ) |
| | ) |

# Exhibit R

**Pre-Decisional & Deliberative/Attorney-Client or Legal Work Product**
**Georgia Proof of Concept**

[LETTERHEAD]

The Honorable Brian P. Kemp
Governor
111 State Capitol
Atlanta, Georgia 30334

The Honorable David Ralston
Speaker of the House
332 State Capitol
Atlanta, Georgia 30334

The Honorable Butch Miller
President *Pro Tempore* of the Senate
321 State Capitol
Atlanta, Georgia 30334

December 28, 2020

Dear Governor Kemp, Mr. Speaker, and Mr. President *Pro Tempore*:

The Department of Justice is investigating various irregularities in the 2020 election for President of the United States. The Department will update you as we are able on investigatory progress, but at this time we have identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia. No doubt, many of Georgia's state legislators are aware of irregularities, sworn to by a variety of witnesses, and we have taken notice of their complaints. *See, e.g.,* The Chairman's Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee Summary of Testimony from December 3, 2020 Hearing, http://www.senatorligon.com/THE_FINAL%20REPORT.PDF (Dec. 17, 2020) (last visited Dec. 28, 2020); Debra, Heine, *Georgia State Senate Report: Election Results Are 'Untrustworthy;' Certification Should Be Rescinded*, THE TENNESSEE STAR (Dec. 22, 2020), *available at* https://tennesseestar.com/2020/12/22/georgia-state-senate-report-election-results-are-untrustworthy-certification-should-be-rescinded/ (last visited Dec. 28, 2020).

**Pre-Decisional & Deliberative/Attorney-Client or Legal Work Product**

In light of these developments, the Department recommends that the Georgia General Assembly should convene in special session so that its legislators are in a position to take additional testimony, receive new evidence, and deliberate on the matter consistent with its duties under the U.S. Constitution. Time is of the essence, as the U.S. Constitution tasks Congress with convening in joint session to count Electoral College certificates, *see* U.S. Const., art. II, § 1, cl. 3, consider objections to any of those certificates, and decide between any competing slates of elector certificates, and 3 U.S.C. § 15 provides that this session shall begin on January 6, 2021, with the Vice President presiding over the session as President of the Senate.

The Constitution mandates that Congress must set the day for Electors to meet to cast their ballots, which Congress did in 3 U.S.C. § 7, and which for this election occurred on December 14, 2020. The Department believes that in Georgia and several other States, both a slate of electors supporting Joseph R. Biden, Jr., and a separate slate of electors supporting Donald J. Trump, gathered on that day at the proper location to cast their ballots, and that both sets of those ballots have been transmitted to Washington, D.C., to be opened by Vice President Pence. The Department is aware that a similar situation occurred in the 1960 election. There, Vice President Richard Nixon appeared to win the State of Hawaii on Election Day and Electors supporting Vice President Nixon cast their ballots on the day specified in 3 U.S.C. § 7, which were duly certified by the Governor of Hawaii. But Senator John F. Kennedy also claimed to win Hawaii, with his Electors likewise casting their ballots on the prescribed day, and that by January 6, 1961, it had been determined that Senator Kennedy was indeed the winner of Hawaii, so Congress accordingly accepted only the ballots cast for Senator Kennedy. *See* Jack M. Balkin, *Bush v. Gore and the Boundary Between Law and Politics*, 110 YALE L.J. 1407, 1421 n.55 (2001).

The Department also finds troubling the current posture of a pending lawsuit in Fulton County, Georgia, raising several of the voting irregularities pertaining to which candidate for President of the United States received the most lawfully cast votes in Georgia. *See Trump v. Raffensperger*, 2020cv343255 (Fulton Cty. Super. Ct.). Despite the action having been filed on December 4, 2020, the trial court there has not even scheduled a hearing on matter, making it difficult for the judicial process to consider this evidence and resolve these matters on appeal prior to January 6. Given the urgency of this serious matter, including the Fulton County litigation's sluggish pace, the Department believes that a special session of the Georgia General Assembly is warranted and is in the national interest.

2

**Pre-Decisional & Deliberative/Attorney-Client or Legal Work Product**

The Electors Clause of the U.S. Constitution provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct," electors to cast ballots for President and Vice President. *See* U.S. Const., art. II, § 1, cl. 2. Many State Legislatures originally chose electors by direct appointment, but over time each State Legislature has chosen to do so by popular vote on the day appointed by Congress in 3 U.S.C. § 1 to be the Election Day for Members of Congress, which this year was November 3, 2020. However, Congress also explicitly recognizes the power that State Legislatures have to appoint electors, providing in 3 U.S.C. § 2 that "[w]henever any State has held an election for the purpose of choosing electors, and has failed to make a choice on the day prescribed by [3 U.S.C. § 1], the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct."

The purpose of the special session the Department recommends would be for the General Assembly to (1) evaluate the irregularities in the 2020 election, including violations of Georgia election law judged against that body of law as it has been enacted by your State's Legislature, (2) determine whether those violations show which candidate for President won the most legal votes in the November 3 election, and (3) whether the election failed to make a proper and valid choice between the candidates, such that the General Assembly could take whatever action is necessary to ensure that one of the slates of Electors cast on December 14 will be accepted by Congress on January 6.

While the Department of Justice believes the Governor of Georgia should immediately call a special session to consider this important and urgent matter, if he declines to do so, we share with you our view that the Georgia General Assembly has implied authority under the Constitution of the United States to *call itself into special session* for the limited purpose of considering issues pertaining to the appointment of Presidential Electors. The Constitution specifies that Presidential Electors shall be appointed by the *Legislature* of each State. And the Framers clearly knew how to distinguish between a state legislature and a state executive, so their disparate choices to refer to one (legislatures), the other (executive), or both, must be respected.[1] Additionally,

---

[1] *See, e.g.*, U.S.C., art. IV, § 4 ("The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of *the Legislature*, *or of the Executive (*when *the Legislature* cannot be convened*)* against domestic Violence.") (emphases added); *id.* art. VI ("The Senators and Representatives before mentioned, and the Members of the *several State Legislatures, and all executive and judicial Officers,* both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution ....") (emphasis added); *id.* XVII amend. ("When vacancies happen in the representation of any State in the Senate, *the executive authority of such State* shall issue writs of election to fill such vacancies: Provided, That *the legislature of any State* may empower

3

Pre-Decisional & Deliberative/Attorney-Client or Legal Work Product

when the Constitution intends to refer to laws enacted by the Legislature and signed by the Governor, the Constitution refers to it simply as the "State." *See, e.g.*, U.S. Const., art. I, § 8 ("[Congress may] exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, *by Cession of particular States*, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of *the Legislature of the State* in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards and other needful Buildings") (emphasis added) (distinguishing between the "State," writ large, and the "Legislature of the State").  The Constitution also makes clear when powers are forbidden to any type of state actor. *See, e.g.*, U.S. Const., art. I, § 10, cl. 1 ("No State shall enter into any Treaty, Alliance, or Confederation ….").  Surely, this cannot mean that a State Governor could enter into such a Treaty but a State Legislature could not, or *vice versa*.

Clearly, however, some provisions refer explicitly to state legislatures — and there the Framers must be taken at their word.  One such example is in Article V, which provides that a proposed Amendment to the Constitution is adopted "when ratified by the Legislatures of three fourths of the several States," which is done by joint resolution or concurrent resolution.  Supreme Court precedent makes clear that the Governor has no role in that process, and that his signature or approval is not necessary for ratification. *See, e.g., Coleman v. Miller*, 307 U.S. 433 (1939).  So too, Article II requires action only by the Legislature in appointing Electors, and Congress in 3 U.S.C. § 2 likewise recognizes this Constitutional principle.

The Supreme Court has explained that the Electors Clause "leaves it to the legislature exclusively to define the method" of appointing Electors, vesting the Legislature with "the broadest possible power of determination." *McPherson v. Blecker*, 146 U.S. 1, 27 (1892).  This power is "placed absolutely and *wholly* with legislatures." *Id.* at 34-35 (emphasis added).  In the most recent disputed Presidential election to reach the Supreme Court, the 2000 election, the Supreme Court went on to hold that when a State Legislature appoints Presidential Electors—which it can do either through statute or through direct action—the Legislature is not acting "solely under the authority given by the people of the State, but by virtue of a direct grant of authority made under Art. II, § 1, cl. 2, of the United States Constitution." *Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S.

---

*the executive thereof* to make temporary appointments until the people fill the vacancies by election *as the legislature may direct*.") (emphases added).

4

70, 76 (2000). The State Legislature's authority to appoint Electors is "plenary." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam). And a State Legislature cannot lose that authority on account of enacting statutes to join the National Election. "Whatever provisions may be made by statute, or by the state constitution, to choose electors by the people, there is no doubt of the right of the legislature to resume the power an any time, for it can neither be taken away nor abdicated." *McPherson*, 146 U.S. at 125.

The Georgia General Assembly accordingly must have inherent authority granted by the U.S. Constitution to come into session to appoint Electors, regardless of any purported limit imposed by the state constitution or state statute requiring the Governor's approval. The "powers actually granted [by the U.S. Constitution] must be such as are expressly given, or given by necessary implication." *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 326 (1816). And the principle of necessary implication arises because our Constitution is not prolix and thus does not "provide for minute specification of its powers, or to declare the means by which those powers should be carried into execution." *Id.* Otherwise, in a situation like this one, if a Governor were aware that the Legislature of his State was inclined to appoint Electors supporting a candidate for President that the Governor opposed, the Governor could thwart that appointment by refusing to call the Legislature into session before the next President had been duly elected. The Constitution does not empower other officials to supersede the state legislature in this fashion.

Therefore whether called into session by the Governor or by its own inherent authority, the Department of Justice urges the Georgia General Assembly to convene in special session to address this pressing matter of overriding national importance.

Sincerely,

| | | |
|---|---|---|
| Jeffrey A. Rosen | Richard Donoghue | Jeffrey Bossert Clark |
| Acting Attorney General | Acting Deputy Attorney General | (Acting) Assistant Attorney General<br>Civil Division |

5