IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK MEADOWS, | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. 1:21CV3217 (CJN) |
| NANCY PELOSI, et al., | ) |
| *Defendants*. | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DENY WITHOUT PREJUDICE OR DEFER RULING ON <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 4

I.     THE COURT SHOULD NOT DEVIATE FROM STANDARD PROCEDURES, ESPECIALLY SINCE THIS CASE IMPLICATES NOVEL AND COMPLEX ISSUES OF THE SEPARATION OF POWERS THAT MERIT THOUGHTFUL CONSIDERATION. ............................................................................................................ 4

II.    THERE ARE DISPUTED FACTUAL ISSUES THAT MERIT A RULE 26(F) CONFERENCE AND LIKELY DISCOVERY. ................................................................. 9

    A.    The Congressional Defendants' own motion raises disputed factual arguments about the capacity in which Mr. Meadows was acting at relevant times. ........................................................................................................ 10

    B.    Discovery is relevant to whether the Select Committee was properly composed. ....................................................................................................... 10

    C.    Discovery is relevant to assessing whether the challenged subpoenas were issued in pursuit of a valid legislative purpose. ........................................... 12

    D.    Discovery is appropriate to rebut the Congressional Defendants' factual assertion that former President Trump did not invoke executive privilege. ......... 13

III.   THE CONGRESSIONAL DEFENDANTS' EFFORT TO EXPEDITE THIS CIVIL CASE IS ALSO IMPROPER BECAUSE THEY HAVE NO AFFIRMATIVE CLAIM FOR RELIEF. ................................................................................................................ 14

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                     **Page(s)**

*Comm. on Ways & Means v. U.S. Dep't of Treasury*,
   No. 1:19cv1974, 2019 WL 4094563 (D.D.C. Aug. 29, 2019) (McFadden, J.) ............... *passim*

*Jeffries v. Barr*,
   965 F.3d 843 (D.C. Cir. 2020) ...................................................................................................9

*Orlowske v. Burwell*,
   318 F.R.D. 544 (D.D.C. 2016) ...................................................................................................9

*Trump v. Mazars USA, LLP*,
   140 S. Ct. 2019 (2020) .............................................................................................................12

*Trump v. Thompson*,
   142 S. Ct. 680 (2022) ...............................................................................................................12

*Trump v. Thompson*,
   20 F.4th 10 (D.C. Cir. 2021) ..............................................................................................12, 13

**Statutes**

44 U.S.C. § 2203 ...............................................................................................................................10

**Other Authorities**

Aaron Blake, *The key texts between Mark Meadows, Mike Lee and Chip Roy*,
   Wash. Post (Apr. 15, 2022),
   https://www.washingtonpost.com/politics/2022/04/15/lee-roy-meadows-texts/ .......................7

Bob Woodward & Robert Costa, *Virginia Thomas urged White House chief to
   pursue unrelenting efforts to overturn the 2020 election, texts show*, Wash.
   Post (Mar. 24, 2022),
   https://www.washingtonpost.com/politics/2022/03/24/virginia-thomas-mark-
   meadows-texts/ ..........................................................................................................................7

Christina Prignano, *Read Sean Hannity's texts to Mark Meadows*, Boston Globe
   (Jan. 5, 2022), https://www.bostonglobe.com/2022/01/05/nation/read-sean-
   hannitys-texts-mark-meadows/ ..................................................................................................7

Fed. R. Civ. P. 12(c) .........................................................................................................................6

Fed. R. Civ. P. 26(f) ...............................................................................................................3, 4, 5, 9

Fed. R. Civ. P. 56(c)(2) .....................................................................................................................6

Fed. R. Civ. P. 56(d) ..................................................................................................................4, 8, 9

H.R. Rep. No. 117-216 (2021)..........................................................................................2, 7

H.R. Res. 503, 117th Cong. (2021).................................................................................6, 11

LCvR 7..................................................................................................................................11

Mary Clare Jalonick, *House panel obtains Trump records after Supreme Court ruling*, AP (Jan. 21, 2022),  https://.com//court-congress-donald-trump-mark-meadows-a60581f71c61b6dd739323a24dfdb8fd..............................................................3, 10

*READ: Text messages Sean Hannity, Marjorie Taylor Greene, Ivanka Trump and others sent to Mark Meadows*, CNN (Apr. 25, 2022), https://www.cnn.com/2022/04/25/politics/read-mark-meadows-texts-sean-hannity-ivanka-trump-marjorie-taylor-greene/index.html....................................................2, 7

Ryan Nobles, et al., *CNN Exclusive: 'We control them all': Donald Trump Jr. texted Meadows ideas for overturning 2020 election before it was called*, CNN (Apr. 9, 2022), https://www.cnn.com/2022/04/08/politics/donald-trump-jr-meadows-text/index.html...........................................................................................7

## INTRODUCTION

This lawsuit raises fundamental Separation of Powers issues arising from subpoenas issued by the Congressional Defendants to Mr. Meadows and his communications carrier. The Select Committee's true political motivations are demonstrated by accusation, innuendo and speculation included in its filings, which are transparently intended to vilify Mr. Meadows—mostly, if not entirely, on matters that are irrelevant to the issues presented. Many of those facts are hotly disputed, but the Congressional Defendants disingenuously suggest to the Court that it would be proper to ignore their calumnies and to proceed to a summary disposition as if their accusations were gospel truth.

If not for the resource-consuming collateral proceedings needed to move to strike much of this extraneous material and the federal courts' clear disfavor for gag orders, Mr. Meadows would have sought both forms of relief to protect his private communications from press leaks and to rein in the Select Committee's false innuendo regarding his conduct. The Congressional Defendants, under the auspices of a legitimate subpoena, induced Mr. Meadows to produce thousands of his private communications only to use them in a concerted and ongoing effort to vilify him publicly through the media. The Court should not countenance the Congressional Defendants now to further their obvious and undeniable political objectives by allowing the legal process to reinforce their speculative claims. In particular, they cavalierly conflate the deplorable attack on and violence inside the Capitol on January 6 with the subject matters of Mr. Meadows's private communications, which are devoid of any evidence that Mr. Meadows had any knowledge of, let alone any role whatsoever in, the untoward events at the Capitol. The Congressional Defendants' suggestion of a summary disposition because there are no disputed material facts should be summarily rejected.

\* \* \*

The Congressional Defendants are now attempting to accelerate this litigation with a pre-discovery motion for summary judgment after waiting months to answer Mr. Meadows's complaint while they pursued a criminal contempt referral and a public smear campaign against him through selective leaks of his private text messages to the press.  That effort is improper, as was Congress's nearly identical attempt three years ago to accelerate litigation over a subpoena for the tax records of then-President Trump, which Judge McFadden squarely rejected.  *See Comm. on Ways & Means v. U.S. Dep't of Treasury*, No. 1:19cv1974, 2019 WL 4094563 (D.D.C. Aug. 29, 2019) (McFadden, J.).  The Court should deny the Congressional Defendants' motion without prejudice as premature—and should also deny their motion to expedite, *see* ECF No. 18, which Mr. Meadows is opposing in a separate filing—for the same reasons, and for additional reasons.

First, this case, like *Ways & Means*, presents "novel and complex questions about the privileges and authority of all three branches of federal government," and "the weighty constitutional issues and political ramifications it presents militate in favor of caution and deliberation, not haste."  2019 WL 4094563, at *1.  The Congressional Defendants could have sought expedited resolution of their dispute with Mr. Meadows through civil litigation in December when Mr. Meadows first filed this case, a path that would have been welcome.  But instead, they deferred their answer for as long as possible to pursue a ***criminal*** contempt referral against Mr. Meadows, *see* H.R. Rep. No. 117-216 (2021), and to wage a sustained media campaign against him (fueled by Congressional leaks of his private text messages) that continues to this day, *see READ: Text messages Sean Hannity, Marjorie Taylor Greene, Ivanka Trump and others sent to Mark Meadows*, CNN (Apr. 25, 2022), https://www.cnn.com/2022/04/25/politics/read-mark-meadows-texts-sean-hannity-ivanka-trump-marjorie-taylor-greene/index.html.  They should not now be heard to complain about the need for expedited ***civil*** resolution of this dispute.  Rather, the

Court should stick to "the traditional litigation sequence" including "discovery, if appropriate; and only then, summary judgment." *Ways & Means*, 2019 WL 4094563, at *2. Indeed, the parties still need to hold their Rule 26(f) Conference.[1]

Second, as the Congressional Defendants' own motion illustrates, there are important factual issues germane to both sides' arguments that ought to be addressed at the Rule 26(f) Conference, and which may be the appropriate subjects for discovery. The Congressional Defendants' own motion for summary judgment rests on a factual assertion that Mr. Meadows acted beyond the scope of his official role as Chief of Staff to then-President Trump through involvement with the President's reelection campaign, *see* ECF No. 15 at 52, and therefore lacks a basis to assert immunity. Yet they sought and obtained from the National Archives presidential records created by Mr. Meadows that would directly contradict the notion he was acting in an unofficial capacity.[2] Mr. Meadows does not presently have access to these documents, but the Congressional Defendants do. Decl. of George J. Terwilliger III ¶ 4. And as discussed below, there are additional factual issues relevant to Mr. Meadows's claims and to the Congressional Defendants' defenses that merit further factual development before cross-motions for summary judgment would be ripe.

Finally, there is even less basis in this case than there was in *Ways & Means* for Congress to seek expedition because, here, Congress has chosen to pursue criminal contempt ***instead of*** civil enforcement of its subpoena. The Congressional Defendants therefore have no civil claim for relief which they can ask the Court to grant on an expedited basis. Indeed, it would be profoundly

---

[1] The parties have scheduled a Rule 26(f) Conference for May 2, 2022.

[2] *See* Mary Clare Jalonick, *House panel obtains Trump records after Supreme Court ruling*, AP (Jan. 21, 2022) https://apnews.com/article/capitol-siege-us-supreme-court-congress-donald-trump-mark-meadows-a60581f71c61b6dd739323a24dfdb8fd.

unfair for the Congressional Defendants to deprive Mr. Meadows of a meaningful opportunity to litigate the civil claims that he initiated by (1) deferring their answer and thus fending off the anticipated discovery period to pursue their own preferred tactics of criminal contempt and public smearing, and then (2) seeking expedited summary judgment contemporaneously with their answer to try to end the case before that discovery period has even begun.[3]

This Court "enjoy[s] broad discretion when deciding case management and scheduling matters." *Ways & Means*, 2019 WL 4094563, at *2 (quoting *McGehee v. U.S. Dep't of Justice*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019)). And "[b]ecause pre-discovery summary judgment is disfavored, the D.C. Circuit has directed trial courts to grant Rule 56(d) requests almost as a matter of course." *Id.* at *3 (quoting *SoundExchange, Inc. v. Muzak, LLC*, 322 F. Supp. 3d 72, 78 (D.D.C. 2018)).[4] And that remains true even where Congress says that it intends to oppose any discovery requests. *See id.*[5] Pursuant to Fed. R. Civ. P. 56(d), the Court should either deny Defendants' motion without prejudice or should defer its briefing and resolution until the traditional litigation process has unfolded.

## ARGUMENT

I.  **The Court Should Not Deviate from Standard Procedures, Especially Since This Case Implicates Novel and Complex Issues of the Separation of Powers That Merit**

---

[3] Through a motion to expedite, which Mr. Meadows is opposing separately, the Congressional Defendants seek to dictate the timing of Mr. Meadows's own motion(s) for summary judgment. But subject to the procedures proscribed in the Civil Rules and this Court's inherent authority to manage its docket, it is up to Mr. Meadows to determine the appropriate time and place to file his own dispositive motions.

[4] *See also Ways & Means*, at *3 ("[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'") (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012); in turn quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

[5] Without the benefit of a Rule 26(f) Conference, it is premature to say whether Mr. Meadows intends to seek discovery, what precise form that discovery might take, and whether that discovery would be directed to the Congressional Defendants or to third-party custodians.

4

**Thoughtful Consideration.**

The Congressional Defendants' summary judgment motion seeks an end-run around normal civil litigation procedures without any justification. They bear the burden to justify a deviation from standard procedure, which calls for discovery *before* motions for summary judgment. *See Ways & Means*, 2019 WL 4094563, at *1. The importance of normal order is significant here, as it was in *Ways & Means*, because this case involves "weighty constitutional issues and political ramifications" which "militate in favor of caution and deliberation, not haste." *Id*. The Congressional Defendants have not justified a deviation from the normal sequence here. To the contrary, as explained in Part II *infra*, their motion illustrates why consideration of summary judgment is premature.

Until now, the Congressional Defendants have shown an utter lack of urgency in adjudicating this civil case. Mr. Meadows filed his complaint on December 8, 2021, *see* ECF No. 1, and served the Congressional Defendants no later than December 20, 2021, *see* ECF No. 7. If the Congressional Defendants were correct that their motion for summary judgment rests on undisputed facts, there is no good reason why they could not have pursued it much earlier than now. Instead, they were idle for two months, and then sought and obtained additional time to respond. *See* ECF No. 10. Moreover, rather than seeking dismissal or summary judgment, they chose to answer, *see* ECF No. 11, which they knew would trigger a Rule 26(f) conference and the submission of a discovery plan. *See* ECF No. 4 ¶ 6 ("After Defendant files an Answer, the Court will order the Parties to meet and confer . . . ."). Further still, Defendants did not object to Mr. Meadows's request to extend the time for amending his complaint, *see* ECF No. 12, despite knowing that the amended complaint would likewise be followed by an answer and a Rule 26(f) conference. *See* Minute Order Mar. 23, 2022.

The Congressional Defendants then answered Mr. Meadows's amended complaint with numerous denials that necessarily created genuine disputes of material fact. For instance, they denied that "[t]he Select Committee has no ranking member," which is a dispositive issue. ECF No. 13 ¶ 63; ECF No. 17 ¶ 63. They also denied that the Verizon Subpoena amounts to a "criminal investigation, not a legislative fact-finding mission." ECF No. 13 ¶ 108; ECF No. 17 ¶ 108. Further still, Defendants denied that their intent and motivations for the subpoenas are "not as set forth in H. Res. 503." ECF No. 13 ¶ 119; ECF No. 17 ¶ 119. These are just a few examples of Defendants' factual denials which create factual disputes.

The Congressional Defendants also, tellingly, did not move for judgment on the pleadings. If it were true that "[t]he Court need not resolve any triable factual dispute," ECF No. 15 at 16, as Defendants contend, they could have immediately sought judgment on the pleadings after answering the amended complaint. *See* Fed. R. Civ. P. 12(c). Yet again, however, they opted not to follow the normal sequence, and instead moved for summary judgment based on a 29-paragraph "Statement of Undisputed Material Facts" and 26 exhibits, including some that are plainly inadmissible. *See, e.g.*, ECF No. 15-19 (an unsigned, unverified, unauthenticated letter that includes out-of-court statements made by unidentified third parties); ECF No. 15-24 (an unauthenticated letter that includes out-of-court statements); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Thus, Defendants' own conduct belies their sudden demand for an urgent ruling on the merits.

Though the Congressional Defendants dragged their feet in Mr. Meadows's civil case, they were not sitting on their hands. Rather, they made a conscious choice to forgo civil resolution of their dispute with Mr. Meadows and instead to pursue him for ***criminal*** contempt of Congress.

6

*See* H.R. Rep. No. 117-216 (2021). At the same time, they have waged a sustained campaign against him in the press, which has included repeated leaks to the press of Mr. Meadows's personal text messages. *See, e.g.*, Aaron Blake, *The key texts between Mark Meadows, Mike Lee and Chip Roy*, Wash. Post (Apr. 15, 2022), https://www.washingtonpost.com/politics/2022/04/15/lee-roy-meadows-texts/; Ryan Nobles, et al., *CNN Exclusive: 'We control them all': Donald Trump Jr. texted Meadows ideas for overturning 2020 election before it was called*, CNN (Apr. 9, 2022), https://www.cnn.com/2022/04/08/politics/donald-trump-jr-meadows-text/index.html; Bob Woodward & Robert Costa, *Virginia Thomas urged White House chief to pursue unrelenting efforts to overturn the 2020 election, texts show*, Wash. Post (Mar. 24, 2022) https://www.washingtonpost.com/politics/2022/03/24/virginia-thomas-mark-meadows-texts/; Christina Prignano, *Read Sean Hannity's texts to Mark Meadows*, Boston Globe (Jan. 5, 2022), https://www.bostonglobe.com/2022/01/05/nation/read-sean-hannitys-texts-mark-meadows/.

Now that the Congressional Defendants have leaked **all** of the text messages that Mr. Meadows produced to the Select Committee,[6] they suddenly wish to expedite the civil litigation they had pushed to the back burner. And they seek to do so in a way that would deprive Mr. Meadows of the opportunity to develop and clarify the factual record in support of his claims. The Court should not countenance their effort.

This is not the first time a congressional committee has tried this approach. In *Ways & Means*, Congress moved for summary judgment and an expedited merits ruling before any discovery had taken place in an effort to obtain tax records for then-President Trump. *See* 2019 WL 4094563, at *1. Judge McFadden denied those requests. *See id.* at *3. "This Court's general

---

[6] S*ee READ: Text messages Sean Hannity, Marjorie Taylor Greene, Ivanka Trump and others sent to Mark Meadows*, CNN (Apr. 25, 2022), https://www.cnn.com/2022/04/25/politics/read-mark-meadows-texts-sean-hannity-ivanka-trump-marjorie-taylor-greene/index.html.

7

practice," he explained, "is to adhere to the traditional litigation sequence of complaint; answer or motion to dismiss; discovery, if appropriate; and only then, summary judgment." *Id.* at *2.

In support of his ruling, Judge McFadden offered additional observations that are also relevant here. First, he noted that, "it is not clear why only now the Committee asks for expedited consideration of this matter" when it could have done so during the seven-week period after the complaint was filed. *Id.* at *1. If the Committee's seven-week delay was unacceptable in that case, the Congressional Defendants' *four-month* delay clearly weighs in favor of following regular protocol here.

Second, Judge McFadden observed that a civil action involving "weighty constitutional issues and political ramifications," as well as "novel and complex questions about the privileges and authority of all three branches of the federal government," warrants "caution and deliberation, not haste." *Id.* at *1, *2. On top of that, he noted that Congress has designated specific types of cases entitled to expedited treatment, but that "Congress has authorized no similar fast-track" for cases to which it is a party. *Id.* at *1. So, too, this case involves important constitutional issues, political ramifications, and questions of privilege and separation of power, and it does not fall into one of the narrow categories of actions entitled to expedited treatment.

Finally, Judge McFadden denied the Committee's motions based on Fed. R. Civ. P. 56(d). He explained that: "President Trump suggests that he intends to seek discovery. . . . Because pre-discovery summary judgment is disfavored, the D.C. Circuit has directed trial courts to grant Rule 56(d) requests almost as a matter of course. . . . Indeed, summary judgment is premature unless all parties have had a full opportunity to conduct discovery." *Id.* at *3 (citations and internal quotation marks omitted). Like President Trump, Meadows also intends to seek discovery, *see infra*, which renders Defendants' summary judgment motion "premature."

8

As shown, Defendants offer no justification for deviating from standard procedures, and there is every reason here to allow Mr. Meadows to pursue his claims through the necessary discovery process. Moreover, Judge McFadden's well-reasoned denial of a Congressional Committee's analogous request applies equally here. This Court should follow that rationale and deny Defendants' summary judgment motion without prejudice or defer a ruling on it until after the necessary discovery has taken place.

II.     **There Are Disputed Factual Issues That Merit a Rule 26(f) Conference and Likely Discovery.**

The Court should not rule on Defendants' 60-page summary judgment motion and their 29-paragraph statement of "undisputed" facts without the benefit of any discovery. Under Fed. R. Civ. P. 56(d), the Court has the authority to deny a summary judgment motion or defer a ruling on it while the parties conduct discovery. Denial or deferral is appropriate under Rule 56(d) where the party opposing summary judgment can "(1) outline the particular facts [he] intends to discover and describe why those facts are necessary to the litigation; (2) explain why [he] could not produce those facts in opposition to the pending summary-judgment motion; and (3) show that the information is in fact discoverable." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (citations and internal quotation marks omitted); *see also Orlowske v. Burwell*, 318 F.R.D. 544, 547 (D.D.C. 2016) ("A request by the nonmoving party for additional time to conduct discovery should thus be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." (internal quotation marks omitted)). Mr. Meadows easily satisfies these prerequisites. Moreover, even apart from Rule 56(d), the Court "enjoy[s] broad discretion when deciding case management and scheduling matters." *Ways & Means*, 2019 WL 4094563, at *2 (quoting *McGehee v. U.S. Dep't of Justice*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019)). There are

many disputed factual issues that warrant deferral of the Congressional Defendants' summary judgment motion, just some of which are outlined here.

### A. The Congressional Defendants' own motion raises disputed factual arguments about the capacity in which Mr. Meadows was acting at relevant times.

Factual development through discovery is appropriate to allow Mr. Meadows a fair opportunity to oppose the Congressional Defendants' argument that he lacks immunity because, inter alia, he acted outside the scope of his official role as White House Chief of Staff. In their motion, Defendants draw what they view (erroneously) as a bright line between an "Executive Branch [O]fficial" and a "campaign functionary." ECF No. 15 at 52. Mr. Meadows intends to argue that this distinction is wrong as a matter of law. But he also intends to argue that, even if there were such a line, his conduct would fall on the side of immunity. Among the potentially relevant evidence to opposing this argument are Mr. Meadows's official e-mail communications from his time at the White House. These communications are presidential records owned and in the custody of the National Archives. *See* 44 U.S.C. § 2203. Mr. Meadows has not had access to those e-mails since leaving the White House. The Congressional Defendants, by contrast, have obtained at least some of those communications through other subpoenas.[7] They should not be permitted to pursue summary judgment on the contours of Mr. Meadows's official role without his having the opportunity to seek those and other relevant materials—whether through discovery directed to Congressional Defendants, or through discovery directed to appropriate third parties.

### B. Discovery is relevant to whether the Select Committee was properly composed.

Discovery is also appropriate to support Mr. Meadows's claim that the subpoenas are invalid because the Select Committee that issued them is not properly constituted and the taking

---

[7] *See* Mary Clare Jalonick, *House panel obtains Trump records after Supreme Court ruling*, AP (Jan. 21, 2022), https://apnews.com/article/capitol-siege-us-supreme-court-congress-donald-trump-mark-meadows-a60581f71c61b6dd739323a24dfdb8fd.

10

of depositions not properly ordered. *See* ECF No. 13 ¶¶ 120–129, That claim, if successful, would provide a basis for the Court to grant Mr. Meadows relief without regard to the Congressional Defendants' arguments about his testimonial immunity. Such discovery could include information relevant to the extent and nature of the consultation between Speaker Nancy Pelosi and Minority Leader Kevin McCarthy and whether the Select Committee has a ranking minority member. House Resolution 503 requires that, "[t]he Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader," and specifies that the ordering of depositions requires the Chairman's "consultation with the ranking minority member." H.R. Res. 503, 117th Cong. (2021). In their summary judgment motion, Defendants argue that these requirements were satisfied by the actions of Speaker Pelosi. *See* ECF No. 15, at 32–36. But this factual assertion only underscores how inappropriate it would be to adjudicate their motion without affording Mr. Meadows the opportunity to develop the factual record.

In their Statement of Undisputed Material Facts, Defendants allege that, "[t]he Speaker then spoke with the Minority Leader, advised him that she would appoint three of the Members he had recommended, and asked the Minority Leader to recommend two other Republicans." ECF No. 15-28 ¶ 5. Defendants fail to support this allegation with any factual support or citations to evidence in violation of LCvR 7(h)(1)'s requirement that a statement of material facts "shall include references to the parts of the record relied on to support the statement."[8]  More importantly, the unsupported allegation highlights Mr. Meadows's need to understand the full nature and extent of the supposed consultation by obtaining written correspondence between Speaker Pelosi and Minority Leader McCarthy in addition to the testimony of individuals with

---

[8] "The Court *strictly enforces* Local Civil Rule 7(h) . . . ." ECF No. 4 ¶ 10 (emphasis added).

knowledge of those conversations. At this early stage of the litigation, Meadows has had no opportunity to obtain these materials through discovery.

### C. Discovery is relevant to assessing whether the challenged subpoenas were issued in pursuit of a valid legislative purpose.

Discovery is also appropriate to address whether the Select Committee is pursuing a valid legislative purpose through its subpoenas to Mr. Meadows and his communications provider.[9] In his amended complaint, Mr. Meadows alleges that, "[t]he subpoena seeks Executive Branch deliberative material, information both temporally and logically disconnected from the events of January 6, and information that is irrelevant to any conceivable legislation [and] has no bearing on any contemplated legislation." ECF No. 13 ¶ 136. Defendants deny this allegation. *See* ECF No. 17 ¶ 136. Mr. Meadows further alleges that, in lieu of any valid purpose, Defendants are "pursuing Mr. Meadows in an effort to expose and embarrass their partisan rivals for political gain." ECF No. 13 ¶ 119. Defendants also deny that allegation. *See* ECF No. 17 ¶ 119. Finally, Mr. Meadows contends that Defendants' invalid purpose is evidenced by their repeated leaking of his documents and information to the press. *See* ECF No. 13 ¶¶ 64, 115, 117-118, 142. Yet again, Defendants deny these allegations. *See* ECF No. 17 ¶¶ 64, 115, 117-118, 142. Clearly, this is a disputed

---

[9] The Congressional Defendants argue that "the D.C. Circuit in *Trump v. Thompson*, 20 F.4th 10, 37-38 (D.C. Cir. 2021), has already rejected th[e] argument" "that the Select Committee lacks an appropriate legislative purpose." ECF No. 15 at 13. That is flatly wrong—though the Court need not resolve this issue now. It is clearly established that the validity of a congressional subpoena turns not on whether the committee in question has a valid legislative purpose *at all*, but whether the subpoena in question has been issued in furtherance of a valid legislative purpose. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020). That the D.C. Circuit found a valid legislative purpose for a *different* subpoena directed to a *different* target therefore fails to resolve the question presented here. Indeed, the most important principle for this case arising out of the *Trump v. Thompson* litigation is principle expressed by Justice Kavanaugh that "[a] former President must be able to successfully invoke the Presidential communications privilege for communications that occurred during his Presidency, *even if the current President does not support the claim of privilege*." *Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (statement of Kavanaugh, J., respecting denial) (emphasis added).

factual issue that Mr. Meadows will use, for example, to distinguish his subpoenas from the one considered in *Trump v. Thompson*, 20 F.4th 10 (D.C. Cir. 2021) and to present evidence that the D.C. Circuit did not have before it in that case.  In fact, comparing the subpoenas, it is readily noticeable that the Congressional Defendants have released documents produced in response to Mr. Meadows's subpoena in a way that they did not with the documents produced in response to the National Archives subpoena considered in *Trump v. Thompson*. Without discovery, however, Mr. Meadows cannot obtain communications between the Select Committee and the press that would clearly show a non-legislative intent for the subpoena.  Therefore, discovery on this issue is necessary for Mr. Meadows to support his argument on summary judgment.

> **D.    Discovery is appropriate to rebut the Congressional Defendants' factual assertion that former President Trump did not invoke executive privilege.**

There is a clear dispute of fact about whether former President Trump invoked executive privilege over the items subpoenaed by the Select Committee.  According to Mr. Meadows, "former President Trump sent a letter to Mr. Meadows instructing him to maintain executive privilege in connection with any response to the Meadows Subpoena."  ECF No. 13 ¶ 75. Defendants deny that allegation. *See* ECF No. 17 ¶ 75.  In their summary judgment motion, they further argue that "former President Trump has not properly invoked privilege over Mr. Meadows's documents or testimony" because, according to them, "[h]e has never directly or formally communicated that position to the Select Committee." ECF No. 15 at 37.  Mr. Meadows cannot possibly know whether that unsupported contention is true without discovery—or whether the Select Committee had awareness of former President Trump's assertions.  Therefore, to oppose Defendants' summary judgment motion, Mr. Meadows must be able to pursue obtaining correspondence between the Select Committee, former President Trump, or other relevant parties and possible deposition of individuals with knowledge of those conversations.

**III.     The Congressional Defendants' Effort to Expedite This Civil Case Is Also Improper Because They Have No Affirmative Claim for Relief.**

The Congressional Defendants' sudden effort to expedite the resolution of this civil case is also improper because, unlike in *Ways & Means*, Congress itself chose to forgo civil enforcement and instead to pursue Mr. Meadows for criminal contempt.

For one thing, this decision means that the Congressional Defendants have no affirmative claim for relief which they can ask the Court to grant on an expedited basis. Mr. Meadows filed this case to seek declaratory and other appropriate relief that would prevent the Congressional Defendants from enforcing the challenged subpoenas. *See* ECF 13. The *status quo* is that Mr. Meadows has not obtained such relief, and so the Congressional Defendants have been free to pursue against him a criminal contempt referral and a disparaging media campaign. They have no prospect of getting anything more from this Court because they chose not to seek civil enforcement. Mr. Meadows, by contrast, has endured this one-sided onslaught and now seeks a reasonable opportunity to develop the factual basis for his claims before they are ripe for the Court to address.

It would be manifestly unfair to deprive Mr. Meadows of that meaningful opportunity. And yet that is precisely what the Congressional Defendants' untimely motion for summary judgment and their proposed expedited briefing schedule would do. Until recently, they have hindered Mr. Meadows's ability to develop the factual record by deferring their answer, thus fending off the anticipated discovery period to pursue their own preferred tactics of criminal contempt and public smearing. Now that this tactic has run its course, they are suddenly seeking expedited summary judgment contemporaneously with their answer in an attempt to end the case before the discovery period has even begun.

The Court is well within its discretion to reject such an unjust request.

14

## CONCLUSION

For the reasons discussed, the Court should grant Mr. Meadows's motion and either deny Defendants' motion for summary judgment without prejudice or defer ruling on it.

Dated: April 29, 2022

Respectfully submitted,
MARK MEADOWS
*By Counsel*

/s/ George J. Terwilliger III
George J. Terwilliger III
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Phone: (202) 857-1700
Fax: (202) 857-1737
gterwilliger@mcguirewoods.com

Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
bspears@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that, on April 29, 2022, a copy of the foregoing was filed on the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ George J. Terwilliger III