IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARK MEADOWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21CV3217 (CJN) |
| | ) | |
| NANCY PELOSI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

1.  Before establishing the Select Committee, Congress considered and ultimately rejected a proposal to establish a bipartisan, bicameral commission to investigate the events of January 6, 2021 and to propose "corrective measures that may include changes in law, policy, procedures, rules, or regulations that could be taken to prevent future acts of targeted violence and domestic terrorism."  H.R. 3233, 117th Cong. (2021).

2.  House Resolution 503, which the House of Representatives passed on a near party-line vote, authorized the Select Committee with goals similar to those of H.R. 3233.  H. Res. 503, 117th Cong. (2021).

3.  Section 4 of House Resolution 503 provides that "The Select Committee may not hold a markup of legislation."  H. Res. 503, 117th Cong. (2021).

4.  Section 2(a) of the Resolution states that "[t]he Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader."  H. Res. 503, 117th Cong. (2021).

5.  The Select Committee has only nine members. *See* 167 Cong. Rec. H3597, H3885 (2021).

6. On July 1, 2021, Speaker Pelosi appointed Chairman Thompson and six additional Democrat members—Reps. Lofgren, Schiff, Aguilar, Murphy (FL), Raskin, and Luria—and one Republican—Rep. Liz Cheney. *See* 167 Cong. Rec. H3597 (2021).

7. Minority Leader McCarthy recommended Rep. Jim Banks to serve as Ranking Member of the Select Committee, alongside four more members of the Republican Conference. *See* Press Release, Jim Banks, Member, H.R., *McCarthy Taps Banks to Lead Republicans on Jan 6 Committee* (July 19, 2021), https://banks.house.gov/news/documentsingle.aspx?DocumentID=1921; Press Release, Kevin McCarthy, Minority Leader, H.R., *McCarthy Statement about Pelosi's Abuse of Power on January 6th Select Committee* (Jul 21, 2021), https://www.republicanleader.gov/mccarthy-statement-about-pelosis-abuse-of-power-on-january-6th-select-committee/ [hereinafter McCarthy Press Release].

8. Speaker Pelosi made an "unprecedented decision" to decline to appoint some of those members recommended by Minority Leader McCarthy, appointing instead Rep. Adam Kinzinger. *See* Press Release, Nancy Pelosi, Speaker, H.R., *Pelosi Statement on Republican Recommendations to Serve on the Select Committee to Investigate the January 6th Attack on the U.S. Capitol* (July 21, 2021), https://www.speaker.gov/newsroom/72121-2; 167 Cong. Rec. H3885 (2021) [hereinafter Pelosi Press Release].

9. No member of the Select Committee was recommended by the minority leader or the Republican Conference. *See* McCarthy Press Release, *supra* ¶ 7.

10. No other current committee of the House of Representatives—standing or select—is composed wholly of members appointed by the Speaker *without* the recommendation of the minority leader. *Compare, e.g.*, Pelosi Press Release, *supra* ¶ 8, *with* House Rule X, cl.

2

5(a) *and* Michael Greene, Cong. Rsch. Serv., R46786, *Rules Governing House Committee and Subcommittee Assignment Procedures* 7 (2021).

11. When Speaker Pelosi appointed certain members to the Select Committee on July 1, 2021, she named Rep. Thompson as "Chair." 167 Cong. Rec. H3597 (2021).

12. Speaker Pelosi appointed Rep. Cheney without any designation. *See* 167 Cong. Rec. H3597 (2021).

13. Chairman Thompson designated Rep. Cheney to serve as "Vice Chair" on September 2, 2021. *See* Press Release, Bennie Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, *Chairman Thompson Announces Representative Cheney as Select Committee Vice Chair* (Sept. 2, 2021), https://january6th.house.gov/news/press-releases/chairman-thompson-announces-representative-cheney-select-committee-vice-chair.

14. The term "vice chair" never appears in House Resolution 503. *See generally* H. Res. 503, 117th Cong. (2021).

15. House Rule XI, cl. 2(d) explains that the vice chair of a committee is to be a "member of the majority party."

16. Rep. Cheney is a member of the Republican Conference, which is the minority party in the 117th Congress. *See, e.g.*, 167 Cong. Rec. H9 (2021) (statement of Rep. Cheney).

17. To issue an order for the taking of depositions, House Resolution 503 requires the chair of the Select Committee to "consult[] with the ranking minority member." H. Res. 503 (2021).

18. A Federal Bureau of Investigation report dated November 10, 2021 states that Doug Letter, counsel for Defendants, admitted that the Select Committee has no ranking

member. *See* Mot. Compel Disc. Ex. 9 at 5, *United States v. Bannon*, 1:21cr670, ECF No. 28-9 at 5 (D.D.C. Feb. 4, 2022).

19. The Select Committee's investigative staff is led by two former United States Attorneys: Timothy J. Heaphy and John Wood. *See* Press Release, Bennie Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, *Thompson Announces Chief Investigative Counsel for Select Committee* (Aug. 12, 2021), https://january6th.house.gov/news/press-releases/thompson-announces-chief-investigative-counsel-select-committee; Press Release, Bennie Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, *Thompson & Cheney Announce Senior Investigative Counsel for the Select Committee* (Sept. 17, 2021), https://january6th.house.gov/news/press-releases/thompson-cheney-announce-senior-investigative-counsel-select-committee.

20. The chairman of the Select Committee has described his intention to "bring justice" to the "tragedy of January 6." Bennie Thompson (@BennieGThompson), Twitter, (Jan. 6, 2022 8:31 AM), https://twitter.com/BennieGThompson/status/1479083311163232258?s=20&t=mgVdhFfyScMsFz-S8KzK4Q.

21. Rep. Kinzinger has said he wants to "hold the guilty people accountable." *Kinzinger: 'I want to hold the guilty people accountable' for Jan. 6*, CNN (December 19, 2021), https://www.cnn.com/videos/tv/2021/12/19/sotu-kinzinger-full.cnn.

22. Rep. Schiff has explained that he intends to "expose those responsible for Jan 6," Adam Schiff (@RepAdamSchiff), Twitter (Nov. 12, 2021, 4:54 PM), https://twitter.com/RepAdamSchiff/status/1459278425118625794?s=20&t=m1I0kGXWVIOyM

FMBcXxZXw, and that "exposing all the malefactors and bloodshed that went on here is really important," Mary Clare Jalonick, *Capitol riot committee has interviewed 250 people so far*, Associated Press (Dec. 2, 2021), https://apnews.com/article/steve-bannon-donald-trump-elections-capitol-siege-36b68bd9e0c701fea8e6b11f00292604.

23. The Select Committee hearings, Rep. Raskin has described, "will expose every facet of the assault against our democracy and Constitution on 1/6." Jamie Raskin (@jamie_raskin), Twitter (Apr. 29, 2022, 11:05 AM), https://twitter.com/jamie_raskin/status/1520056793942175744?s=20&t=Zd3m9rX_OVrwcjyIINCYOw.

24. Speaker Pelosi explained in a press conference that "the next step for us has always been to seek and to find the truth." See Nancy Pelosi, Speaker, H.R., *Transcript of Pelosi Weekly Press Conference Today* (Jul. 1, 2021), https://www.speaker.gov/newsroom/7121-2.

25. The Select Committee has held only one hearing, but others appear to be planned for June 2022 forward. *See The Law Enforcement Experience on January 6: Hearing Before the H. Select Comm. to Investigate the Jan. 6 Attack on the U.S. Capitol*, 117th Cong.; Zak Hudak, *House January 6 committee plans eight hearings for June*, CBS News (Apr. 29, 2022), https://www.cbsnews.com/news/january-6-committee-hearings-june/.

26. The Select Committee has interviewed nearly 1,000 witnesses. *See* Mychael Schnell & Harper Neidig, *Jan. 6 panel issues subpoenas to five GOP lawmakers*, The Hill (May 12, 2022), https://thehill.com/policy/national-security/3486269-jan-6-panel-issues-subpoenas-to-five-gop-lawmakers/ (citing Rep. Raskin).

27. The Select Committee has issued more than one hundred subpoenas for documents and/or testimony of witnesses, including fellow members of Congress. *See generally*

Press Releases, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, https://january6th.house.gov/news/press-releases. *See also* Claudia Grisales, et al., *Jan. 6 subpoena tracker: Here's who the House panel wants to hear from*, NPR (last updated Mar. 3, 2022), https://www.npr.org/2021/11/06/1051652687/jan-6-panel-and-subpoenas-committee-targets-witnesses-linked-to-day-of-attack.

28. The Select Committee has also sent preservation notices and demanded records to social media companies, which seek "data, reports, analyses, and communications" of fifteen private companies that "stretch[] back to spring of 2020," months before the 2020 Presidential election and nearly a year before the January 6 attack. Press Release, Bennie Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, *Select Committee Demands Records Related to January 6th Attack from Social Media Companies* (Aug. 27, 2021), https://january6th.house.gov/news/press-releases/select-committee-demands-records-related-january-6th-attack-social-media-0. *See* Press Release, Bennie Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, *Select Committee Subpoenas Social Media Companies for Records Related to January 6th Attack* (Jan. 13, 2022), https://january6th.house.gov/news/press-releases/select-committee-subpoenas-social-media-companies-records-related-january-6th.

29. The Select Committee requested from telecommunications companies cellular data from the personal phones of at least one hundred different individuals, many of whom (including Mr. Meadows) the Select Committee knows was nowhere near the Capitol on January 6. *See, e.g.*, Compl., *Scavino v. Verizon Communications*, 1:22cv18 (D.D.C. Jan. 5, 2022); Zachary Cohen, et al., *Exclusive: January 6 committee casts a wide net with over 100 subpoenas*

*for phone records*, CNN (Dec. 7, 2021) https://www.cnn.com/2021/12/07/politics/january-6-committee-phone-records/index.html.

30. The Select Committee has also sought the fundraising data and tactics from their political adversary: the Republican National Committee. *See* Compl., *Repub. Nat'l Comm. v. Pelosi*, 1:22cv659 (D.D.C. Mar. 15, 2022).

31. And finally, the Select Committee has subpoenaed the personal banking records of at least one individual associated with the Trump campaign. *See* Compl., *Budowich. v. Pelosi*, 1:21cv3366 (D.D.C. Dec. 24, 2021).

32. The Select Committee also sent self-described "sweeping" demands for presidential records from the National Archives and Records Administration (NARA)—including records relating to Mr. Meadow specifically—and seven other Executive Branch agencies. Press Release, Bennie G. Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, *Select Committee Issues Sweeping Demand for Executive Branch Records* (Aug. 25, 2021), https://january6th.house.gov/news/press-releases/select-committee-issues-sweeping-demand-executive-branch-records.

33. After former President Trump asserted Executive Privilege over certain NARA records, President Biden purported to overrule the privilege, given the "unique and extraordinary circumstances" of January 6. *See* Compl. Ex. 5, *Trump v. Thompson*, No. 1:21-cv-2769 (D.D.C. 2021); Second Letter from Dana A. Remus, Counsel to the President, to David Ferriero, Archivist of the United States (Oct. 8, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/10/13/second-letter-from-dana-a-remus-counsel-to-the-president-to-david-ferriero-archivist-of-the-united-states-datedoctober-8-2021/.

34. After a legal battle over the records, NARA eventually released a number of records to the Select Committee, one or more of which related to Mr. Meadows. *See* Decl. George J. Terwilliger III ¶ 4.

35. But the Select Committee has never called upon President Trump to testify—in fact, the Chairman has signaled he has no intention to do so. *See* Rebecca Beitsch, *Jan. 6 panel has no plans to call Trump*, The Hill (May 17, 2022), https://thehill.com/policy/national-security/3491576-jan-6-panel-has-no-plans-to-call-trump/.

36. Mr. Meadows served as Chief of Staff to President Trump from March 31, 2020 until January 20, 2021. *See* First Am. Compl, Ex. A, ECF No. 13-3.

37. The Select Committee issued Mr. Meadows a subpoena on September 23, 2021 demanding he produce documents and appear for a deposition about 27 discrete topics. First Am. Compl. Ex. A, ECF No. 13-3.

38. The Select Committee included one stated legislative purpose in the Meadows Subpoena: to "recommend to the House and its relevant committees corrective laws, policies, procedures, rules, or regulations." First Am. Compl. Ex. A, ECF No. 13-3.

39. The U.S. Department of Justice under both Republican and Democrat administrations has researched and analyzed the law and opined officially that as a matter of law Congress cannot compel testimony from senior advisors of the President. *See, e.g.*, *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege,* 8 Op. O.L.C. 101, 131 (1984); *Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. 1, 5 (1999).

40. Mr. Meadows has been instructed by former President Trump "to not provide any testimony concerning his official duties in response to the Subpoena," as well as to maintain all applicable privileges and immunities. Ex. A.

41. The administration of federal election laws, *see, e.g.*, 52 U.S.C. §§ 10307, 20511; 18 U.S.C. §§ 241-42, is squarely within the purview of the President (and his Chief of Staff) who has a constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const., art. II, § 3.

42. The breadth of a Chief of Staff's duties may necessarily include activities, including political considerations, relevant to the President's reelection and legal matters pertaining to a presidential election. *See* Decl. George J. Terwilliger III ¶ 7.

43. Counsel for Mr. Meadows informed Chief Investigative Counsel for the Select Committee, Timothy J. Heaphy, of former President Trump's invocation of privilege on multiple occasions. *See, e.g.*, Decl. George J. Terwilliger III ¶ 5.

44. Counsel also enclosed this letter with his in his October 11, 2021 correspondence to White House Counsel Dana A. Remus, which was also sent to Heaphy. *See* First Am. Compl. Ex. C.

45. Rules of the House of Representatives provide that if a witness invokes a privilege during his deposition, the chair of a committee ultimately rules on whether or not to override the privilege and order the witness to answer. *See* 167 Cong. Rec. H41 (Jan. 4, 2021).

46. Mr. Meadows engaged in a months-long effort to try to reach an accommodation with the Select Committee concerning testimonial information Mr. Meadows could provide without being compelled to appear and/or unilaterally waiving claims by the former president of Executive Privilege . *See* First Am. Compl. Exs. B, D-K, M-R.

47. Chairman Thompson on November 5, 2021 explained that Mr. Meadows would be questioned on sixteen "non-exclusive" topics. *See* First Am. Compl. Exs. A, ECF No. 13-3, G, ECF No. 13-9, & I, 13-11.

48. For the purpose of this litigation, the Congressional Defendants have described a series of seven topics about which they seek Mr. Meadows's testimony. *See* Defs.' Mot. Summ. J., ECF No. 15 at 14-15.

49. Very little, if any, of the information sought by the Select Committee is in Mr. Meadows's sole possession. For example, there were many individuals present for the Oval Office meeting discussed in the interview of Richard Donoghue, *see* Defs.' Mot. Summ. J. Ex. Q, ECF No. 15-18, and the meetings with members of Congress discussed during Cassidy Hutchinson's interview, *see* Defs.' Mot. Summ. J. Ex. P, ECF No. 15-17, some of whom have clearly already provided requested testimony to the Select Committee.

50. Chairman Thompson twice rejected Mr. Meadows's offer to answer written interrogatories prior to or in lieu of testifying. *See* First Am. Compl. Exs. M, ECF No. 13-15, N, ECF No. 13-16, & T, ECF No. 13-22.

51. Mr. Meadows and the Select Committee agreed that he would appear for a voluntary deposition on December 8, 2021 upon "certain preconditions," including that "Select Committee or its staff will in good faith limit the matters of inquiry and specific questions to that which it believes to be outside the scope of Executive Privilege" and that Mr. Meadows would have three business days to review any documents the Select Committee intended to question him about during the deposition. *See* First Am. Compl. Ex. O, ECF No. 13-17 (agreeing to appear for voluntary deposition upon certain preconditions); First Am. Compl. Ex. Q, ECF No. 13-19 (accepting Mr. Meadows's offer to appear).

52. As demanded by the Select Committee, Mr. Meadows produced more than 1,000 non-privileged emails and documents, as well as 2,319 text messages from his personal devices. *See* First Am. Compl. Exs. P, ECF No. 13-18, & R, ECF No. 13-20.

53. Mr. Meadows's counsel noted in the cover letter accompanying each production that the production was "not intended to waive any of Mr. Meadows's privileges or rights" and that "production of any privileged or otherwise protected information which is not responsive to the subpoena is unintentional, and we request the prompt return of any such information if identified or upon our request." First Am. Compl. Exs. P, ECF No. 13-18, & R, ECF No. 13-20.

54. This caveat was particularly critical—as the Select Committee was aware—given that Mr. Meadows's counsel was unable to accurately determine the privileged nature of all communications because neither Mr. Meadows nor counsel could not identify the sender and/or recipient associated with text messages correspondent phone numbers. *See* Decl. George J. Terwilliger III ¶ 6.

55. Counsel also requested that the produced materials be "treated as confidential and exempt from disclosure beyond the Select Committee." First Am. Compl. Exs. P, ECF No. 13-18, & R, ECF No. 13-20.

56. Mr. Meadows received a notification from Verizon the weekend before his scheduled deposition, explaining that the Select Committee had subpoenaed records from the personal cell phone he used during his tenure as Chief of Staff. *See* First Am. Compl. Ex. S, ECF No. 13-21.

57. The Verizon Subpoena demands certain data from Mr. Meadows's personal cell phone from October 1, 2020 to January 31, 2021, including the following: Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile

11

Electronic Identity Numbers ("MEIN") Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMS!"), or International Mobile Equipment Identities ("IMEI") associated with the accounts, "[o]ther subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses)" and "[a]ll call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections." First Am. Compl. Ex. S, ECF No. 13-21.

58. After considering the Verizon subpoena, along with other actions the Select Committee had recently undertaken, including a statement by Chairman Thompson that those who plead the Fifth Amendment are "part and parcel guilty," Mr. Meadows through counsel informed the Committee he could no longer voluntarily appear for a deposition. *See* First Am. Compl. Ex. T, ECF No. 13-22.

59. The day after Mr. Meadows so informed the Select Committee of this decision, he filed this action. *See* Compl., ECF No. 1.

60. During the floor debate in the House to refer Mr. Meadows for contempt of Congress, Chairman Thompson accused Mr. Meadows of being "part of a coverup" of January 6. 167 Cong. Rec. H7785.

61. Rep. Cheney read Mr. Meadows's private text messages aloud before making an unmistakable accusation that Mr. Meadows knew former President Trump "through action or

inaction, corruptly sought to obstruct or impede Congress' official proceeding to count electoral votes." 167 Cong. Rec. H7786.

62. Rep. Lofgren also read Mr. Meadows's text messages on the House floor, 167 Cong. Rec. H7788, as did Reps. Schiff, *id.* at H7791, Aguilar, *id.,* and Luria, *id.* at H7792.

63. Since Mr. Meadows produced his personal communications to the Select Committee, it has disclosed or caused the disclosure to the news media a steady stream of his communications. *See, e.g.*, Aaron Blake, *The key texts between Mark Meadows, Mike Lee and Chip Roy*, Wash. Post (Apr. 15, 2022), https://www.washingtonpost.com/politics/2022/04/15/lee-roy-meadows-texts/; Ryan Nobles, et al., *CNN Exclusive: 'We control them all': Donald Trump Jr. texted Meadows ideas for overturning 2020 election before it was called*, CNN (Apr. 9, 2022), https://www.cnn.com/2022/04/08/politics/donald-trump-jr-meadows-text/index.html; Bob Woodward & Robert Costa, *Virginia Thomas urged White House chief to pursue unrelenting efforts to overturn the 2020 election, texts show*, Wash. Post (Mar. 24, 2022) https://www.washingtonpost.com/politics/2022/03/24/virginia-thomas-mark-meadows-texts/; Christina Prignano, *Read Sean Hannity's texts to Mark Meadows*, Boston Globe (Jan. 5, 2022), https://www.bostonglobe.com/2022/01/05/nation/read-sean-hannitys-texts-mark-meadows/.

64. On April 25, 2022, all of the 2,319 texts Meadows produced—no more and no less—were provided to CNN and publicly released. *See READ: Text messages Sean Hannity, Marjorie Taylor Greene, Ivanka Trump and others sent to Mark Meadows*, CNN (Apr. 25, 2022), https://www.cnn.com/2022/04/25/politics/read-mark-meadows-texts-sean-hannity-ivanka-trump-marjorie-taylor-greene/index.html.

65. Neither Mr. Meadows nor his counsel provided these texts to members of the press. *See* Decl. George J. Terwilliger III ¶ 8.

66. House Rule XI, cl. 2(i) states, "[O]nly the chair or ranking minority member, after consultation with each other, may make public statements regarding matters before the committee or any subcommittee thereof."

67. Though Defendants deny their involvement in this and the many preceding leaks of Mr. Meadows's documents, *see* Answer First Am. Compl., ECF No. 17 at ¶ 115, no member of the Select Committee has condemned the severe breaches of Mr. Meadows's private, confidential communications, aside from the fact that such leaks detract from the drama of the Select Committee's final report. *See* Peter Nicholas, *Avalanche of leaks imperils Jan. 6 committee's delivering on blockbuster hearings*, NBC News (May 1, 2022), https://www.nbcnews.com/politics/congress/avalanche-leaks-risks-jan-6-committee-delivering-blockbuster-hearings-rcna26549.

Dated: May 20, 2022

Respectfully submitted,
MARK R. MEADOWS
*By Counsel*

/s/ George J. Terwilliger III
George J. Terwilliger III
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Phone: (202) 857-1700
Fax: (202) 857-1737
gterwilliger@mcguirewoods.com

Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
bspears@mcguirewoods.com