**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK MEADOWS,<br><br>                     *Plaintiff*,<br><br>     v.<br><br>NANCY PELOSI, et al.,<br><br>                     *Defendants*. | No. 1:21-cv-03217 (CJN) |

**SUPPLEMENTAL BRIEF OF CONGRESSIONAL DEFENDANTS**

Pursuant to this Court's June 23, 2022 Minute Order, Defendants the Honorable Nancy Pelosi, the Honorable Bennie G. Thompson, the Honorable Elizabeth L. Cheney, the Honorable Adam B. Schiff, the Honorable Jamin B. Raskin, the Honorable Susan E. Lofgren, the Honorable Elaine G. Luria, the Honorable Peter R. Aguilar, the Honorable Stephanie Murphy, the Honorable Adam D. Kinzinger, and the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") (collectively "Congressional Defendants") submit this supplemental brief addressing the three specific questions posed by the Court related to Speech or Debate immunity.

To best assist the Court, we will address the Court's questions in the following order: (1) whether and to what extent it is possible to waive Speech or Debate Clause immunity; (2) whether and to what extent Congressional Defendants affirmatively waive any Speech or Debate Clause immunity as to any of Meadows's claims; and (3) whether Speech or Debate Clause immunity is applicable to all of Meadows's claims.

**Overview Of The Speech Or Debate Clause**

The Speech or Debate Clause, U.S. Const., Art. I, § 6, cl. 1, is firmly rooted in English

political history; specifically, the conflict between Parliament and the Crown. *See Powell v. McCormack*, 395 U.S. 486, 502 (1969). Because of its importance to the democratic system the Framers established, they enshrined Speech or Debate Clause immunity directly in the text of the Constitution. This immunity performs two related functions: First, it protects the "independence and integrity of the legislature," and, second, it "serves the additional function of reinforcing the separation of powers so deliberately established by the Founders." *United States v. Johnson*, 383 U.S. 169, 178 (1966).[1]

When affirmatively invoked and applicable, the Clause protects Members "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967). The immunity afforded by proper invocation of the Clause is absolute and cannot be defeated by an allegation of an improper purpose or motivation. *See, e.g.*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509-10 (1975); *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951); *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) ("Such is the nature of absolute immunity, which is—in a word—absolute.").

The Clause affords not only substantive immunity, but also a complementary evidentiary privilege. *See United States v. Helstoski*, 442 U.S. 477, 494 (1979). In other words, the Clause provides both immunity from liability (in civil as well as criminal proceedings) and a testimonial privilege. *See, e.g.*, *Eastland*, 421 U.S. at 501 (civil context); *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973) (civil context); *Gravel v. United States*, 408 U.S. 606, 623 n.14 (1972) (criminal

---

[1] *Accord United States v. Helstoski*, 442 U.S. 477, 491 (1979) ("[The] purpose [of the Clause] was to preserve the constitutional structure of separate, coequal, and independent branches of government."); *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980) ("Like the Speech or Debate Clause, the doctrine of separation of powers serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen.").

context: Clause, where applicable, is "absolute"). Additionally, the D.C. Circuit has held that the Clause provides an absolute privilege from compelled disclosure. *See United States v. Rayburn House Off. Bldg., Room No. 2113*, 497 F.3d 654, 660 (D.C. Cir. 2007) ("The bar on compelled disclosure is absolute, and there is no reason to believe that the bar does not apply in the criminal … context." (citation omitted)).

The protections of the Speech or Debate Clause apply to all activities "within the 'legislative sphere,'" *McMillan*, 412 U.S. at 312 (quoting *Gravel*, 408 U.S. at 624-25), which courts have broadly construed to include much more than words spoken in debate. The "cases have plainly not taken a literalistic approach in applying the privilege … Committee reports, resolutions, and the act of voting are equally covered." *Gravel*, 408 U.S. at 617.

Of particular relevance here, Congressional committee oversight and investigative functions, including the collection of information in furtherance of legislative responsibilities, are activities within the legislative sphere. This is because a "'legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)); *see also McMillan*, 412 U.S. at 313. Accordingly, these activities are fully protected by Speech or Debate Clause immunity.[2]

---

[2] *See, e.g.*, *McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976) (en banc) ("[A]cquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the [Speech or Debate] privilege so that congressmen are able to discharge their constitutional duties properly." (internal quotation marks and citation omitted)); *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the 'things generally done in a session of the House,' concerning matters within the 'legitimate legislative sphere.'" (citations omitted)); *Tavoulareas v. Piro*, 527 F. Supp. 676, 680 (D.D.C. 1981) ("[A]cquisition of information by congressional staff, whether formally or informally, is an activity within the protective ambit of the [S]peech or [D]ebate [C]lause.").

The protections of the Speech or Debate Clause may be asserted not only by a current Member, but also by former Members in an action implicating legislative conduct while serving in Congress, *see United States v. Brewster*, 408 U.S. 501 (1972), as well as by a Member's "aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel*, 408 U.S. at 618. The immunity applies regardless of whether the Member or aide is a party to the litigation or has merely been called to testify or give a deposition. *See, e.g.*, *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983).

**I.    Speech Or Debate Clause Immunity Cannot Be, And Has Not Been, Waived**

The position of the House of Representatives and of the Congressional Defendants is that the absolute immunity provided for by the Speech or Debate Clause cannot be waived. But even if Speech or Debate immunity could be waived, any waiver would have to be explicit and unequivocal. No such wavier has been made in this case.

No court has held that the protections of the Speech or Debate Clause can be waived. In 1979, the Supreme Court in *United States v. Helstoski* expressly stated that it had no reason to decide that question. *See* 442 U.S. at 490 ("we perceive no reason to decide whether an individual Member may waive the Speech or Debate Clause's protection against being prosecuted for a legislative act."). The Court then assumed that waiver was possible, but ruled that the necessary conditions for such a waiver had not been satisfied in the case before it. *See id.* at 491. In that case, Representative Helstoski had testified before a federal grand jury on ten separate occasions and was ultimately indicted for accepting bribes from immigrants in exchange for introducing private bills suspending application of the immigration laws to them, thereby allowing those paying the bribes to remain in the country. *See id.* at 479. The Department of Justice argued that Representative Helstoski's extensive grand jury testimony constituted a waiver of his Speech or Debate immunity. *See id.* at 490. The Court rejected the Department's

4

argument, noting that, even if such a waiver were possible, it could "be found only after explicit and unequivocal renunciation of the protection." *Id.* at 491. As the Court explained, "[t]he ordinary rules for determining the appropriate standard of waiver do not apply in this setting" because the Clause "was designed neither to assure fair trials nor to avoid coercion." *Id.*

The Department of Justice also argued in *Helstoski* that Congress as an institution had waived Speech or Debate immunity by enacting the federal bribery statute, 18 U.S.C. § 201. *See id.* at 492. The Court expressly declined to resolve that "important question," seeing no reason to "undertake … consideration of the Clause in terms of separating the Members' rights from the rights of the body." *Id.* at 493. The Court reiterated that any showing of waiver would need to be by "explicit and unequivocal expression," which had not occurred in that case in either the text or legislative history of the statute at issue. *Id.*

Here, as in *Helstoski*, there has been no "explicit and unequivocal renunciation of the protection" by any of the Congressional Defendants. Thus, even if waiver were possible, there can be no finding that Speech or Debate Clause immunity has been waived here.

**II.  Speech Or Debate Clause Immunity Is Not Self-Executing And Has Not Been Asserted By The Congressional Defendants As To Any Of Meadows's Claims**

**1.** While the Speech or Debate Clause affords both an institutional and an individual privilege, *see In re Grand Jury Investigation*, 587 F.2d 589, 594-95 (3d Cir. 1978); *see also Helstoski*, 442 U.S. at 492-93, it is not self-executing. The Clause's immunity is only appliable when affirmatively invoked by a Member, Congressional Officer, or Congressional entity, such as a House Committee or Subcommittee. In other words, a Member or Congressional entity must actually assert or otherwise invoke Speech or Debate immunity for it to be effective. Here, because the Clause has not been asserted against any of Meadows's claims, this Court cannot consider the privilege.

This position is consistent with both the case law applying the Speech or Debate Clause as well as the operative law regarding other similar privileges and immunities, which are also generally not self-executing.  With respect to the Speech or Debate Clause itself, a review of the case law indicates that, when it has been applied by the courts, the Clause's protections were affirmatively invoked.  *See, e.g.*, *Johnson*, 383 U.S. at 171 (appeal of conviction by Congressman Johnson on the ground of Speech or Debate Clause immunity); *Brewster*, 408 U.S. at 503 (Senator Brewster "moved to dismiss the indictment on the ground of immunity under the Speech or Debate Clause."); *Gravel*, 408 U.S. at 608-09 (motion to quash subpoenas by Senator Gravel because "requiring these witnesses to appear and testify would violate his privilege under the Speech or Debate Clause …."); *Helstoski*, 442 U.S. at 482-83 (assertion of Speech or Debate privilege during Congressman Helstoski's ninth grand jury appearance).[3]  We are not aware of any case where Speech or Debate immunity has been applied *sua sponte* by a court absent assertion by the holder of the privilege.

Other constitutionally based privileges, such as the Fifth Amendment's privilege against self-incrimination, are generally not self-executing.[4]  It is well-established that "to claim the protections of the Fifth Amendment, an individual must actually invoke the right not to make statements, or his answers will not qualify as 'compelled within the meaning of the

---

[3] *See also, e.g.*, *Rangel v. Boehner*, 20 F. Supp. 3d 148, 157-59 (D.D.C. 2013) ("Defendants assert five grounds for dismissal … (3) defendants are absolutely immune from suit under the Speech or Debate Clause …."); *McCarthy v. Pelosi*, 480 F. Supp. 3d 28, 31-32 (D.D.C. 2020) ("Defendants argue that the Court should not reach the merits … for three primary reasons. … Third, Defendants argue that the Speech or Debate Clause bars the suit.").

[4] The Supreme Court has identified only three circumstances where the Fifth Amendment privilege is self-executing: (1) custodial settings, unless there has been a knowing and intelligent waiver, *see Miranda v. Arizona*, 384 U.S. 436, 467-69 (1966); (2) extremely limited tax-return-filing circumstances, *see Marchetti v. United States*, 390 U.S. 39, 48-49 (1968); and (3) where the government imposes a penalty if the privilege is invoked, *see Garrity v. New Jersey*, 385 U.S. 493, 500 (1967).

Amendment.'" *McKathan v. United States*, 969 F.3d 1213, 1224 (11th Cir. 2020) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) (citation omitted)); *see also* Charles E. Moylan. Jr. & John Sonsteng, *The Privilege Against Compelled Self-Incrimination*, 16 Wm. Mitchell L. Rev. 249, 264 (1990) ("The privilege against compelled self-incrimination is not self-executing … If the witness wishes the benefit of the privilege … it is the responsibility of the witness to invoke the privilege.").[5]

Finally, common-law testimonial privileges generally require the holder of the privilege to take some affirmative action to "exercise" the privilege. *See, e.g.*, *Commonwealth v. Oliveira*, 438 Mass. 325, 331 (2002) (psychotherapist-patient privilege); *Zummer v. Sallet*, 2021 WL 6496828, at *4–5 (E.D. La. 2021) ("Although an attorney's word may be "taken on its face," a privilege claim is not self-executing.") (internal citation omitted).[6]

**2.** Members and Congressional entities can, and often do, elect not to assert their Speech or Debate immunity—even where it would arguably be applicable. For example, Members,

---

[5] Numerous cases cite some variation of the statement that the Fifth Amendment privilege "is not a self-executing mechanism; it can be affirmatively waived, or lost by not asserting it in a timely fashion." *See, e.g.*, *United States ex rel. Chepurko v. E-Biofuels, LLC.*, No. 14-CV-00377, 2020 WL 1042624, at *3 (S.D. Ind. Mar. 3, 2020); *Adams v. Cananagh Cmtys Corp.*, No. 82-C-7332, 1988 WL 64097, at *1 (N.D. Ill. June 13, 1988) (citing *Maness v. Meyers*, 419 U.S. 449, 466 (1975)); *United Auto. Ins. Co. v. Veluchamy*, 747 F. Supp. 2d 1021, 1026 (N.D. Ill. 2010) (citing *Roberts v. United States*, 445 U.S. 552, 559 (1980)); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (citing *Maness*); *S.E.C. v. Kiselak Cap. Grp., LLC*, No. 09-CV-256, 2011 WL 4398443, at *5 (N.D. Tex. Sept. 20, 2011) (citing *Davis*); *U.S. Commodity Futures Trading Comm'n v. Am. Bullion Exch. Abex Corp.*, No. 10-1876, 2014 WL 12601560, at *1 (C.D. Cal. Jan. 3, 2014) (citing *Davis*).

[6] We note that it is possible for Congress and State Legislatures to create automatic or self-executing testimonial privileges that do not require any action by the privilege holder to be effective. *See Oliveira*, 438 Mass. at 331 n.7 (providing one such example enacted by the Massachusetts State Legislature). Nothing in the text or history of the Speech or Debate Clause, nor any subsequent Congressional enactment, suggests that the immunity afforded by the Clause is self-executing.

House Officers, and Congressional committees have voluntarily produced legislative documents in response to litigation requests and occasionally have agreed to testify—or allow staff to testify—regarding legislative acts in criminal and civil judicial proceedings. In addition, Congressional committees have sought affirmative relief from federal courts via motions to intervene, *see*, *e.g.*, *Trump v. Comm. on Oversight & Reform of U.S. House of Representatives*, 380 F. Supp. 3d 76, 88 (D.D.C. 2019); *Bean LLC v. John Doe Bank,* 291 F. Supp. 3d 34, 39 (D.D.C. 2018), or, by initiating litigation to enforce Congressional subpoenas. *See, e.g.*, *Comm. on Judiciary v. McGahn*, 415 F. Supp. 3d 148, 153 (D.D.C. 2019); *Comm. on Oversight & Gov't Reform v. Holder*, 979 F. Supp. 2d 1, 2-3 (D.D.C. 2013); *Comm. on Judiciary v. Miers*, 558 F. Supp. 2d 53, 55 (D.D.C. 2008). None of these decisions not to assert the privilege constitutes a waiver of the protections afforded by the Speech or Debate Clause.

Here, the Congressional Defendants have opted not to assert Speech or Debate immunity as a legal defense to any part of Meadows's complaint. That decision, however, does not preclude any of the Congressional Defendants from invoking the Clause's protections regarding other aspects of the litigation, such as regarding any potential discovery requests from Meadows. Nor does the fact that Congressional Defendants may have opted to invoke the Clause in other litigation challenges to subpoenas issued by the Select Committee have any impact on the decision here.

Both of these positions are consistent with the D.C. Circuit's holding in *Senate Permanent Subcommittee on Investigations* v. *Ferrer*, which expressly recognized that, although the Senate affirmatively sought judicial enforcement of a subpoena in that case, that action did ***not*** preclude or in any way restrict other invocations of the Clause. *See* 856 F.3d 1080, 1085-87 (D.C. Cir. 2017) (rejecting argument that by "seeking to enlist the judiciary's assistance in

enforcing its subpoena," the Senate subcommittee had "necessarily accepted an implicit restriction on the Speech or Debate Clause"). Likewise, here, declining to assert Speech or Debate as a defense does not "invite the courts' interference with constitutionally protected legislative activity." *Id.* at 1087 (citing *Helstoski*, 442 U.S. at 490-91). Thus, proper assertions of Speech or Debate immunity as to, for example, potential discovery requests related to legislative activity remain available.

### III. Congressional Defendants Are Not Invoking Speech Or Debate Immunity In Response To Any Of Meadows's Claims

Finally, with respect to Meadows's constitutional claims, we are not asserting a Speech or Debate defense, but rather have noted the similar circumstances that the Supreme Court confronted in *Eastland v. U.S. Serviceman's Fund*, 421 U.S. 491 (1975). We rely on *Eastland* to the extent that the decision reached the conclusion that judicial inquiry should be heavily circumscribed when, as here, a First Amendment claim is raised against compliance with a valid Congressional subpoena. *See* ECF No. 35 at 31. Our discussion of *Eastland* should not be read as an invocation of Speech or Debate immunity as a defense to Meadows's First Amendment claim. We also briefed the merits of Meadows's constitutional claims, *see id.* at 31-33, and those arguments should be considered, if necessary, to defeat Meadows' claims.

### CONCLUSION

For the reasons set forth above, the Congressional Defendants Motion for Summary Judgment should be granted.

Respectfully submitted,

/s/ Douglas N. Letter
DOUGLAS N. LETTER
   *General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

July 15, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter