**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MARK MEADOWS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:21CV3217 (CJN) |
| | ) | |
| NANCY PELOSI, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S RESPONSE TO THE STATEMENT OF INTEREST**
**OF THE UNITED STATES REGARDING TESTIMONIAL IMMUNITY**

The Department of Justice has long maintained, in opinions from bipartisan Attorneys General and from the Department's Office of Legal Counsel, that senior Presidential advisors enjoy absolute immunity from compelled congressional testimony. As Mr. Meadows has maintained throughout this litigation, the Select Committee's challenged subpoenas run afoul of this important Separation of Powers principle.

That President Trump is no longer in office in no way diminishes the force of Separation of Powers principles that govern compliance with the subpoenas. As Justice Kavanaugh recently explained in *Trump v. Thompson*, and as common sense dictates, there would be "severe" consequences if Presidents and their senior aides thought that the confidentiality of their discussions "would terminate at the end of the Presidency and that their privileged communications could be disclosed when the President left office (or were subject to the absolute control of a subsequent President who could be a political opponent of a former President)." 142 S. Ct. 680, 680–81 (2022) (Mem.) (statement of Kavanaugh, J., respecting denial of application). Moreover, the additional Separation of Powers concerns that DOJ has historically relied upon continue to

apply as well. For instance, Congress is just as prone to "retaliate for actions the committee dislike[s], or embarrass and weaken the President for partisan gain," after the President leaves office—arguably more so, since a former President is less equipped to fight back.[1]

Against this backdrop, the Department of Justice—through a filing by the Federal Programs Branch of its Civil Division—makes a remarkably suspect assertion: it "has not previously taken a position" on whether testimonial immunity applies to "a former adviser to a *former* President." ECF No. 42 (Statement of Interest of the United States) at 1 (emphasis added); *but see Immunity of the Former Counsel to the President from Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 192–93 (2007) ("Separation of powers principles dictate that ***former presidents and former senior presidential advisors remain immune*** from compelled congressional testimony about official matters that occurred during their time as President or senior presidential advisers.") (emphasis added). DOJ then stakes out a new "view" that "a form of *qualified* immunity is appropriate" for these officials, *id.* at 2. The Civil Division filing urges the Court to pronounce new law and hold that the immunity of a former presidential aide—and by implication that too of a former president—is "what might be called," qualified, not absolute, immunity from being compelled to appear before Congress to give testimony about their official duties. Statement of Interest at 9. The "might be called" qualifier is apt, because not only does the Civil Division brief create this new legal standard out of whole cloth, but the law governing "qualified immunity" in other contexts provides no basis for the new creation here. The Civil Division Statement acknowledges that "Congress's implied authority to investigate does not extend to compelling immediate advisers to a former President to testify about their official duties—and, correspondingly, those advisors are immune from such compelled testimony—unless

---

[1] *Immunity of the Assistant to the President & Director of the Office of Political Strategy & Outreach from Congressional Subpoena*, 38 Op. O.L.C., at *5 (July 15, 2014),

Congress has made a sufficient showing of need or the immunity has been waived." *Id.* at 2–3. The Statement disavows any position on what standard courts should apply to determine "whether Congress's asserted legislative purpose warrants the significant step of compelling an immediate adviser to a former President to testify about his or her official duties." *Id.* at 3 (quotation omitted). But it nevertheless confidently asserts that the Select Committee would meet "'any of the tests.'" *Id.* (quoting *Trump v. Thompson*, 20 F.4th 10, 33 (D.C. Cir. 2021)).[2]

The Court made a simple request to the Department of Justice, asking if it stood by the OLC opinions promulgated by administrations of both parties and cited by Mr. Meadows in support of his request for a declaratory judgment holding the subpoena issued by the January 6 committee to him to be invalid. The answer to the Court's question is yes, *see* ECF No. 42 at 5–7, but the DOJ Civil Division elected to render an unprecedented and ill-conceived suggestion of a new form of presidential immunity from compelled congressional testimony, one that is custom-tailored to cloak with support the Committee's position in this case. Thus, the filing, merely acts as an advocate for the Committee's legal position and appears to be an effort to put a DOJ imprimatur on an order enforcing the Meadows subpoena—a question that the Select Committee has recognized is not even before this Court.

The Civil Division would have the Court rule that Mr. Meadows should not enjoy immunity, consistent with the position President Biden has taken; but it wants to do as little damage as possible to Executive prerogatives in the process, so it argues that "what might be called" qualified immunity applies and declines to articulate a substantive standard for this newly announced rule; and it believes that it can elide all of these difficult questions by citing *Trump v.*

---

[2] Of course, *Trump v. Thompson* did not address testimonial immunity (but rather assertion of Executive Privilege over documents), and DOJ cites it only by analogy. It is not precedential on this issue of testimonial immunity for a senior adviser to a former President.

*Thompson*—a case about a *different* subpoena for *documents* which were in the possession of the Executive Branch, which was not asserting privilege—for the proposition that the Select Committee can meet any test to justify any subpoena, any day, any time. This obvious *ad hoc* litigation position does not reflect the measured judgment that prior Attorneys General and the Office of Legal Counsel have shown in elaborating on testimonial immunity. Nor does it present a persuasive case. To the contrary, it rests on arguments and analogies that fail to hold together and conflict with the very OLC opinions and underlying constitutional principles that the DOJ filing purports to elucidate.

The Court should therefore disregard the Statement of Interest on the interpretation of prior AG and OLC opinions, just as federal courts disregard an agency's "convenient litigating position" on the interpretation of its own regulations. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155–56 (2012). And of course, nothing in the Statement of Interest undermines the other issues, apart from testimonial immunity, that Mr. Meadows has raised in opposition to the challenged subpoenas.

I.      **The Court Should Not Apply the Admittedly Newly Concocted Exception to Testimonial Immunity That the Department of Justice Proposes for Senior Advisors to *Former* Presidents**

Notwithstanding its prior position that "former presidents and former senior presidential advisors remain immune from compelled congressional testimony about official matters that occurred during their time as President or senior presidential advisers," *Immunity of the Former Counsel to the President from Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 192–93 (2007), the Civil Division now claims that DOJ has never "previously taken a position" on immunity for "a former adviser to a former President," Statement of Interest at 1, and purports to articulate a new exception to absolute immunity for such officials, which it then claims applies to Mr. Meadows here. The Statement of Interest also makes clear that applying this new exception is

4

consistent with President Biden's purported waiver of Executive Privilege, *see* Statement of Interest at 14–16, while at the same time vehemently denying that the Court has any reason to opine on the validity of that waiver, *see id.* at 16. None of these positions is persuasive, and the Court should not give them any weight.

> A. **The Separation of Powers Concerns Underlying Testimonial Immunity Apply to Mr. Meadows as a Senior Aide to Former President**

Consistent with its longstanding position, and with the arguments that Mr. Meadows has pressed throughout this litigation, the Statement of Interest agrees that, under the Separation of Powers, absolute immunity protects the President and his senior advisers from compelled congressional testimony. *See* Statement of Interest at 4–7. But it then pivots and purports to articulate a new exception under which *former* aides to *former* Presidents enjoy only qualified immunity. *See id.* at 7–9. That proposal is uncompelling.

First, the new position does not rest on any judicial precedent and directly contradicts OLC's traditional testimonial immunity analysis. It merely reflects the Civil Division's *ad hoc* judgment that the Separation of Powers concerns are "in some respects less acute" for former aides to former Presidents. Statement of Interest at 7. Indeed, what little precedent the Division does cite consists of cases explaining why congressional subpoenas to presidential aides *threatens* the Separation of Powers. *See id.* at 8–9 (citing *Mazars*, 140 S. Ct. at 2034; *Thompson*, 142 S. Ct. at 681 (statement of Kavanaugh, J.); *Buckley v. Valeo*, 424 U.S. 1, 122 (1976); *Trump v. Mazars USA, LLP*, No. 21-5176, 2022 WL 2586480, at *19 (D.C. Cir. July 8, 2022)).

This *ad hoc* judgment flies in the face of OLC's clearly established position that advisors to the President are the President's alter ego and enjoy a testimonial immunity that emanates from and is coextensive with the President's own. This analysis is reiterated throughout the OLC opinions ostensibly the subject of the Statement of Interest. The most explicit statement comes in

5

OLC's most recent opinion which, in analogizing to Speech or Debate Clause immunity as set forward in *Gravel v. United States*, 408 U.S. 606 (1972), says, "[f]or purposes of immunity, the Court concluded, Members of Congress and their aides should be 'treated as one.' The same logic applies with respect to the President and his senior advisers." *Testimonial Immunity Before Congress of the Former Counsel to the President*, 43 Op. O.L.C. (May 20, 2019). President Obama's OLC employed the same analogy in *Immunity of the Assistant to the President*, comparing testimonial immunity to Speech or Debate immunity, which is "co-extensive with the immunity afforded Members of Congress themselves." 38 Op. O.L.C., at *10. A different articulation of the same principle can be found in *Immunity of Former Counsel to President From Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 192 (2007), which quotes President Truman's famous statement that "is just as important to the independence of the Executive that the actions of the President should not be subjected to the questioning by the Congress after he has completed his term of office as that his actions should not be questioned while he is serving as President." The very next sentence of the opinion states, "[b]ecause a presidential adviser's immunity is derivative of the President's, former President Truman's rationale directly applies to former presidential advisers." 31 Op. O.L.C. at 192. Put more plainly, "[s]ubjecting a senior presidential advisor to the congressional subpoena power would be akin to requiring the President himself to appear before Congress." *Assertion of Executive Privilege With Respect To Clemency Decision*, 23 Op. O.L.C. 1, 5 (1999).

Now, the Civil Division attempts to persuade the Court that DOJ has never taken a position on the immunity of advisors to former Presidents, despite having clearly pronounced in advice to presidents that former presidents enjoy absolute testimonial immunity and that senior advisors (including former advisors) enjoy testimonial immunity coextensive with the president's. While

OLC has never had occasion to connect the dots between a former President (immune) and former advisors (immune), the logical conclusion follows directly. Mr. Meadows was the President's alter-ego and, in order to avoid attacks on executive independence by a hostile legislature (which could come either during or after the President's term), must be covered by the former President's own immunity from compelled congressional testimony.

Second, the only consideration the Division cites as weighing against absolute immunity for aides to former Presidents is its two-sentence suggestion that Congress cannot interfere with the "current operations" of a former Administration. Statement of Interest at 8. This accurate observation says nothing about the core justification for immunity. The central premise of absolute testimonial immunity is that it prevents Congress from influencing Presidential actions *now* by ensuring that it won't be able to haul the President's aides before it *in the future*. *See Immunity of Former Counsel to President From Compelled Congressional Testimony*, 31 Op. O.L.C. at 192; *Immunity of the Assistant to the President*, 38 Op. O.L.C., at *8–9; *Testimonial Immunity Before Congress of the Former Counsel to the President*, 43 Op. O.L.C. at 6–7. Concerns about the chilling effect of threatened future testimony on current action are just as strong when the threat ripens only at the end of the President's term. *See Thompson*, 142 S. Ct. at 680–81 (statement of Kavanaugh, J.).[3] If immunity was only about interference with ongoing duties, then former Presidents themselves would be subject to compulsion the day after leaving office, a position DOJ has long rejected. See *Immunity of the Former Counsel to the President*, 31 Op. O.L.C. at 192–93.

Third, DOJ's proposed exception fails to account for the fact that what is termed "testimonial immunity" is not so much an affirmative defense—like absolute immunity for judicial officers, *see, e.g.*, *Stump v. Sparkman*, 435 U.S. 349 (1978), or qualified immunity for a law

---

[3] Those concerns are arguably stronger, again, because senior aides would know that, once their former boss is out of office, they will have less protection against Congress.

enforcement official, *see, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)—as it is a lacuna in what the federal courts have otherwise recognized as Congress's *implied* authority to investigate, *see, e.g.*, *Watkins v. United States*, 354 U.S. 178, 197 (1957) (Congress's investigative authority is "justified solely as an adjunct to the legislative process."). If Congress's implied investigative authority simply fails to reach Presidents and their senior aides (whether current or former), it is straightforward to understand why that would provide such officials an absolute immunity. But DOJ fails to offer any explanation why Congress's implied investigative authority would completely fail to reach these officials while in office but would then give rise to a multi-factor balancing test at noon on January 20th.

The Court should therefore decline to accept the new formulation that the Civil Division proposes and should enforce instead DOJ's well-established position that "former presidents and former senior presidential advisors remain immune from compelled congressional testimony." *Immunity of the Former Counsel to the President*, 31 Op. O.L.C. at 192–93.

> **B.    Even Under DOJ's Posited Qualified-Immunity Approach, the Select Committee Has Not Justified the Challenged Subpoenas**

The Statement of Interest does not stop with its view that immunity for former aides to former President should be qualified rather than absolute. It goes on to opine that—while it won't tell the Court what standard Congress must meet to overcome qualified immunity, *see* Statement of Interest at 9–11—the Select Committee has "satisfied 'any of the tests'" that might apply, *id.* at 11 (quoting *Thompson*, 20 F.4th at 33). That contention is equally unpersuasive.

To start, the D.C. Circuit's holding in *Thompson* is simply irrelevant here. There are material differences between that case and this issue. *Thompson* was about Executive Privilege over documents, while this is about immunity from compelled testimony. As the D.C. Circuit emphasized in *Thompson*, an assertion of Executive Privilege required a particularized claim over

particular documents or categories of documents. *See Thompson*, 20 F.4th at 38–40. Here, by contrast, testimonial immunity applies to the very fact of compelled testimony, not just to privileged topics. *See Immunity of the Assistant to the President*, 38 Op. O.L.C., at *4 ("the immunity extends beyond answers to particular questions, precluding Congress from compelling even the appearance of a senior presidential adviser").[4] *Thompson* also involved a subpoena to the Executive Branch, which was willing to comply, while this is about a former aide to a President who has instructed him not to comply. Thus, in *Thompson*, the Court had to weigh President Trump's objections against the prerogatives of President Biden as the head of the Executive Branch that possessed the documents. Indeed, before the Supreme Court, DOJ specifically argued (in successfully opposing certiorari) that recognizing former President Trump's assertion of privilege would threaten an "intrusion into [incumbent President Biden's] ability to discharge his constitutional responsibilities." Brief for the Executive Branch Respondents in Opposition at 16, *Trump v. Thompson,* No. 21-932. But no one can make a similar argument here: President Biden plainly has no constitutional responsibilities to require Mr. Meadows to divulge information— whether to him or to Congress. Unlike the documents at issue in *Thompson*, President Biden has knowledge of the content of the Presidential communications at issue between Mr. Meadows and former President Trump.

Setting *Thompson* aside, the Statement's curt three pages of analysis does not make a compelling claim that the Select Committee could meet any of the tests that might apply to Congress's effort to override testimonial immunity for a senior adviser to a former President, much

---

[4] This is yet another reason why the proposed "qualified immunity" for former aides to former Presidents doesn't work. While the Civil Division will not commit to which test it thinks applies, all of the tests it cites call for an inquiry into the connection between (a) Congress's legitimate legislative purpose and (b) the particular information it is seeking. Those standards are not a natural fit for testimonial immunity—which attaches to an office-holder, not to information.

less all of them. *See* Statement of Interest at 11–13. First, even assuming that the Select Committee

has some legitimate legislative purpose, *see* Statement of Interest at 11–12 (citing *Thompson*, 20

F.4th at 18–19), that does not give it *carte blanche* to do anything within the broad scope of

"investigating" "the events of January 6," *id.* at 11. As the Statement concedes, the Select

Committee needs to further show that the information it seeks from Mr. Meadows is sought "in

service of" that legitimate purpose, that it is "sufficiently relevant to that interest," and that the

information "could not reasonably be obtained elsewhere." *Id*. But it does not persuasively explain

how or why the Select Committee has made those showings.

The entirety of the Statement's discussion about the connection between the Select

Committee's putative purpose and the information it seeks from Mr. Meadows is contained in a

single paragraph:

> Second, the Select Committee has demonstrated that such information is critical to
> its investigation. The Select Committee has set forth in detail the information it
> seeks from Plaintiff, and the importance of that evidence to the Select Committee's
> work. The Select Committee seeks information about seven specific topics. Those
> topics fall within the scope of the issues that President Biden recognized as central
> to the Select Committee's work when he determined "that an assertion of executive
> privilege is not in the public interest, and is therefore not justified, with respect to
> particular subjects within the purview of the Select Committee." And Plaintiff has
> not seriously disputed the importance of his testimony to the Select Committee's
> investigation.

Statement of Interest at 12–13 (citations omitted).[5] Far from establishing a compelling connection,

the Statement offers conclusory assertions that wouldn't pass muster under *Ashcroft v. Iqbal*, 556

---

[5] The Civil Division claims that the seven topics which the Congressional Defendants identified for the first time in
their motion for summary judgment, filed on April 22, 2022, see ECF. No. 15, somehow "fall within the scope of the
issues that President Biden recognized as central to the Select Committee's work when he determined 'that an assertion
of executive privilege is not in the public interest, and is therefore not justified, with respect to particular subjects
within the purview of the Select Committee'"—a determination that the Office of White House Counsel articulated in
a letter sent five months earlier on November 11, 2021, *see* ECF No. 1-12. But its filing offers nothing more than *ipse
dixit* for this proposition. If that connection between President Biden's purported waiver and the Select Committee's
narrowed litigating position were relevant—which it is not—then Mr. Meadows would be entitled to test this
contention in discovery.

U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). DOJ also sidesteps the relevant legal framework because the question is not whether the Select Committee can establish a connection between the information it seeks from Mr. Meadows and its "investigation"; the question is whether it can establish a connection between that information and its legitimate legislative purpose. As Mr. Meadows has explained at length elsewhere, the Select Committee has made little secret of its intention to use its investigation for purposes of law enforcement and publicity. *See* ECF No. 13 (Amended Complaint) at 35–38; ECF No 29-1 (Plaintiff's Motion for Judgment on the Pleadings or Summary Judgment) at 31–35.

It may well be correct that Mr. Meadows is relevant to what the Select Committee wants to do in those areas. What it wants is not the standard. Afterall, "[t]o argue that an investigation provides a valid legislative purpose for a congressional investigation is the definition of circular reasoning." ECF No. 38 (Plaintiff's Reply in Support of Judgment on the Pleadings or Summary Judgment) at 21. The Select Committee has not identified any draft legislation, nor indeed any conceivable legislative initiative that Mr. Meadows's testimony might help to inform. *See id.* at 21–22. Indeed, this case stands in sharp contrast to *Trump v. Mazars*, where Congress articulated specific pending legislative proposals that justified its request for President Trump's tax returns, *see id.* at 22, and where on remand from the Supreme Court, the D.C. Circuit carefully compared those proposals to the subpoena's requests to assess what was justified and what was not, *see Trump v. Mazars USA, LLP*, 2022 U.S. App. LEXIS 18850, *47–*83 (D.C. Cir. July 8, 2022).

Finally, the Civil Division's assertion that "the Select Committee has sufficiently shown that the information it seeks . . . is not reasonably available from other sources" is incorrect on its face. Statement of Interest at 13. To support this assertion, the Division filing points out that Mr. Meadows engaged in potentially relevant conversations and that one other witness interviewed by

the Select Committee was unaware of the details of those conversations. *See id*. But this argument fails to pass the most cursory inspection. Even under the proposed test, the Select Committee must show that "other sources would not reasonably provide the needed information." *Mazars*, 2022 U.S. App. LEXIS 18850 at *62. Mr. Meadows is obviously not the only reasonably available source of information regarding his conversations with other individuals, and neither the Statement of Interest nor the Select Committee's briefing explains how he could be.

At the end of the day, the Division filing acknowledges "the need to safeguard the confidentiality of presidential communications," even after a President's term, and "the separation-of-powers principles requiring respect for the independence and dignity of the Office of the President." Statement of Interest at 2. But it fails to provide that safeguard by breezily concluding that the Select Committee has overcome whatever burden it might face. Its reasons are not compelling, its cited authorities are inapposite, and the Court should not give them any weight.

## C.    The Gratuitous Discussion of President Biden's Purported Privilege "Waiver" Is, by DOJ's Own Account, Irrelevant

The Statement of Interest goes out of its way to emphasize that President Biden has purported to waive Executive Privilege over any information that the Select Committee might seek from Mr. Meadows, *see* Statement of Interest at 12—even though the Court asked about testimonial immunity, not Executive Privilege, *see* Minute Order (June 23, 2022). But immediately after suggesting that the Court should defer to the views of the sitting President, *see* Statement of Interest at 14–15, the Division asks the Court not to reach the issue, *see id.* at 16. Mr. Meadows agrees with the bottom-line conclusion that President Biden's purported waiver of Executive Privilege is irrelevant. But contrary to the Division's assumption, the alignment between President Biden's purported waiver and the Division's novel proposal in this litigation does not lend

credibility to the latter; rather, it further reveals it to be precisely the sort of "convenient litigating position" to which the Court should not give any solicitude. *Christopher*, 567 U.S. at 155–56.

## II. The Position on Immunity Proposed, Even If Accepted, Would Not Undermine Mr. Meadows's Other Claims; Nor Would It Provide Grounds for Judgment in Favor of the Congressional Defendants

Though it would upend decades of OLC opinions and centuries of separation of powers precedent, the view espoused now by the Civil Division would not be dispositive of any part of this case. Testimonial immunity is a single argument in Mr. Meadows's motion for summary judgment and it is accompanied by multiple other independently dispositive arguments. Nor is testimonial immunity dispositive for Defendants' motion, which must prove much more than that Mr. Meadows is amenable to compelled congressional testimony. Indeed, testimonial immunity is only one of eight arguments presented in Mr. Meadows complaint, each of which would independently render the subpoenas invalid.

Mr. Meadows is entitled to summary judgment even if he is not immune from compelled congressional testimony. Even an individual subject to compelled testimony may only be compelled by a validly issued subpoena issued by a properly constituted committee in service of a legitimate legislative purpose. *See Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 506 (1975); *Gojack v. United* States, 384 U.S. 702, 708 (1996); *Watkins v. United* States, 354 U.S. 178, 206 (1957). The subpoenas here do not serve a valid legislative purpose and were invalidly issued by the Select Committee, which is itself improperly constituted under House of Representative rules. To demonstrate a valid legislative purpose, the Select Committee must show that the information it seeks from Mr. Meadows is "demonstrably critical," to its investigation and to its eventual legislative objective. *United States v. Nixon*, 418 U.S. 683, 713 (1974). The Select Committee has made no attempt at such a showing in this case. *See* ECF No. 29-1 at 31–35.

Additionally, the Select Committee is improperly constituted and failed to comply with its own rules regarding issuance of valid subpoenas. It lacks the required number of members under House Resolution 503 § 2(a) and did not issue the subpoenas after consultation with a ranking member as required by House Resolution 503 § 5(c)(6). *See* ECF No. 29-1 at 36–38.

These failings render the subpoenas unenforceable regardless of any testimonial immunity. *See Liveright v. United States*, 347 F.2d 473, 474 (D.C. Cir. 1965); *Shelton v. United States*, 327 F.2d 601, 607 (D.C. Cir. 1963); *United States v. Grumman*, 227 F. Supp. 227, 233 (D.D.C 1964). Each of these three infirmities—the lack of a legislative purpose, the improper constitution of the Select Committee and the failure to consult with a ranking member—independently invalidates the subpoenas and warrants granting Mr. Meadows's summary judgment motion even if he is not immune from compelled congressional testimony.

The arguments in the Congressional Defendants' motion, on the other hand, remain insufficient even if the Court were to accept the Civil Division's ill-advised retooling of testimonial immunity. Overcoming Mr. Meadows's immunity is just a threshold issue for the Defendants—a necessary condition for a judgment, but far from a sufficient one. Even if the position taken I the Statement of Interest were to be accepted by the courts, and even if Mr. Meadows is amenable to compelled congressional testimony, Defendants still must contend with executive privilege, the invalidity of the subpoenas, the Stored Communications Act, the First Amendment, and the Fourth Amendment. *See* ECF No. 29-1 at 38–47. They must also contend with the fact that resolution of these issues in their favor requires factual development within the confines of the discovery process. *See* ECF No. 20 at 9–20. All of these issues preclude summary judgment for the Defendants separate and apart from testimonial immunity.

Thus, even if the Court chooses to credit a never-before-seen theory of "what might be called" qualified testimonial immunity, there remain many substantial issues of law in the case. At most, the Civil Division's revised understanding of testimonial immunity would remove one of Mr. Meadows's arguments in favor of summary judgment. It does nothing to impair his other independently dispositive arguments, nor does it speak to the four additional arguments presented in the complaint on which Mr. Meadows has not moved for summary judgment.

## CONCLUSION

The law as to congressionally compelled testimonial immunity of Presidents and their aides is clear and does not brook the DOJ's attempted qualification: the immunity is absolute. The suggestion that such immunity is across the board "qualified" for former presidents and their aides finds no support in any precedent. Moreover, its sweeping suggestion that the Committee's January 6 inquiry enjoys a blanket determination of a compelling need that vitiates both Executive Privilege and presidential testimonial immunity as to all evidence from everyone is specious.

The Department of Justice Civil Division's Statement of Interest does not present a persuasive interpretation of the constitutional Separation of Powers or of the Department's Office of Legal Counsel bipartisan precedent interpreting that principle. The Court should therefore lend no weight to the position taken in the Statement and, for the reasons explained elsewhere, should grant judgment in favor of Mr. Meadows.

15

Dated: August 5, 2022

Respectfully submitted,

MARK MEADOWS
*By Counsel*

/s/ George J. Terwilliger III
George J. Terwilliger III
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Phone: (202) 857-1700
Fax: (202) 857-1737
gterwilliger@mcguirewoods.com

Brooks H. Spears
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
bspears@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that, on August 5, 2022, a copy of the foregoing was filed on the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ George J. Terwilliger III