IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK MEADOWS,<br><br>       *Plaintiff*,<br><br>  v.<br><br>NANCY PELOSI, et al.,<br><br>       *Defendants*. | No. 1:21-cv-03217 (CJN) |

**RESPONSE OF CONGRESSIONAL DEFENDANTS TO STATEMENT OF INTEREST BY THE DEPARTMENT OF JUSTICE**

  Pursuant to this Court's June 23, 2022 Minute Order, the Congressional Defendants file this response to the Statement of Interest filed by the Department of Justice on July 15, 2022 (ECF No. 42) (hereinafter "Br."). That statement addressed this Court's order: "Plaintiff's arguments rely, in part, on certain opinions of the Office of Legal Counsel [OLC]," and the Justice Department is therefore invited to state its view "as to whether Plaintiff is entitled to absolute or qualified testimonial immunity from the subpoena at issue."

  **1.** Congressional Defendants agree with, and believe it highly significant that, the Justice Department has unequivocally stated (*see* Br. at 1-2, 7) that Mr. Meadows is ***not*** entitled in this matter to absolute immunity from compliance with the subpoena issued by the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol. In its filing, the Justice Department explains that the relevant OLC opinions do not address the possibility of immunity against a House subpoena issued to a former immediate White House adviser (such as Mr. Meadows) to a former President (such as Mr. Trump), and that absolute immunity does ***not*** attach in such a situation (*see* Br. at 1-2).

Congressional Defendants further concur with the Justice Department (Br. at 2 n.2) that the relevant OLC opinions address only immunity from compelled testimony, and that the rationale offered by the Justice Department for categorical immunity does not apply to subpoenas for documents.  As the Justice Department recognizes (*id.*), such categorical immunity for production of documents is in any event "foreclosed by the [D.C. Circuit's] decision in *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725 (D.C. Cir. 1974) (en banc)."

Congressional Defendants also embrace the Justice Department position that, in light of President Biden's determination that Congress "has a compelling need in service of its legislative functions to understand the circumstances that led to the most serious attack on the operations of the Federal Government since the Civil War," there can "be no real dispute that the investigation at issue is of critical importance and within Congress's implicit investigatory authority."  Br. at 12 (citations and alterations omitted).  And Congressional Defendants further agree with the Justice Department's determination that "the Select Committee has demonstrated that such information is critical to [the Select Committee's] investigation."  *Id.*

Finally, Congressional Defendants concur with the Justice Department's conclusion (Br. at 11-13) that the Select Committee has met any standard that could be applicable under D.C. Circuit precedent to compel Mr. Meadows to testify and to provide relevant record evidence.

**2.** We note that the information sought here by the Select Committee's subpoena to Mr. Meadows overlaps to some extent with the types of Trump White House records that the D.C. Circuit allowed to be disclosed to the Select Committee from the National Archives. President Biden declined to assert Executive Privilege over those National Archive documents as well.

*See Trump v. Thompson*, 20 F.4th 10, 16 (D.C. Cir. 2021), *inj. denied*, 142 S. Ct. 680 (2022), *cert. denied*, 142 S. Ct. 1350 (2022).

In *Trump v. Thompson*, the D.C. Circuit explained that "[t]he January 6th Committee has also demonstrated a sound factual predicate for requesting these presidential documents specifically. There is a direct linkage between the former President and the events of the day [January 6th]." 20 F. 4th at 36. The D.C. Circuit described that President Trump had "called for his supporters to gather in Washington, D.C. for a 'wild' response to what he had been alleging for months was a stolen election." *Id.* That court further described that "[o]n January 6th, President Trump directed his followers to go to the Capitol and 'fight' for their Country with the aim of preventing Congress's certification of the electoral vote. '[Y]ou'll never take back our country with weakness. * * * We have come to demand that Congress do the right thing and only count' certain electors." *Id.* (citation omitted).

And the D.C. Circuit noted that "[t]he White House is also the hub for intelligence about threats of violent action against the government, and the Executive Branch is in charge of federal law enforcement and mobilizing the National Guard to defend the Capitol. So information from within the White House is critical to understanding what intelligence failures led the government to be underprepared for such a violent attack, and what can be done to expedite the mobilization of law enforcement forces in a crisis on Capitol Hill going forward." *Id.* (citation omitted).

As the D.C. Circuit concluded, "[g]iven all that, the Committee has sound reasons for seeking presidential documents in particular as part of its investigation into the cause of the attack on the Capitol." *Id.*

The D.C. Circuit provided some description of the types of materials from the Trump White House that were ordered disclosed to the Select Committee, and these materials are of the

same type sought here. *See id.* at 20-21. Indeed, the Presidential disclosure order that was upheld by the D.C. Circuit in *Trump v. Thompson* included "three handwritten notes concerning the events of January 6 from [former Chief of Staff Mark] Meadows' files," and "a handwritten note from * * * Meadows' files listing potential or scheduled briefings and telephone calls concerning the January 6 certification and other election issues." *Id.* These records also encompassed material regarding a potential lawsuit by the United States against several states President Biden won, an email chain from a state official regarding election-related issues, talking points about state election irregularities, and draft Presidential findings concerning Presidential election security. *Id.* They further included daily Presidential dairies, schedules, visitor logs, activity logs, call logs for January 6, 2021, and drafts of speeches, remarks, and correspondence concerning the events of that day. *See id.*

Thus, the D.C. Circuit has already upheld disclosure directed by President Biden from the Trump White House of materials akin to what the Select Committee is now seeking to obtain via testimony and documents from Mr. Meadows. And the Justice Department amicus brief here makes clear that the Executive Branch is fully supportive of the validity of the Select Committee's subpoena to Mr. Meadows.

**3.** If this Court agrees with the Justice Department and Congressional Defendants on these various points, then summary judgment should be entered here in favor of the Select Committee, holding that Mr. Meadows has no valid grounds to refuse to provide the documents or testimony compelled by the Select Committee's subpoena. It is, though, important to recognize that we have already demonstrated that there are additional grounds on which this Court can rely in reaching that result, and nothing in the Justice Department brief undermines what we have argued.

The Justice Department's brief repeatedly focuses on concerns about the ability of Congress to force immediate Presidential advisers to testify about their "official duties," and how such Congressional power might affect the appropriate balance of powers between the Legislative and Executive Branches.  Br. at 1-3, 7-9.  We agree with this focus on "official duties," because, as we pointed out in our Motion for Summary Judgment (MSJ), the Select Committee has narrowed its focus to seven areas in which it seeks materials and testimony from Mr. Meadows, and a vast portion of the information sought does not involve Mr. Meadows' official duties.  *See* MSJ at 28-41, ECF No. 15; *cf. Thompson v. Trump*, No. 21-cv-00400 (APM), 2022 WL 503384, at *59-64 (D.D.C. Feb. 18, 2022) ("A function of the presidency . . . is *not* to secure or perpetuate incumbency. . . . [T]he President's actions here do not relate to his duties of faithfully executing the laws . . . These are unofficial acts . . . .").

A significant part of the information that the Select Committee seeks involves Mr. Meadows' activities on behalf of Mr. Trump solely in his political campaign capacity, and discussions by Mr. Meadows with Members of Congress about those campaign objectives.  *See* MSJ at 45-47.  We reiterated this point in our reply brief in support of our Motion for Summary Judgment (ECF No. 35 at 11-15, 25).

Moreover, as we also pointed out in our Motion for Summary Judgment (ECF No. 15 at 26) and in our Reply (ECF No. 35 at 26-27), former President Trump has never formally or properly asserted a privilege over the information that the Select Committee is now seeking from Mr. Meadows.  And much of what has been asked of Mr. Meadows has already been publicly discussed by him, or by former President Trump, or by other members of President Trump's advisers, which means that concerns about protecting President Trump's ability to receive candid advice have already been tossed aside by him and his aides.  *See* MSJ at 28-31; Reply at 25.

These points provide additional avenues for rejecting Mr. Meadows' justification for his defiance of the Select Committee's subpoena.

**4.** We also note that, while the Justice Department brief firmly rejects a claim of absolute immunity for Mr. Meadows, it does contend that Mr. Meadows should be protected by a form of qualified testimonial immunity, although this qualified immunity should not prevent testimony or document production from Mr. Meadows, given the unique circumstances that the Select Committee is facing. *See* Br. at 2-3, 11-13. The Justice Department contends that qualified immunity is compelled here in order to safeguard the interests of the Presidency vis-à-vis Congress. But that argument for qualified immunity clearly stems in part from the points that have been raised by the Executive Branch for many years in support of an absolute immunity claim.

That theory has though been rejected in the in-depth analyses provided by District Judge Bates and then-District Judge Jackson, both holding that the Executive lacks absolute testimonial immunity against legitimate Congressional investigations and oversight functions, such as those that exist here. *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 100-06 (D.D.C. 2008) (Bates, J.); *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 200-14 (D.D.C. 2019) (Jackson, J.).[1] Critically, as both Judges Bates and Jackson noted, there is no case law adopting

---

[1] In its brief (ECF No. 42 at 7 n.4), the Justice Department notes these rulings, but its citation to then-District Judge Jackson's ruling in *Comm. on the Judiciary v. McGahn*, does not report the courts' actual resolution of that litigation. Judge Jackson found that the House had the ability to sue former White House Counsel Donald McGahn to enforce its subpoena to him, and that the Judiciary Committee's subpoena to McGahn was valid; the court therefore ordered McGahn to appear before the committee, where the Executive could assert executive privilege, where appropriate. *See* 415 F. Supp. 3d at 215. The Executive Branch appealed, and after a split D.C. Circuit panel reversed that ruling on the ground that the House lacked standing to bring an enforcement action, the en banc D.C. Circuit rejected that conclusion, vacated the panel's judgment, and affirmed Judge Jackson's ruling on standing. *See* 951 F.3d 510, 516, 531; 968 F.3d 755, 778 (D.C. Cir. 2020). The en banc court then sent the matter back to that panel for

or even supporting the OLC theory that communications between the President and his immediate staff must be absolutely insulated from scrutiny by Congress.

## CONCLUSION

For the reasons set forth in this brief and in our prior briefing in this case, the Congressional Defendants' Motion for Summary Judgment should be granted.

                                          Respectfully submitted,

                                          /s/  *Douglas N. Letter*
                                          DOUGLAS N. LETTER
                                            *General Counsel*

                                          OFFICE OF GENERAL COUNSEL
                                          U.S. HOUSE OF REPRESENTATIVES
                                          5140 O'Neill House Office Building
                                          Washington, D.C.  20515
                                          (202) 225-9700
                                          Douglas.Letter@mail.house.gov

August 5, 2022

---

consideration of the other issues resolved by Judge Jackson.  When the same split panel subsequently found no cause of action for the House, the en banc D.C. Circuit again vacated that panel's judgment.  *See* 973 F.3d 121, 123 (D.C. Cir. 2020).  The D.C. Circuit eventually dismissed the Executive Branch's appeal, leaving Judge Jackson's ruling in place.

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

>                               */s/ Douglas N. Letter*
>                               Douglas N. Letter