IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK MEADOWS,

          *Plaintiff*,

    v.

NANCY PELOSI, et al.,

          *Defendants*.

No. 1:21-cv-03217 (CJN)

**CONGRESSIONAL DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR RECONSIDERATION
AND STAY PENDING RECONSIDERATION**

Plaintiff Mark Meadows falls woefully short of establishing any entitlement to either reconsideration of this Court's judgment or the "exceptional remedy" of a stay or injunction pending appeal. *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017). Meadows does not satisfy the test for reconsideration under the applicable standard and all of the factors required for issuance of a stay or injunction pending appeal weigh strongly against him. Meadows's request for reconsideration or a stay or injunction pending appeal should therefore be denied.

The Select Committee is in the midst of an essential investigation into one of the most egregious attacks on the United States Capitol and on the American system of government in our country's history. The Select Committee is continuing to gather material and evidence central to its investigation, and the information sought from Meadows and his telecommunications carrier, Verizon, will be of

considerable value in that effort. At this late date, any stay or injunction pending appeal would deprive the Select Committee of information directly relevant to its investigation and legislative recommendations. Although the Select Committee has gathered substantial evidence to this point, Meadows holds unique insights and information, and any further delay through the courts in obtaining the materials sought by the subpoenas is inconsistent with this Court's prior ruling and not supported by any legal authority, even setting aside the Speech or Debate Clause.

## BACKGROUND

In response to the attack on the Capitol building on January 6, 2021, the House of Representatives created the Select Committee to Investigate the January 6th Attack on the United States Capitol. H. Res. 503, 117th Cong. (2021).

As part of its investigation, the Select Committee has sought information from President Trump's Chief of Staff, Mark Meadows, regarding his activities in the months surrounding the attack. On September 23, 2021, the Select Committee served a subpoena on Meadows for both documents and testimony. *See* Compl. for Decl. & Inj. Relief ¶¶ 50-53, ECF 1. On November 22, 2021, the Select Committee issued a subpoena to Verizon for records relating to a phone number associated with Meadows. *See id.* ¶ 86.

## PROCEDURAL HISTORY

Meadows filed his Complaint on December 8, 2021, seeking declaratory and injunctive relief with respect to both subpoenas. *See* ECF 1 at 41-42. After Congressional Defendants answered, *see* ECF 11, Meadows filed an Amended

2

Complaint. *See* First Am. Compl. for Decl. & Inj. Relief, ECF 13. Congressional Defendants filed an Answer to the Amended Complaint and a Motion for Summary Judgment. *See* ECF 15 & 17. Meadows filed his own dispositive Motion for Judgment on the Pleadings or Summary Judgment. *See* ECF 29.

After briefing on these dispositive motions had concluded, the Court ordered Congressional Defendants to file "a supplemental brief explaining their positions as to (1) whether Speech or Debate Clause immunity is applicable to all of Plaintiff's claims; (2) whether and to what extent Defendants affirmatively waive any Speech or Debate Clause immunity as to any of Plaintiff's claims; and, if so, (3) whether and to what extent it is possible to waive Speech or Debate Clause immunity."[1] Minute Order, June 23, 2022. Meadows filed a response to that supplemental brief. *See* Pl.'s Resp. to Cong. Defs.' Suppl. Br. Re Speech or Debate Immunity, ECF 45.

The parties appeared for oral argument on the pending dispositive motions, at which point Meadows's counsel was given an opportunity to address the issues related to the Speech or Debate Clause.

This Court issued an opinion holding that it lacked subject matter jurisdiction over this matter because of the absolute immunity afforded the Congressional Defendants by the Speech or Debate Clause, which it invoked *sua sponte*. *See* Mem. Op., ECF 49.

---

[1] The Court also invited Briefing from the Department of Justice on the scope of executive privilege, which is not relevant to this motion. *See* Minute Order, June 23, 2022.

3

Subsequently, Meadows filed the instant motion for reconsideration (including a request to submit supplemental briefing) and a stay pending reconsideration and/or appeal. *See* ECF 51.

## ARGUMENT

### I. Meadows Is Not Entitled To Reconsideration And No Supplemental Briefing Is Warranted

Under Rule 59(e) a party may file a motion to alter or amend a judgment. "Rule 59(e) permits reconsideration when 'there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Nat'l Pub. Radio, Inc. v. FBI*, 539 F. Supp. 3d 1, 7 (D.D.C. 2021) (Nichols, J.). This is an "extraordinary measure." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).

Meadows's memorandum in support of his motion does not even cite, much less try to meet, the applicable standard for reconsideration, because his real justification is his mere belief that this Court's decision is incorrect. Although that is an appropriate ground to raise on appeal, it is not appropriate for a motion for reconsideration absent the existence of "clear error" or "manifest injustice." Because Meadows fails to meet any of the three justifications for reconsideration, this Court should reject Meadows's motion.

*First*, Meadows cites no intervening change of controlling law, and Congressional Defendants are aware of none.

*Second*, Meadows cites no new evidence and no availability of new evidence. Meadows has identified no theoretical (much less existing) evidence that could

4

affect the Court's legal conclusions about its subject matter jurisdiction. The only declaration supporting his motion simply informs this Court that the Select Committee is pursuing avenues outside of the federal judiciary to obtain compliance with the subpoenas, which, of course, it has every right to do. Decl. of John Moran, ECF 51-2.

*Third,* Meadows has identified no clear error or manifest injustice that must be prevented. Clear error is a "very exacting standard" equated with a Court having "a clear conviction of error" or being "dead wrong." *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (first quoting *Hopwood v. Texas*, 236 F.3d 256, 272 (5th Cir. 2000); and then quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). Nothing in Meadows's motion demonstrates anything close to clear error.

A showing of manifest injustice requires "at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Leidos, Inc.*, 881 F.3d at 217 (citing *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013)). Meadows makes no showing of manifest injustice. Courts "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Meadows argues that he was not provided sufficient opportunity to address the question of whether the Speech or Debate Clause is jurisdictional, Pl.'s Mem. in Supp. of Mot. for Recons. & Stay at 2-3, ECF 51-1, but this Court provided Meadows multiple opportunities to present his arguments regarding the Clause.

In its Supplemental Brief, Congressional Defendants described the long history of cases interpreting and applying the immunity afforded by the Speech or Debate Clause and noted that they were "not aware of any case where Speech or Debate immunity has been applied *sua sponte* by a court absent assertion by the holder of the privilege." Suppl. Brief of Cong. Defs. at 6, ECF 40. Meadows had the opportunity to address this point in his own Supplemental Brief, *see* ECF 45, but did not do so, presumably because he either agreed with Congressional Defendants or did not feel that the subject needed any supplement or clarification from him.

Additionally, the parties presented oral argument before this Court. During that argument, the Court had a lengthy dialogue with counsel for Congressional Defendants about whether courts had the ability to invoke the Speech or Debate Clause *sua sponte*. *See* Hr'g Tr. 11:18-20:5; 48:14-51:8 (Sept. 7, 2022). The Court then turned to Meadows's counsel and specifically asked about whether the Court had jurisdiction over the subpoena to Verizon. *Id.* at 40:13-40:23. After Congressional Defendants' rebuttal, Meadows was then given another opportunity to address the matter, *id.* at 58:16, and was asked to "inform [the Court] as soon as reasonably possible" if there were any "relevant developments." *Id.* at 65:1-4.

In addition to showing that this Court worked no manifest injustice against Meadows, this record demonstrates his numerous opportunities to make all relevant arguments on the jurisdictional question. Accordingly, no further briefing is necessary and would serve only to further Meadows's desire to delay these proceedings until the expiration of the current Congress.

## II. Neither A Stay Nor An Injunction Pending Further Proceedings Is Warranted

Although Meadows styles his motion as one for a stay, elsewhere he suggests he is seeking an injunction against the Congressional Defendants. *See* ECF 51-1 at 7 ("A stay or injunction is warranted in this case …."). Given that the Court ordered the case dismissed, there is nothing to stay, so what Meadows requires is, in fact, an injunction pending reconsideration and/or appeal. Such relief is not "a matter of right," and the requesting party "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). "In determining whether to stay an order pending appeal, the Court considers the same four factors as it would in resolving a motion for a preliminary injunction: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re Special Proc.*, 840 F. Supp. 2d 370, 372 (D.D.C. 2012) (internal quotation marks and citation omitted). On a motion for a stay or injunction pending appeal, "it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Id.* (internal quotation marks and citation omitted). Like his request for reconsideration, Meadows neither cites the proper standard nor addresses the specific factors required.

Accordingly, Meadows fails to meet his burden and his request for relief should be denied.

**1.**  Meadows makes no attempt to articulate any basis for his likelihood of success on the merits or to establish that he will suffer any irreparable harm.  At most, Meadows offers only speculation as to any possible injury, suggesting that some or all of his claims could be rendered moot "before the natural end of this litigation."  ECF 51-1 at 7.  Such speculation, however, is insufficient to satisfy his burden.  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."  *Nat'l Conf. On Ministry To Armed Forces v. James*, 278 F. Supp. 2d 37, 52 (D.D.C. 2003) (quoting *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see also Winter v. Nat'l Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.").  That a denial of an injunction pending appeal will potentially moot part of this case does not exempt Meadows from the need to demonstrate that an actual injury is not merely speculative but likely.

Furthermore, any injunction against the Congressional Defendants would directly conflict with this Court's ruling in which it concluded that it does not have jurisdiction under the Speech and Debate Clause, *see* Mem. Op., ECF 49.  In addition, such an injunction would violate the separation of powers.  *See Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936) (declining to issue injunction against a Senate Committee).

**2.** While the failure of Meadows to articulate either a likelihood of success on the merits or to establish any irreparable harm is sufficient to deny the relief requested, he also falls short of establishing that the balance of equities or public interest are in his favor.

Congressional Defendants are at a critical juncture. The Select Committee must promptly complete its investigation into the January 6th attack on Congress as an institution and Constitutional functions it was performing that day, as well as the attempted prevention of the peaceful transfer of power following the 2020 Presidential election. This threat has not dissipated, and the Select Committee has been charged with making recommendations for legislative and other changes that will prevent future, similar attacks. *See* H. Res. 503 § 4(a)(3).

It is undeniable that Meadows—as Chief of Staff to President Trump—was a central figure in most of the events related to and surrounding the attempted overturning of the 2020 Presidential Election and the January 6th attack on the Capitol, which are the subjects the Select Committee is investigating. The narrowed topics on which the Congressional Defendants seek Mr. Meadows's testimony, *see* ECF 15 at 27-41, involve relevant facts related to the attack of January 6th. As another judge in this district has noted, "the public interest also rests in carrying out Congress's will." *Confederated Tribes of Chehalis Rsrv. v. Mnuchin*, No. 20-01002, 2020 WL 3791874, at *2 (D.D.C. July 7, 2020) (Mehta, J.). Here, Congress's will is for the Select Committee to complete its investigation and make its legislative recommendations.

The Select Committee is authorized through the end of the current Congress, which expires on January 3, 2023. *See* H. Res. 503; *see also* U.S. Const., Amend. XX, § 1. Far from, as Meadows suggests, "maintain[ing] the *status quo*, while seeking timely relief of the Court's decision," ECF 51-1 at 7, any type of stay or injunction pending appeal would, practically speaking, make it impossible for the Select Committee to obtain and utilize the subpoenaed records before that date.

In fact, the D.C. Circuit has already recognized the vital and pressing nature of the Select Committee's work. *See Trump v. Thompson*, 20 F.4th 10, 35 (D.C. Cir. 2021) ("[T]here would seem to be few, if any, more imperative interests squarely within Congress's wheelhouse than ensuring the safe and uninterrupted conduct of its constitutionally assigned business."), *cert. denied*, 142 S. Ct. 1350 (2022); *see also id.* at 16 (citing the current Executive's determination that Congress had a "'compelling need' to investigate 'an unprecedented effort to obstruct the peaceful transfer of power' and 'the most serious attack on the operations of the Federal Government since the Civil War.'" (citation omitted)).

The closest that Meadows comes to addressing the factors required for a stay or injunction pending appeal is when he urges this Court to "in the interest of justice and full consideration of the parties' legal positions … stay its judgement or otherwise enjoin enforcement of the subpoenas pending reconsideration." ECF 51-1 at 7. That rationale is an insufficient basis upon which to grant the relief sought. The Select Committee has already been delayed for more than a year since it issued valid subpoenas for documents and testimony from Meadows. *See supra* at 2.

Further delay is simply not in the interest of justice, nor consistent with pronouncements from the Supreme Court. *See, e.g.*, *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975) (noting that the Speech or Debate Clause requires courts to give cases "the most expeditious treatment … because one branch of Government is being asked to halt the functions of a coordinate branch." Also noting that "protracted delay has frustrated a valid congressional inquiry."); *Watkins v. United States*, 354 U.S. 178, 187-88 (1957) ("It is unquestionably the duty of *all citizens* to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action. It is their unremitting obligation to respond to subpoenas, to respect the dignity of the Congress and its committees and to testify fully with respect to matters within the province of proper investigation." (emphasis added)).

The continued withholding of the requested information is not warranted given the critical importance of this investigation and the ongoing threat to our democracy. Thus "the balance of equities and public interest favor [Congressional Defendants], such that [Meadows] cannot show that [the] 'factors tip sharply in the movant's favor ….'" *MediNatura, Inc. v. FDA*, No. 20-2066, 2021 WL 1025835, at *7 (D.D.C. Mar. 16, 2021) (quoting *In re Special Proc.*, 840 F. Supp. 2d at 372).

## CONCLUSION

For the reasons set forth above, Meadows's motion for reconsideration and a stay should be denied.

Respectfully submitted,

/s/  *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

November 7, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter