## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARK MEADOWS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:21CV3217 (CJN) |
| | ) | |
| NANCY PELOSI, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION AND STAY

This Court's decision to *sua sponte* dismiss Mr. Meadows's action, made over the objections of both parties to this case, was clear error. Supreme Court and D.C. Circuit precedent shows that the Speech or Debate Clause is a not a jurisdictional bar and does not apply to Declaratory Judgement Act cases with a willing congressional defendant. Based on this law, the Court should reconsider its opinion and decline to dismiss Mr. Meadows's claims. During the pendency of this reconsideration, the Court should stay its order dismissing the case to preserve the status quo and prevent irreparable harm to Mr. Meadows.

### LEGAL STANDARD

Mr. Meadows satisfies the standard for Rule 59(e) reconsideration. "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). While clear error is an exacting standard, it can be met by demonstrating that the court's opinion is wrong based on "errors of law." *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, 541 F. Supp. 3d 34,

57 (D.D.C. 2021) (quoting *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 338, 341 (D.D.C. 2017); *see Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000) ("[A] district court should not grant a motion for reconsideration unless the moving party shows new facts or clear errors of law.").

As to the administrative stay, Meadows satisfies the standards for a temporary stay of this action. A motion for a stay is traditionally governed by four factors: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits;" (2) "whether the applicant will be irreparably injured absent a stay;" (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding;" and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

The first factor requires the party seeking a stay to raise questions significantly substantial to "make them a fair ground for litigation and thus for more deliberative investigation." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). The second factor is tied to the first. A party seeking a stay generally must show injury that is certain and great, *see Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018), but "[a] stay may be granted with either a high probability of success and some injury, or *vice versa*," *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). The last two factors, "the harm to the opposing party and weighing the public interest[,] ... merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

## ARGUMENT

The Court clearly erred in this case by holding that Speech or Debate immunity is an issue of subject matter jurisdiction and can be invoked *sua sponte* to dismiss an action. This holding was

contrary to applicable Supreme Court and D.C. Circuit precedent. It is also contrary to the historical development of the Speech or Debate Clause. The Supreme Court's precedent establishes that the Speech or Debate Clause protects against suits which would harm the legislature or otherwise infringe on legislative independence. A Declaratory Judgment Act case with a willing congressional defendant does neither of those things. Thus, as explained below, the Court clearly erred by holding that the Speech or Debate Clause bars Mr. Meadows Declaratory Judgment action.

Accordingly, the Court should also stay its order dismissing the case pending further reconsideration proceedings and, if necessary, a subsequent appeal. Mr. Meadows's arguments presented in his motion and this reply provide more than a "fair ground for litigation." *Holiday Tours,* 559 F.2d at 844. He is likely to suffer irreparable harm should the Court decline to stay its order. Without a stay, the congressional defendants are likely to obtain Mr. Meadows's data from Verizon (as they have already attempted to do) and could even take further enforcement actions on the Meadows subpoena (which they have already threatened to do).[1] Such action would violate Mr. Meadows's rights and damage the institutional interests of the executive branch rooted in the Separation of Powers without any possibility of judicial review. Finally, a stay would work little harm on the congressional defendants because it would do nothing more than preserve the status quo that has existed for nearly a year.[2]

---

[1] *See* ECF No. 51-2 (Moran Declaration) at 2.

[2] It is notable that while claiming a great need for information from Meadows, the Committee, despite several invitations to do so, made no effort whatsoever to reach an accommodation with him; accommodation having been recognized by the Supreme Court as the preferred means to resolve the Separation of Powers issues created by the subpoena to Meadows. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020).

## I.       The Court Clearly Erred by *Sua Sponte* Dismissing Mr. Meadows's Declaratory Judgment Action

The Court's October 31, 2022, opinion clearly erred by *sua sponte* dismissing Mr. Meadows Declaratory Judgment Action for lack of subject matter jurisdiction. Relevant Supreme Court and DC Circuit precedent establishes that the Speech or Debate Clause is not a jurisdictional bar on the federal courts that can be raised *sua sponte* over the objections of both parties. And even if it were in some circumstances, it does not bar Declaratory Judgment actions against willing congressional participants in the litigation. The Court's mistakes of law with respect to these issues constitute clear error meriting a reconsideration of its opinion and further demonstrate that Mr. Meadows is likely to succeed on the merits in this proceeding and, if necessary, on appeal.

### A.       The Speech or Debate Clause Is Not A Carveout of the Federal Courts' Subject Matter Jurisdiction

The Court's opinion incorrectly holds that the Speech or Debate clause is a "bar on the federal court's subject matter jurisdiction." ECF No. 49 at 11. This holding is undermined by relevant Supreme Court and D.C. Circuit precedent as well as the history of the Speech or Debate Clause. Justice Marshall carefully concurred in the Supreme Court's 1975 *Eastland* decision, pointedly observing prior Supreme Court decisions have drawn a distinction between shielding legislators from claims of liability – as *Eastland* does – and foreclosing altogether judicial review of congressional action. *See Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 513 (1975) ("As our cases have consistently held … the Speech or Debate Clause protects legislators … from suit; it does not immunize congressional action from judicial review."). As demonstrated below, subsequent decisions have done nothing to invalidate that critical distinction. The Supreme Court has never treated the Speech or Debate Clause as a jurisdictional bar and has on several occasions

done the opposite. Likewise, D.C. Circuit precedent shows that the courts may consider actions brought against congressional defendants where the defendants voluntarily participate in the suit.

This precedent is supported by the history of the Speech or Debate Clause, which reveals that any jurisdictional bar attached to legislative free speech was a creature of Parliament's position as the supreme judicial authority, and this jurisdictional bar was therefore not imported into the U.S. Constitution alongside the Speech or Debate Clause.

1.  *Precedent Demonstrates That Speech or Debate Immunity Is Not An Issue of Subject Matter Jurisdiction*

No court has ruled, as the Court did here, that courts must *sua sponte* dismiss claims such as those presented here for lack of subject matter jurisdiction when congressional parties have declined to assert a Speech or Debate defense. While the Supreme Court has never had occasion to directly opine on the issue, it has nonetheless ruled in cases much like this one and has not invoked a jurisdictional bar, *sua sponte* or otherwise.

In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court declined to rule on Speech or Debate immunity even though the issue was presented to it and had been addressed by the lower courts. In that case, the Supreme Court considered an action brought against a Congressman, Otto Passman, under the Fifth Amendment. *Id.* at 231. Petitioner Shirley Davis brought a sex discrimination suit against Passman, alleging that his conduct violated the Fifth Amendment of the United States Constitution. *Id.* The district court granted Passman's motion to dismiss, holding that there was no private right of action under the Fifth Amendment. *Id.* at 232. The Fifth Circuit reversed, holding that Davis had stated a claim and that Passman's conduct was not protected by the Speech or Debate Clause. *Id.* The en banc Fifth Circuit reversed the panel without reaching the merits or the Speech or Debate Clause. *Id.*

The Supreme Court agreed with the panel opinion, holding that Davis could bring a private action under the Fifth Amendment. In footnote eleven of the opinion, the Court addressed the issue of Speech or Debate immunity:

> The en banc Court of Appeals did not decide whether the conduct of respondent was shielded by the Speech or Debate Clause. In the absence of such a decision, we also intimate no view on this question. We note, however, that the Clause shields federal legislators with absolute immunity not only from the consequences of litigation's results but also from the burden of defending themselves. Defenses based upon the Clause should thus ordinarily be given priority, since federal legislators should be exempted from litigation if their conduct is in fact protected by the Clause. We nevertheless decline to remand this case to the en banc Court of Appeals before we have decided whether petitioner's complaint states a cause of action, and whether a damages remedy is an appropriate form of relief. These questions are otherwise properly before us and may be resolved without imposing on respondent additional litigative burdens. Refusal to decide them at this time may actually increase these burdens.

*Id.* at 235 n.11 (internal quotation and citation omitted).

This passage is the functional equivalent of a holding that Speech or Debate immunity does not deprive a court of jurisdiction. If the Supreme Court considered the Speech or Debate clause to be a matter of subject matter jurisdiction, it would have been *required* to rule on it in *Passman*. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Every federal court has an obligation to assure itself of jurisdiction before reaching the merits of a suit. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). The fact that the Court ruled on the merits of the case without addressing the Speech or Debate Clause necessarily means that the Clause does not deprive a federal court of jurisdiction. Further, the Court refers to "defenses based upon the Clause" and notes that they should "ordinarily be given priority." This further supports how Speech or Debate Clause immunity should be treated a *defense* to litigation, not a carveout in the jurisdiction of the federal courts. Defenses, unlike subject matter jurisdiction, can be waived or simply not invoked by the holder of the defense.

Likewise, in *Powell v. McCormack*, 395 U.S. 486 (1969), the Supreme Court considered a suit challenging a House Resolution excluding a congressman-elect from his seat and treated Speech or Debate immunity as a defense on the merits. The congressional defendants argued both that the suit violated the Speech or Debate Clause and that the Court lacked subject matter jurisdiction. *See Powell* 395 U.S. at 501–505, 512–516. The Court analyzed the two arguments separately and concluded that it had subject matter jurisdiction over the suit but that Speech or Debate barred part of it. *See id.* In doing so, it referred to the Speech or Debate Clause as "a defense on the merits." *Id.* at 503. The holding in *Powell* is incompatible with the position that Speech or Debate immunity is an issue of subject matter jurisdiction.

The D.C. Circuit's precedent also strongly suggests that Speech or Debate Clause immunity is not an issue of subject matter jurisdiction. Just a year ago, this Court and the D.C. Circuit addressed former President Trump's suit against congressman Bennie Thompson without ever addressing whether it had jurisdiction over the suit. *See Trump v. Thompson*, 20 F.4th 10, 24 (D.C. Cir. 2021). The complaint in that case not only sought a pre-enforcement declaration that a congressional document request was unlawful, but also sought an injunction against the Select Committee. *See Trump v. Thompson*, 1:21-cv-02769, ECF No. 1 (Oct. 18, 2021). Despite the constitutional obligation to ensure jurisdiction over the suit, neither this Court nor the D.C. Circuit even mentioned the Speech or Debate Clause, much less analyzed it.

Additional D.C. Circuit precedent suggests that, at a minimum, Speech or Debate immunity does not bar jurisdiction when congressional defendants voluntarily participate in litigation. In *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121 (D.C. Cir. 1977) ("*AT&T II*"), the D.C. Circuit considered a suit by the Department of Justice against AT&T seeking an injunction preventing compliance with a subpoena issued by the Subcommittee on Oversight and Investigations of the

House Committee on Interstate and Foreign Commerce. Congressman John Moss, chairman of the subcommittee, intervened in the action as a defendant. *See* 567 F.2d at 124. In his briefing to the D.C. Circuit, Chairman Moss argued that the suit violated the Speech or Debate Clause because it interfered with a congressional subpoena. The D.C. Circuit rejected Moss's argument and held that Speech or Debate Clause immunity did not apply because Moss was not "made [a] defendant" in a suit regarding the subpoena. This in a case against a congressional defendant bringing claims based on a congressional subpoena.

At a minimum, *AT&T II* stands for the proposition that the Speech or Debate Clause does not deprive a court of jurisdiction where a legislator voluntarily subjects themselves to suit. The congressional defendants in *AT&T II* were not "made Defendants" because they voluntarily inserted themselves in the suit. No other interpretation follows. The D.C. Circuit's opinion repeatedly states that "no member of the Subcommittee in the present dispute has been made a defendant in a judicial proceeding." *AT&T II*, 567 F.2d at 130. This in a case where one of the two named defendants was a member of the Subcommittee. But the D.C. Circuit was correct, of course—Moss was not made a defendant, he joined the suit voluntarily. So too here. Mr. Meadows may have initiated the congressional defendants' involvement in this proceeding, but their presence is just as voluntary as Moss's. By their own accounting, they could invoke Speech or Debate immunity at any point and allegedly exit the suit; instead, they have chosen to remain. Under *AT&T II*, then, Speech or Debate immunity does not bar consideration of the suit.

The precedent cited in the Court's decision does not undermine this analysis. The opinion cites two cases, *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021), and *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021), to support its subject matter jurisdiction holding. Neither opinion engages in any analysis of whether the Speech or Debate Clause is a jurisdictional bar.

Both cases simply state without analysis that a dismissal on Speech or Debate grounds is a dismissal for lack of subject matter jurisdiction. *See Jud. Watch,* 998 F.3d at 990; *McCarthy*, 5 F.4th at 37. And *McCarthy* never even uses the term "subject matter jurisdiction," only the more generic "jurisdiction." *See generally McCarthy*, 5 F.4th at 34. More importantly, answering the question of whether Speech or Debate was a jurisdictional bar was not required to dispose of either case. Unlike *Passman* and *Powell*, the D.C. Circuit did not issue any holding in *Judicial Watch* or *McCarthy* that required it to consider the jurisdictional nature of the Speech or Debate Clause. *Judicial Watch* did remand the case with instruction "to dismiss the complaint without prejudice inasmuch as the dismissal is for want of subject-matter jurisdiction," *Jud. Watch*, 998 F.3d at 993, but this was because the district court's opinion was internally inconsistent, announcing that it dismissed for lack of jurisdiction while dismissing with prejudice. *See Jud. Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305, 308, 319 (D.D.C. 2020); *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020) ("[A] dismissal for want of subject-matter jurisdiction can only be without prejudice."). Moreover, nothing this Court cites from *Eastland* supports the holding that Speech or Debate Clause goes to the subject matter jurisdiction of the Court.  These cases are insufficient to overcome the clear holdings of the Supreme Court and other on-point D.C. Circuit precedent. The Court's reliance on them over and above more authoritative cases was erroneous.

2.  *The History of the Speech or Debate Clause Shows That It Is Not An Issue of Subject Matter Jurisdiction*

The historical origins of the Speech or Debate clause show that it is not a limitation on the authority of the federal courts. The Clause's English law predecessor contains language "almost identical" to that in the Constitution. *United States v. Johnson*, 383 U.S. 169, 177 (1966). That predecessor clause did, in fact, act as a jurisdictional bar on cases based on parliamentary speech or debate. But it only did so because Parliament was the highest court in English law and lower

courts did not have the authority to question its members. Thus, while the founders may have imported the text of English Bill of Rights, they did not import its jurisdictional implications. The federal government is intentionally structured so that Congress is not superior to the federal courts. Because of that, any jurisdictional bar that may inhere in the Speech or Debate Clause's text was lost when it was incorporated into the United States Constitution.

The origins of the Speech or Debate clause are well known and have been recited in several Supreme Court opinions, most fully in *United States v. Johnson*, 383 U.S. 169 (1966). The Clause's language is almost identical to a clause in the English Bill of Rights of 1689, which provided "[t]hat the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament." 1 W. & M., Sess. 2, c. 2. The Supreme Court has referenced this clause of the Bill of Rights of 1689 on multiple occasions and the federal courts often rely on it in interpreting the Speech or Debate Clause. *See Eastland*, 421 U.S. at 502 ("The Clause is a product of the English experience. Due to that heritage our cases make it clear that the 'central role' of the Clause is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary."); *United States v. Rayburn House Off. Bldg., Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 659 (D.C. Cir. 2007) ("The version of the Clause adopted by the Founders closely resembles the language adopted in the English Bill of Rights of 1689."); *Schilling v. Speaker of U.S. House of Representatives*, No. 1:22-CV-162 (TNM), 2022 WL 4745988, at *2 (D.D.C. Oct. 3, 2022) ("The Speech or Debate guarantee emerged out of a centuries-long conflict for English parliamentary supremacy.").

The relevant clause in the Bill of Rights of 1689 was the result of a lengthy series of disputes between Parliament and the Tudor and Stuart monarchs. See *Johnson*, 383 U.S. at 177 (citing C. Wittke, The History of English Parliamentary Privilege (Ohio State Univ. 1921); Neale,

The Commons' Privilege of Free Speech in Parliament in Tudor Studies (Seton-Watson ed. 1924)).

These conflicts, which lasted well over a century, involved a number of instances wherein a

member of Parliament would be questioned and imprisoned based on statements they made about

the monarch on the floor of parliament. *See* Cella, *The Doctrine of Legislative Privilege of*

*Freedom of Speech and Debate: Its Past, Present and Future as a Bar to Criminal Prosecutions*

*in the Courts*, 2 SUFFOLK L. REV. 1, 3–5 (1968). These members were occasionally even hauled

off in the middle of a speech. In response, parliament took action to protect its members' freedom

of speech, eventually resulting in the enshrining of this right in the English Bill of Rights of 1689.

*See id.* at 11–12.

Importantly here, the prohibition on questioning a member of parliament for their speech—

the predecessor of the Speech or Debate Clause—was considered a jurisdictional limitation on the

English courts. *See* Robert J. Reinstein & Harvey A. Silverglate, *Legislative Privilege and the*

*Separation of Powers*, 86 HARV. L. REV. 1113, 1122 (1973). This jurisdictional component to the

prohibition did not spring from the words of the Clause, however, but from Parliament's status as

the highest English court. As the author of one treatise on the subject has said "[t]he importance

of the judicial role and background of Parliament as a matter of historical fact is crucial" in

understanding the parliamentary free speech privilege. Cella, 2 SUFFOLK L. REV. at 4. Because

Parliament was the highest court, it was seen to be beyond the authority of other courts to question

its members for their official actions. Even before the Bill of Rights of 1689, members of

parliament hauled before royal courts argued that "[w]ords spoken in Parliament, which is a

superior court cannot be questioned in this court, which is inferior." *Id.* at 11. In this way, the

parliamentary free speech privilege was a limitation on the power of English courts because

Parliament was the supreme branch of the English government.

The Speech or Debate Clause in the U.S. Constitution, in contrast, "was designed to preserve legislative independence, not supremacy." *United States v. Brewster*, 408 U.S. 501, 508 (1972). The Clause "does not and was not intended to immunize congressional investigatory actions from judicial review." *AT&T II*, 567 F.2d at 129. This distinction has many implications, but one in particular is relevant here. The background principle of parliamentary supremacy was the foundation of the understanding that the parliamentary free speech privilege was a jurisdictional bar on the courts. There is no such background principle in American law. It was excised, and very intentionally so. With it went the justification for treating the Speech or Debate Clause as a limitation on the authority of the federal courts. The judiciary is Congress's co-equal branch, and the Speech or Debate Clause is to be applied to "insure the independence of the legislature without altering the historic balance of the three co-equal branches of Government." *Brewster*, 408 U.S. at 508. Because the judiciary is Congress's equal, there is no longer any reason to treat Congress's free speech privilege as a limitation on the authority of the courts.

**B.     Even If the Court Can Raise Speech or Debate Immunity *Sua Sponte*, the Immunity Does Not Bar Declaratory Judgment Act Cases Involving A Willing Congressional Defendant**

Even if Speech or Debate immunity is a matter of the Court's subject-matter jurisdiction which the Court may raise on its own, that doctrine would not bar Mr. Meadows's Declaratory Judgment Act case wherein Congress is a voluntary participant. Mr. Meadows's suit poses no threat of harm to Congress or any ongoing legislative act and therefore does not run afoul of the institutional protections of the Speech or Debate Clause. The congressional defendants are participating in this suit willingly. Their choice to not invoke Speech or Debate immunity renders this case functionally identical to a subpoena enforcement action for the purposes of the Speech or Debate Clause. No matter how the Court resolves this case, Congress will not be harmed, and the

legislative process will not be infringed upon. It is therefore not barred by the Speech or Debate Clause.

As this Court acknowledged, Speech or Debate immunity does not strip federal courts of subject-matter jurisdiction to review Article III controversies in which a congressional committee seeks to enforce a subpoena against a target. *See* ECF No. 49 at 13–14 (citing *AT&T II*, 567 F.2d at 129; *United States v. AT&T Co. (AT&T I)*, 551 F.2d 384, 391 (D.C. Cir. 1976)). And that is precisely the posture of the underlying controversy here. Despite ample opportunity, including in opposition to this very motion, the House defendants have steadfastly refused to invoke Speech or Debate Clause immunity or claim that Mr. Meadows action somehow violates their rights under the Clause. It is well established that Speech or Debate Clause immunity is only applicable where Congress is the Defendant, whereas matters truly outside the subject matter jurisdiction of Article III courts would apply to cases regardless of party posture. As Justice Marshall said in concurrence in *Eastland*, "[o]ur prior cases arising under the Speech or Debate Clause indicate only that a Member of Congress or his aide may not be called upon to defend a subpoena against constitutional objection, and not that the objection will not be heard at all." *Eastland*, 421 U.S. at 516 (Marshall, J., concurring). The Clause is only applicable "once defendants entitled to do so invoke the privilege of the Speech or Debate Clause, as was done here." *Id.* (emphasis added). Yet the House Defendants have, repeatedly, not done so here. The privilege has not been invoked, and thus the privilege is not applicable.

A willing congressional defendant in a declaratory judgment action simply falls outside the scope of the Speech or Debate Clause. The Supreme Court has described the purpose of the Speech or Debate Clause as preventing "intimidation of legislators by the Executive" and that it was "designed to assure a co-equal branch of the government wide freedom of speech, debate and

deliberation without intimidation or threats … [i]t thus protects Members against prosecutions that directly impinge upon or threaten the legislative process." *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (quoting *Gravel v. United States*, 408 U.S. 606, 616–17 (1972). Here there is nothing to interfere, intimidate, or threaten the legislators who, again, have intentionally foregone any invocation of the potential protection of the privilege. This situation is akin to *Trump v. Thompson*, 573 F.Supp.3d 1 (D.D.C. 2021), where a willing House defendant litigated a civil challenge to an investigative subpoena, willingly, without this Court feeling the need to *sua sponte* dismiss the action under the Speech or Debate Clause. It is a privilege or defense, not jurisdictional bar.

Mr. Meadows has come to the Court as a would-be defendant seeking a declaration of his rights and obligations as an alternative to merely defying the subpoena. *See MedImmune*, 549 U.S. at 129 (citing *Steffel v. Thompson*, 415 U.S. 452, 480 (1974) (Rehnquist, J., concurring)). The Supreme Court has made clear that, "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *Id.* at 128–29; *see also id.* at 129 ("[P]utting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'") (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 152 (1967)).

Controlling Speech or Debate Clause jurisprudence recognizes that a declaratory judgment action like Mr. Meadows's does not run afoul of legislative immunity because it does not seek any judicial or executive action running against the legislature. The Court's opinion states that "[t]he key question is whether Meadows challenges a legislative or non-legislative act." ECF No. 49 at 18. That is not so. "[I]ndividual members of Congress are not impermissibly 'questioned in any other place' regarding their investigatory activities merely because the validity and permissibility

of their activities are adjudicated." *AT&T II*, 567 F.2d at 129. The mere fact that Mr. Meadows's suit concerns a legislative action is not enough to bar his suit. As Justice Marshall noted in his concurrence in *Eastland*:

> I do not read the Court to suggest, however, nor could I agree, that the constitutionality of a congressional subpoena is always shielded from more searching judicial inquiry. For, as the very cases on which the Court relies demonstrate, the protection of the Speech or Debate Clause is personal. It extends to Members and their counsel acting in a legislative capacity; it does not preclude judicial review of their decisions in an appropriate case, whether they take the form of legislation or a subpoena."

421 U.S. at 515 (Marshall, J., concurring).

The Court's opinion actually recognizes as much, noting that "the Clause applies when congressional actors are 'made defendants' in a lawsuit or otherwise must defend a against a claim for relief." ECF No. 49 at 14 (quoting *AT&T II*, 567 F.2d at 129). But the Court omits the rest of the quote from *AT&T II*: "made defendants *in a suit to enjoin implementation of the subpoena*." *AT&T II*, 567 F.2d at 129.

This is a theme present across the Supreme Court's Speech or Debate jurisprudence: the Clause bars suits against Congress because they harm or otherwise burden legislators. The Speech or Debate clause does not per se bar judicial review of congressional action in a vacuum; "the shield does not extend beyond what is necessary to preserve the integrity of the legislative process." *Brewster*, 408 U.S. at 517. Throughout the Supreme Court's Speech or Debate Clause cases, the Court has reiterated that the Clause exists to protect the legislature from harm and preserve its independence. *See Eastland*, 421 U.S. at 503. ("[W]e have said that legislators acting within the sphere of legitimate legislative activity 'should be protected not only from the consequences of litigation's results but also from the burden of defending themselves.'"); *Gravel v. United States*, 408 U.S. 606, 616 (1972) (explaining that the Clause "protects Members against prosecutions that directly impinge upon or threaten the legislative process"); *Powell*, 395 U.S. at

502–03 ("[T]he clause not only provides a defense on the merits but also protects a legislator from the burden of defending himself."); *Johnson*, 383 U.S. at 179 ("The legislative privilege, protecting against possible prosecution by an unfriendly executive and conviction by a hostile judiciary, is one manifestation of the 'practical security' for ensuring the independence of the legislature.")

Most often, that harm takes the form of "the consequences of litigation's results" but it can also be simply "the burden of defending themselves." *Eastland*, 421 U.S. at 503. At its most abstract, this harm can also consist of "judicial power" being "brought to bear on Members of Congress." *Eastland*, 421 U.S. at 503. Regardless, in any scenario, the Speech or Debate Clause acts to preserve legislative independence by preventing some infringement on the legislative process.

Mr. Meadows's Declaratory Judgment Act claim does not work or threaten to work any such infringement. He does not seek an injunction, nor does he seek to hold any member of the Congress liable or require any Member to do or not do anything. He instead seeks to have *his* legal rights and obligations under the congressional subpoenas considered and declared by the Court. And he does so in the context of an underlying controversy over which the federal courts indisputably have subject-matter jurisdiction under *AT&T I* and *AT&T II*. *See United States v. Am. Tel. & Tel. Co.*, 551 F.2d 384, 391 (D.C. Cir. 1976); *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 128 (D.C. Cir. 1977). Mr. Meadows does not seek to halt some inchoate legislative act, *see* ECF No. 49 at 19–23 (discussing the ongoing congressional investigation), but to clarify a fully completed one. The subpoena to Mr. Meadows has already been issued and this action can do nothing to interfere with that past legislative act. Even if Mr. Meadows wins this suit, congressional defendants will be free to seek to enforce the subpoena, though they will have to do so fully aware of his rights as established in a judicial proceeding.

There is therefore no danger of "judicial power" being "brought to bear on Members of Congress." *Eastland*, 421 U.S. at 503. Nor is there any danger that the purpose of the Speech or Debate clause, "to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary," *Eastland*, 421 U.S. at 502 (quotation marks and citation omitted), will be thwarted. Mr. Meadows does not seek to hold any member of congress accountable for anything. He seeks only the clarification of his own rights.

Without the possibility of an injunction, damages, or the imposition of judicial power, the only conceivable harm to Congress from Mr. Meadows's action is the "burden of defending" itself. *Powell*, 395 U.S. at 503. As noted above, the D.C. Circuit has not considered this a cognizable harm to Congress where Congress voluntarily intervenes as a defendant. *See supra* pp. 7–8. The Court need not even look to prior cases because the congressional defendants themselves have asserted that they are not harmed by the burden of defending themselves in this case. *See* ECF No. 40 at 8 ("Here, the Congressional Defendants have opted not to assert Speech or Debate immunity as a legal defense to any part of Meadows's complaint."). Certainly, the burdens of defending a lawsuit cannot be a threat to legislative independence when the legislature has expressed a desire to defend the suit.

Mr. Meadows's Declaratory Judgment action therefore does not run afoul of the Speech or Debate Clause. It does not threaten to bring judicial power to bear on the legislature; there will be no consequences on the legislature from resolution of the litigation; and the congressional defendants have voluntarily chosen to be part of the suit. This is precisely how such questions ought to be resolved. After all, "[i]t would be strange indeed if the Constitution made judicial consideration available to one who defies the legislature outright, but not to one like [Mr. Meadows], who seeks an orderly resolution of a disputed question." *AT&T II*, 567 F.2d at 129.

If anything, it is the Court's *sua sponte* invocation and application of the immunity that runs contrary to the Clause's purpose. Preventing judicial interference with legislative prerogatives is one of the Clause's primary aims.[3] *See United States v. Johnson*, 383 U.S. 169, 181 (1966) ("It was not only fear of the executive that caused concern in Parliament but of the judiciary as well, for the judges were often lackeys of the Stuart monarchs."). Here, in a fit of irony, the Court has decided it should override Congress's judgment about how best to preserve legislative independence.

The Court's opinion also erroneously intrudes on executive prerogatives. *See Brewster*, 408 U.S. at 508 ("Our task, therefore, is to apply the Clause in such a way as to insure the independence of the legislature without altering the historic balance of the three co-equal branches of Government."). The Speech or Debate Clause should not be construed in a way that infringes on the prerogatives of the Executive by barring the courthouse doors to an aide to a former President who presents an otherwise cognizable claim that the Constitution immunizes him from being compelled to appear before Congress to give testimony and to divulge therein matters subject to claims of Executive Privilege. And if the federal judiciary were going to bolster Congressional prerogatives this way at the expense of the Executive, one would expect it in a case where Congress has actually advocated for the privilege. As noted above, there is no question that Article III courts have subject-matter jurisdiction to adjudicate the underlying controversy here. In that posture, it is firmly established that courts should—indeed, must—exercise their jurisdiction, not *sua sponte* close the courthouse door. *See Bridges v. Kelly*, 84 F.3d 470, 475 (D.C. Cir. 1996) ("[B]ecause of

---

[3] It is Mr. Meadows's position that the subpoenas do not represent legitimate legislative activities. But this Court concluded that the subpoenas are "protected legislative acts," ECF No. 49 at 20, in spite of the fact that the parties did not brief this issue because the Congressional Defendants did not invoke Speech or Debate immunity.

'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' the appropriateness of refraining 'from the exercise of federal jurisdiction is the exception, not the rule.'") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

### 3.   The Remaining Factors Favor A Stay

Without a stay of the Court's judgment, Mr. Meadows will suffer irreparable harm. As Mr. Meadows has already articulated, the congressional defendants are actively seeking to obtain his data from Verizon. Not only would this moot the present action (a factor which counsel in favor of a stay itself) but it would cause Mr. Meadows irreparable harm. The Verizon subpoena violates Mr. Meadows First and Fourth Amendment rights. *See* ECF No. 13 at 45–49. Its enforcement would therefore constitute irreparable injury for the purpose of a stay. "'[A] prospective violation of a constitutional right constitutes irreparable injury for ... purposes' of 'seeking equitable relief.'" *Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)); *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) ("[T]he deprivation of constitutional rights constitutes irreparable injury ... to the extent such deprivation is shown to be likely."). Not only would Mr. Meadows's rights be violated, but his data would be placed irrevocably in the hands of congressional defendants and, though them, into the public domain. As has been discussed throughout this litigation, congressional defendants have aggressively leaked every piece of information they have obtained regarding Mr. Meadows. *See* ECF No. 13 at 37. Should they obtain Mr. Meadows's phone data at this juncture, he will never be able to undo the damage to his privacy interests.

Additionally, any enforcement actions taken against Mr. Meadows without prior adjudications of his claims of privilege would functionally vitiate those claims, irreparably

harming Mr. Meadows. The entire basis of Mr. Meadows's claim of testimonial immunity, and much of his claim of executive privilege, require that the Court rule on them *before* Mr. Meadows is required to give any testimony. As has been thoroughly explored in this litigation, testimonial immunity is an immunity from compelled testimony, not a privilege attaching to any particular piece of information. *See* ECF No. 29-1 at 26–37. To the extent that congressional defendants take further actions against Mr. Meadows pending resolution of his right to this immunity, then, he will be deprived of the immunity and irreparably harmed.

Finally, the balance of equities favors a stay. First, Mr. Meadows raised in his initial motion, this proceeding represents the first time the parties have had occasion to fully brief the dispositive issues underlying the Court's opinion. That is not to say that there was any procedural or substantive error by the Court, the Court did raise the issue and allow some briefing and argument. It is certainly the case, however, that fairness counsels allowing Mr. Meadows to be fully heard on the Speech or Debate issue before giving effect to the Court's judgment.

Second, action by the congressional defendants could prematurely moot this case, preventing Mr. Meadows from receiving meaningful judicial review. This too counsels in favor of a stay pending resolution of the underlying issues. *See Republican Nat'l Comm. v. Pelosi*, No. CV 22-659 (TJK), 2022 WL 1294509, at *25 (D.D.C. May 1, 2022), *vacated on other grounds,* No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) (granting an administrative injunction "to preserve the availability of meaningful judicial review" where a third party's compliance with subpoena could moot the case). Equity and the public interest counsel action to prevent congressional defendants from prematurely and strategically mooting this action before it is finally resolved.

## CONCLUSION

The Court's October 31, 2022, opinion committed clear error when it *sua sponte* dismissed Mr. Meadows's Declaratory Judgment action under the Speech or Debate Clause. Precedent from the Supreme Court and D.C. Circuit demonstrates that the Speech or Debate Clause is not an issue of subject matter jurisdiction. This understanding is confirmed by the history of the Clause, which reveals that any jurisdictional bar did not survive the transition from the English Bill of Rights of 1689 to the Constitution. The Court should therefore alter its judgment and decline to dismiss Mr. Meadows's claims.

Additionally, the Court should stay its judgment pending decision on Mr. Meadows's motion to prevent irreparable harm from befalling Mr. Meadows and to best serve the balance of equities and public interest.

Dated: November 14, 2022

Respectfully submitted,
MARK MEADOWS
*By Counsel*

/s/ George J. Terwilliger III
George J. Terwilliger III
John Moran
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Phone: (202) 857-1700
Fax: (202) 857-1737
gterwilliger@mcguirewoods.com

Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
bspears@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that, on November 14, 2022, a copy of the foregoing was filed on the Court's

CM/ECF system, which will send notification to all counsel of record.

/s/ George J. Terwilliger III